**Federal Register** / Vol. 86, No. 16 / Wednesday, January 27, 2021 / Notices

General on Integrity and Efficiency, (202) 292–2600 or *comments@cigie.gov.*

**SUPPLEMENTARY INFORMATION:** In 2008, Congress established CIGIE as an independent entity within the executive branch in order to address integrity, economy, and effectiveness issues that transcend individual Government agencies; and increase the professionalism and effectiveness of personnel by developing policies, standards, and approaches to aid in the establishment of a well-trained and highly skilled workforce in the offices of the Inspector General. CIGIE's membership is comprised of all Inspectors General whose offices are established under the Inspector General Act of 1978, as amended, 5 U.S.C. app (IG Act), as well as the Controller of the Office of Federal Financial Management, a designated official of the Federal Bureau of Investigation (FBI), the Director of the Office of Government Ethics, the Special Counsel of the Office of Special Counsel, the Deputy Director of the Office of Personnel Management, the Deputy Director for Management of the Office of Management and Budget (OMB), and the Inspectors General of the Office of the Director of National Intelligence, Central Intelligence Agency, Library of Congress, Capitol Police, Government Publishing Office, Government Accountability Office, and the Architect of the Capitol. The Deputy Director for Management of OMB serves as the Executive Chairperson of CIGIE.

Section 15010 of Public Law 116–136, established the PRAC as a committee within CIGIE. The mission of the PRAC is to promote transparency and conduct and support oversight to: (1) Prevent and detect fraud, waste, abuse, and mismanagement of covered funds; and (2) mitigate major risks that cut across programs and agencies with respect to covered funds. The term ''covered funds'' means any funds, including but not limited to loans, that are made available in any form to any non-Federal entity, not including an individual, under: The CARES Act; the Coronavirus Preparedness and Response Supplemental Appropriations Act of 2020; the Families First Coronavirus Response Act; or any other act primarily making appropriations for the Federal Government's Coronavirus response and related activities.

The new system of records described in this notice, the PRAC Data Warehouse System (CIGIE–5), will enable CIGIE to carry out its responsibilities to promote transparency and conduct oversight of covered funds. In accordance with 5 U.S.C. 552a(r), CIGIE has provided a report of this new system of records to OMB and to Congress. The new system of records reads as follows:

**SYSTEM NAME AND NUMBER:**

PRAC Data Warehouse System (PDWS)—CIGIE–5.

**SECURITY CLASSIFICATION:**

Unclassified.

**SYSTEM LOCATION:**

The location of paper records contained within the PDWS is the headquarters of the Council of the Inspectors General on Integrity and Efficiency (CIGIE), 1717 H Street NW, Suite 825, Washington, DC 20006. Records maintained in electronic form are principally located in contractor-hosted data centers in the United States. Contact the System Manager identified below for additional information.

**SYSTEM MANAGER(S):**

Executive Director, Pandemic Response Accountability Committee, Council of the Inspectors General on Integrity and Efficiency, 1717 H Street NW, Suite 825, Washington, DC 20006, (202) 292–2600, *cigie.information@ cigie.gov.*

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

Section 11 of the Inspector General Act of 1978, as amended, 5 U.S.C. app (IG Act); 5 U.S.C. 301; 44 U.S.C. 3101; Public Law 116–136; Public Law 116–123; and Public Law 116–127.

**PURPOSE(S) OF THE SYSTEM:**

To carry out the PRAC's responsibilities to promote transparency and conduct oversight of any funds, including but not limited to loans, that are made available in any form to any non-Federal entity, not including an individual, under: Public Law 116–136; Public Law 116–123; and Public Law 116–127; or any other act primarily making appropriations for Coronavirus response and related activities (Coronavirus Funds). The term ''Coronavirus response'' means the Federal Government's response to the nationwide public health emergency declared by the Secretary of Health and Human Services, retroactive to January 27, 2020, pursuant to 42 U.S.C. 247d as a result of confirmed cases of the novel Coronavirus, COVID–19, in the United States (Coronavirus Response).

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

This system contains records on individuals acting in a personal capacity who relate to PRAC efforts undertaken in support of its mission to promote transparency and conduct and support

oversight of Coronavirus Funds and the Coronavirus Response to prevent and detect fraud, waste, abuse, and mismanagement and mitigate major risks that cut across programs and agencies. Individuals include but are not limited to those who have applied for, sought, or received Federal funds. These records are comingled with information concerning individuals in their entrepreneurial/sole-proprietor capacity; however, this information is not subject to the Privacy Act.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

The system maintains records that contribute to the transparency of Coronavirus Funds and the Coronavirus Response and effective oversight of fraud, waste, abuse, and mismanagement and mitigation of major risks that cut across programs and agencies related to Coronavirus Funds and the Coronavirus Response. These records may include, but are not limited to, records concerning: Coronavirus Funds and other Federal funding; the Coronavirus Response; individuals in their personal capacity or individuals who are employees or representatives of businesses, corporations, tribal governments, not-for-profit organizations, or other organizations that have applied for, sought, or received Coronavirus Funds or have been involved in any capacity in the Coronavirus Response. Such records may include, but are not limited to these individuals' home addresses, telephone numbers, social security numbers or tax identifications numbers, company business addresses, business financial information and records, bank account information, payroll records, personal contact information, business affiliations, and employment history.

**RECORD SOURCE CATEGORIES:**

Publicly and/or commercially available data sets and other source material; Federal agencies; and individuals and entities, including states and local jurisdictions, tribal governments, businesses, corporations, and other organizations, that have applied for, sought, or received Coronavirus Funds or other Federal funds or have been involved in any capacity in the Coronavirus Response.

**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND PURPOSES OF SUCH USES:**

In addition to those disclosures generally permitted under 5 U.S.C. 552a(b), all or portions of the records or information contained in this system may specifically be disclosed outside of CIGIE as a routine use pursuant to 5 U.S.C. 552a(b)(3) as follows:

A. To a Member of Congress in response to an inquiry from that Member made at the request of the individual. In such cases, however, the Member's right to a record is no greater than that of the individual.

B. If the disclosure of certain records to the Department of Justice (DOJ) is relevant and necessary to litigation, CIGIE may disclose those records to the DOJ. CIGIE may make such a disclosure if one of the following parties is involved in the litigation or has an interest in the litigation:

1. CIGIE or any component thereof; or
2. Any employee or former employee of CIGIE in his or her official capacity; or
3. Any employee or former employee of CIGIE in his or her individual capacity when the DOJ has agreed to represent the employee; or
4. The United States, if CIGIE determines that litigation is likely to affect CIGIE or any of its components.

C. If disclosure of certain records to a court, adjudicative body before which CIGIE is authorized to appear, individual or entity designated by CIGIE or otherwise empowered to resolve disputes, counsel or other representative, party, or potential witness is relevant and necessary to litigation, CIGIE may disclose those records to the court, adjudicative body, individual or entity, counsel or other representative, party, or potential witness. CIGIE may make such a disclosure if one of the following parties is involved in the litigation or has an interest in the litigation:

1. CIGIE or any component thereof; or
2. Any employee or former employee of CIGIE in his or her official capacity; or
3. Any employee or former employee of CIGIE in his or her individual capacity when the DOJ has agreed to represent the employee; or
4. The United States, if CIGIE determines that litigation is likely to affect CIGIE or any of its components.

D. To the appropriate Federal, state, local, tribal, or foreign agency responsible for investigating, prosecuting, enforcing, or implementing a statute, rule, regulation, or order, if the information is relevant to a violation or potential violation of civil or criminal law or regulation within the jurisdiction of the receiving entity.

E. To officials and employees of any Federal agency to the extent the record contains information that is relevant to that agency's decision concerning the hiring, appointment, or retention of an employee; issuance of a security clearance; execution of a security or suitability investigation; or classification of a job.

F. To the National Archives and Records Administration (NARA) pursuant to records management inspections being conducted under the authority of 44 U.S.C. 2904 and 2906.

G. To contractors, grantees, consultants, volunteers, or other individuals performing or working on a contract, interagency agreement, service, grant, cooperative agreement, job, or other activity for CIGIE and who have a need to access the information in the performance of their duties or activities for CIGIE.

H. To appropriate agencies, entities, and persons when: CIGIE suspects or has confirmed that there has been a breach of the system of records; CIGIE has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, CIGIE (including its information systems, programs, and operations), the Federal Government, or national security; and the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with CIGIE's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm.

I. To another Federal agency or Federal entity, when: CIGIE determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in responding to a suspected or confirmed breach; or preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach.

J. To Federal agencies and independent certified public accounting firms that have a need for the information in order to audit the financial statements of CIGIE.

K. To an organization or an individual in the public or private sector if there is reason to believe the recipient is or could become the target of a particular criminal activity or conspiracy, or to the extent the information is relevant to the protection or life or property.

L. To officials of CIGIE, as well as CIGIE members and their employees, who have need of the information in the performance of their duties.

M. To the Office of Personnel Management (OPM) in accordance with OPM's responsibility for evaluation and oversight of Federal personnel management.

N. To appropriate agencies, entities, and persons, to the extent necessary to respond to or refer correspondence.

O. To the news media and the public, unless it is determined that release of the specific information would constitute an unwarranted invasion of personal privacy.

P. To populate public-facing government websites to promote transparency of Coronavirus Funds and the Coronavirus Response, unless it is determined that release of the specific information would constitute an unwarranted invasion of personal privacy.

**POLICIES AND PRACTICES FOR STORAGE OF RECORDS:**

Information within this system of records is maintained in paper/or electronic form.

**POLICIES AND PRACTICES FOR RETRIEVAL OF RECORDS:**

These records are retrieved by the name or other programmatic identifier assigned to the individuals on whom they are maintained.

**POLICIES AND PRACTICES FOR RETENTION AND DISPOSAL OF RECORDS:**

The information is retained and disposed of in accordance with the General Records Schedule and/or the CIGIE records schedule applicable to the record and/or otherwise required by the Federal Records Act and implementing regulations.

**ADMINISTRATIVE, TECHNICAL AND PHYSICAL SAFEGUARDS:**

Paper records are located in locked file storage areas or in specified areas to which only authorized personnel have access. Electronic records are protected from unauthorized access through password identification procedures, limited access, firewalls, and other system-based protection methods.

**RECORD ACCESS PROCEDURES:**

Individuals seeking notification and access to any record contained in this system of records, or seeking to contest its content, may inquire in writing to the System Manager listed above. CIGIE has published a rule, entitled "Privacy Act Regulations," to establish its procedures relating to access, maintenance, disclosure and amendment of records which are in a CIGIE system of records per the Privacy Act, promulgated at 5 CFR part 9801 (*https://www.ecfr.gov/cgi-bin/text-idx?SID=c3344b4e456f682fe915c0e982f8ce94&mc=true&tpl=/ecfrbrowse/Title05/5cfr9801_main_02.tpl*).

**CONTESTING RECORD PROCEDURES:**

See ''Records Access Procedures'' above.

**NOTIFICATION PROCEDURES:**

See ''Records Access Procedures'' above.

**EXEMPTIONS PROMULGATED FOR THE SYSTEM:**

None.

**HISTORY:**

N/A.

Dated: January 15, 2021.

**Allison C. Lerner,**

*Chairperson of the Council of the Inspectors General on Integrity and Efficiency.*

[FR Doc. 2021–01429 Filed 1–26–21; 8:45 am]

**BILLING CODE P**

# DEPARTMENT OF ENERGY

## Federal Energy Regulatory Commission

[Docket No. CP21–24–000]

## Breitburn Operating L.P.; Notice of Applcation and Establishing Intervention Deadline

Take notice that on January 7, 2021, Breitburn Operating L.P. (Breitburn), 1111 Bagby Street, Suite 1600, Houston, Texas 77002, filed in the above referenced docket an application pursuant to section 7(b) of the Natural Gas Act (NGA) and Part 157 of the Commission's regulations to abandon the limited jurisdiction certificate issued on November 14, 2008 in Docket No. CP08–473–000. Specifically, Breitburn request to abandon the operation of 8.3-mile, 12-inch diameter pipeline located in Meade County, Kentucky (Cardinal Line). The Cardinal Line is not currently delivering natural gas to Texas Gas Transmission, LLC (Texas Gas), and upon receiving the authorization requested, Breitburn will disconnect the Cardinal Line from its interconnect with Texas Gas and transfer the inactive Cardinal Line to Nucor Corporation (Nucor) to be used in the future by Nucor or a successor entity to provide natural gas supply to Nucor's steel mill, which is currently under development. The Cardinal Line does not transport third-party gas, all as more fully set forth in the request which is on file with the Commission and open to public inspection.

In addition to publishing the full text of this document in the **Federal Register**, the Commission provides all interested persons an opportunity to view and/or print the contents of this document via the internet through the Commission's Home Page (*http://*

*ferc.gov*) using the ''eLibrary'' link. Enter the docket number excluding the last three digits in the docket number field to access the document. At this time, the Commission has suspended access to the Commission's Public Reference Room, due to the proclamation declaring a National Emergency concerning the Novel Coronavirus Disease (COVID–19), issued by the President on March 13, 2020. For assistance, contact the Federal Energy Regulatory Commission at *FERCOnlineSupport@ferc.gov* or call toll-free, (886) 208–3676 or TYY, (202) 502–8659.

Any questions concerning this application should be directed to Caleb Cooley, Pipeline Compliance Lead, Maverick Natural Resources, LLC, 1111 Bagby Street, Suite 1600, Houston, Texas 77002, by telephone at (903) 291–6511, or by email at *caleb.cooley@ mavresources.com*.

Pursuant to section 157.9 of the Commission's Rules of Practice and Procedure,[1] within 90 days of this Notice the Commission staff will either: Complete its environmental review and place it into the Commission's public record (eLibrary) for this proceeding; or issue a Notice of Schedule for Environmental Review. If a Notice of Schedule for Environmental Review is issued, it will indicate, among other milestones, the anticipated date for the Commission staff's issuance of the final environmental impact statement (FEIS) or environmental assessment (EA) for this proposal. The filing of an EA in the Commission's public record for this proceeding or the issuance of a Notice of Schedule for Environmental Review will serve to notify federal and state agencies of the timing for the completion of all necessary reviews, and the subsequent need to complete all federal authorizations within 90 days of the date of issuance of the Commission staff's FEIS or EA.

### Public Participation

There are two ways to become involved in the Commission's review of this project: You can file comments on the project, and you can file a motion to intervene in the proceeding. There is no fee or cost for filing comments or intervening. The deadline for filing a motion to intervene is 5:00 p.m. Eastern Time on February 11, 2021.

### Comments

Any person wishing to comment on the project may do so. Comments may include statements of support or objections to the project as a whole or

specific aspects of the project. The more specific your comments, the more useful they will be. To ensure that your comments are timely and properly recorded, please submit your comments on or before February 11, 2021.

There are three methods you can use to submit your comments to the Commission. In all instances, please reference the Project docket number (CP21–24–000) in your submission.

(1) You may file your comments electronically by using the eComment feature, which is located on the Commission's website at *www.ferc.gov* under the link to Documents and Filings. Using eComment is an easy method for interested persons to submit brief, text-only comments on a project;

(2) You may file your comments electronically by using the eFiling feature, which is located on the Commission's website (*www.ferc.gov*) under the link to Documents and Filings. With eFiling, you can provide comments in a variety of formats by attaching them as a file with your submission. New eFiling users must first create an account by clicking on ''eRegister.'' You will be asked to select the type of filing you are making; first select ''General'' and then select ''Comment on a Filing''; or

(3) You can file a paper copy of your comments by mailing them to the following address below.[2] Your written comments must reference the Project docket number (CP21–24–000).

Kimberly D. Bose, Secretary, Federal Energy Regulatory Commission, 888 First Street NE, Washington, DC 20426

The Commission encourages electronic filing of comments (options 1 and 2 above) and has eFiling staff available to assist you at (202) 502–8258 or *FercOnlineSupport@ferc.gov*.

Persons who comment on the environmental review of this project will be placed on the Commission's environmental mailing list, and will receive notification when the environmental documents (EA or EIS) are issued for this project and will be notified of meetings associated with the Commission's environmental review process.

The Commission considers all comments received about the project in determining the appropriate action to be taken. However, the filing of a comment alone will not serve to make the filer a party to the proceeding. To become a party, you must intervene in the

---

[1] 18 CFR (Code of Federal Regulations) 157.9.

[2] Hand delivered submissions in docketed proceedings should be delivered to Health and Human Services, 12225 Wilkins Avenue, Rockville, Maryland 20852.

proceeding. For instructions on how to intervene, see below.

*Interventions*

Any person, which includes individuals, organizations, businesses, municipalities, and other entities,[3] has the option to file a motion to intervene in this proceeding. Only intervenors have the right to request rehearing of Commission orders issued in this proceeding and to subsequently challenge the Commission's orders in the U.S. Circuit Court of Appeal.

To intervene, you must submit a motion to intervene to the Commission in accordance with Rule 214 of the Commission's Rules of Practice and Procedure[4] and the regulations under the NGA[5] by the intervention deadline for the project, which is February 11, 2021. As described further in Rule 214, your motion to intervene must state, to the extent known, your position regarding the proceeding, as well as your interest in the proceeding. For an individual, this could include your status as a landowner, ratepayer, resident of an impacted community, or recreationist. You do not need to have property directly impacted by the project in order to intervene. For more information about motions to intervene, refer to the FERC website at *https://www.ferc.gov/resources/guides/how-to/intervene.asp*.

All timely, unopposed motions to intervene are automatically granted by operation of Rule 214(c)(1). Motions to intervene that are filed after the intervention deadline are untimely and may be denied. Any late-filed motion to intervene must show good cause for being late and must explain why the time limitation should be waived and provide justification by reference to factors set forth in Rule 214(d) of the Commission's Rules and Regulations. A person obtaining party status will be placed on the service list maintained by the Secretary of the Commission and will receive copies (paper or electronic) of all documents filed by the applicant and by all other parties.

There are two ways to submit your motion to intervene. In both instances, please reference the Project docket number (CP21–24–000) in your submission.

(1) You may file your motion to intervene by using the Commission's eFiling feature, which is located on the Commission's website (*www.ferc.gov*) under the link to Documents and Filings. New eFiling users must first create an account by clicking on "eRegister." You will be asked to select the type of filing you are making; first select "General" and then select "Intervention." The eFiling feature includes a document-less intervention option; for more information, visit *https://www.ferc.gov/docsfiling/efiling/document-less-intervention.pdf*; or

(2) You can file a paper copy of your motion to intervene, along with three copies, by mailing the documents to the address below.[6] Your motion to intervene must reference the Project docket number (CP21–24–000).

Kimberly D. Bose, Secretary, Federal Energy Regulatory Commission, 888 First Street NE, Washington, DC 20426

The Commission encourages electronic filing of motions to intervene (option 1 above) and has eFiling staff available to assist at (202) 502–8258 or *FercOnlineSupport@ferc.gov*.

Motions to intervene must be served on the applicant either by mail or email at: 1111 Bagby Street, Suite 1600, Houston, Texas 77002, or at *caleb.cooley@mavresources.com*. Any subsequent submissions by an intervenor must be served on the applicant and all other parties to the proceeding. Contact information for parties can be downloaded from the service list at the eService link on FERC Online. Service can be via email with a link to the document.

All timely, unopposed[7] motions to intervene are automatically granted by operation of Rule 214(c)(1).[8] Motions to intervene that are filed after the intervention deadline are untimely, and may be denied. Any late-filed motion to intervene must show good cause for being late and must explain why the time limitation should be waived and provide justification by reference to factors set forth in Rule 214(d) of the Commission's Rules and Regulations.[9] A person obtaining party status will be placed on the service list maintained by the Secretary of the Commission and will receive copies (paper or electronic) of all documents filed by the applicant and by all other parties.

**Tracking the Proceeding**

Throughout the proceeding, additional information about the project will be available from the Commission's Office of External Affairs, at (866) 208–FERC, or on the FERC website at *www.ferc.gov* using the "eLibrary" link as described above. The eLibrary link also provides access to the texts of all formal documents issued by the Commission, such as orders, notices, and rulemakings.

In addition, the Commission offers a free service called eSubscription which allows you to keep track of all formal issuances and submittals in specific dockets. This can reduce the amount of time you spend researching proceedings by automatically providing you with notification of these filings, document summaries, and direct links to the documents. For more information and to register, go to *www.ferc.gov/docsfiling/esubscription.asp*.

*Intervention Deadline:* 5:00 p.m. Eastern Time on February 11, 2021.

Dated: January 21, 2021.

**Kimberly D. Bose,**
*Secretary.*

[FR Doc. 2021–01776 Filed 1–26–21; 8:45 am]

**BILLING CODE 6717–01–P**

---

**DEPARTMENT OF ENERGY**

**Federal Energy Regulatory Commission**

**[Project No. 2711–024]**

**Northern States Power Company—Wisconsin; Notice of Intent To File License Application, Filing of Pre-Application Document, Approving Use of the Traditional Licensing Process**

a. *Type of Filing:* Notice of Intent to File License Application and Request to Use the Traditional Licensing Process.

b. *Project No.:* 2711–024.

c. *Date Filed:* November 30, 2020.

d. Submitted By: Northern States Power Company—Wisconsin.

e. *Name of Project:* Trego Hydroelectric Project.

f. *Location:* The Trego Project is located on the Namekagon River in Washburn County, Wisconsin. No federal lands are occupied by the project works or located within the project boundary.

g. *Filed Pursuant to:* 18 CFR 5.3 of the Commission's regulations.

h. *Potential Applicant Contact:* James M. Zyduck, Director of Hydro Plants, Northern States Power Company, 1414 W. Hamilton Ave. P.O. Box 8 Eau Claire, WI 54702–0008; email at *James.Zyduck@XcelEnergy.com*.

i. *FERC Contact:* Laura Washington at (202) 502–6072; or email at *Laura.Washington@ferc.gov.or* Tyrone Williams at (202) 502–6331; or email at *Tyrone.Williams@ferc.gov*.

---

[3] 18 CFR 385.102(d).

[4] 18 CFR 385.214.

[5] 18 CFR 157.10.

[6] Hand delivered submissions in docketed proceedings should be delivered to Health and Human Services, 12225 Wilkins Avenue, Rockville, Maryland 20852.

[7] The applicant has 15 days from the submittal of a motion to intervene to file a written objection to the intervention.

[8] 18 CFR 385.214(c)(1).

[9] 18 CFR 385.214(b)(3) and (d).

j. Northern States filed its request to use the Traditional Licensing Process on November 30, 2020. Northern States provided public notice of its request on December 11, 2020. In a letter dated January 21, 2021, the Director of the Division of Hydropower Licensing approved Northern States' request to use the Traditional Licensing Process.

k. With this notice, we are initiating informal consultation with the U.S. Fish and Wildlife Service and/or NOAA Fisheries under section 7 of the Endangered Species Act and the joint agency regulations thereunder at 50 CFR, Part 402; and NOAA Fisheries under section 305(b) of the Magnuson-Stevens Fishery Conservation and Management Act and implementing regulations at 50 CFR 600.920. We are also initiating consultation with the Wisconsin State Historic Preservation Officer as required by section 106, National Historic Preservation Act, and the implementing regulations of the Advisory Council on Historic Preservation at 36 CFR 800.2.

l. With this notice, we are designating Northern States as the Commission's non-federal representative for carrying out informal consultation pursuant to section 7 of the Endangered Species Act, and consultation pursuant to section 106 of the National Historic Preservation Act.

m. Northern States filed a Pre-Application Document (PAD); including a proposed process plan and schedule with the Commission, pursuant to 18 CFR 5.6 of the Commission's regulations.

n. A copy of the PAD may be viewed and/or printed on the Commission's website (*http://www.ferc.gov*), using the "eLibrary" link. Enter the docket number, excluding the last three digits in the docket number field to access the document. At this time, the Commission has suspended access to the Commission's Public Reference Room, due to the proclamation declaring a National Emergency concerning the Novel Coronavirus Disease (COVID–19), issued by the President on March 13, 2020. For assistance, contact FERC Online Support at *FERCOnlineSupport@ferc.gov*, (866) 208–3676 (toll free), or (202) 502–8659 (TTY).

o. The licensee states its unequivocal intent to submit an application for a subsequent license for Project No. 2711. Pursuant to 18 CFR 16.20, each application for a subsequent license and any competing license applications must be filed with the Commission at least 24 months prior to the expiration of the existing license. All applications for license for this project must be filed by November 30, 2023.

p. Register online at *http://www.ferc.gov/docs-filing/esubscription.asp* to be notified via email of new filing and issuances related to this or other pending projects. For assistance, contact FERC Online Support.

Dated: January 21, 2021.

**Kimberly D. Bose,**
*Secretary.*

[FR Doc. 2021–01777 Filed 1–26–21; 8:45 am]

**BILLING CODE 6717–01–P**

---

**DEPARTMENT OF ENERGY**

**Federal Energy Regulatory Commission**

**Combined Notice of Filings**

Take notice that the Commission has received the following Natural Gas Pipeline Rate and Refund Report filings:

*Docket Number:* PR21–16–000.
*Applicants:* Gulf Coast Express Pipeline LLC.
*Description:* Tariff filing per 284.123(b),(e)+(g): Estimated Fuel Adjustment to be effective 12/1/2020 under PR21–16.
*Filed Date:* 1/14/2021.
*Accession Number:* 202101145036.
*Comments Due:* 5 p.m. ET 2/4/2021.
*284.123(g) Protests Due:* 5 p.m. ET 3/15/2021.

*Docket Numbers:* RP21–383–000.
*Applicants:* National Fuel Gas Supply Corporation.
*Description:* § 4(d) Rate Filing: Non-Conforming (Spotlight Amendments) to be effective 2/15/2021.
*Filed Date:* 1/14/21.
*Accession Number:* 20210114–5032.
*Comments Due:* 5 p.m. ET 1/26/21.

*Docket Numbers:* RP21–384–000.
*Applicants:* Portland Natural Gas Transmission System.
*Description:* § 4(d) Rate Filing: Address Update to be effective 2/16/2021.
*Filed Date:* 1/15/21.
*Accession Number:* 20210115–5015.
*Comments Due:* 5 p.m. ET 1/27/21.

*Docket Numbers:* RP21–385–000.
*Applicants:* Boardwalk Storage Company, LLC.
*Description:* § 4(d) Rate Filing: Form(s) of Service Agmt GMS Updates to be effective 3/1/2021.
*Filed Date:* 1/15/21.
*Accession Number:* 20210115–5025.
*Comments Due:* 5 p.m. ET 1/27/21.

*Docket Numbers:* RP21–386–000.
*Applicants:* Texas Gas Transmission, LLC.
*Description:* § 4(d) Rate Filing: Form(s) of Service Agmt GMS Filing to be effective 3/1/2021.
*Filed Date:* 1/15/21.
*Accession Number:* 20210115–5029.
*Comments Due:* 5 p.m. ET 1/27/21.

*Docket Numbers:* RP21–387–000.
*Applicants:* Gulf South Pipeline Company, LLC.
*Description:* § 4(d) Rate Filing: Form(s) of Service Agmt GMS Filing to be effective 3/1/2021.
*Filed Date:* 1/15/21.
*Accession Number:* 20210115–5032.
*Comments Due:* 5 p.m. ET 1/27/21.

*Docket Numbers:* RP21–388–000.
*Applicants:* Gulf South Pipeline Company, LLC.
*Description:* § 4(d) Rate Filing: Create Bistineau Transportation Service to be effective 3/1/2021.
*Filed Date:* 1/15/21.
*Accession Number:* 20210115–5038.
*Comments Due:* 5 p.m. ET 1/27/21.

*Docket Numbers:* RP21–389–000.
*Applicants:* TransCameron Pipeline, LLC.
*Description:* § 4(d) Rate Filing: Baseline new to be effective 3/16/2021.
*Filed Date:* 1/15/21.
*Accession Number:* 20210115–5120.
*Comments Due:* 5 p.m. ET 1/27/21.

*Docket Numbers:* RP21–390–000.
*Applicants:* Algonquin Gas Transmission, LLC.
*Description:* Compliance filing Cancellation of Rate Schedule X–1—Docket CP21–10 Compliance Filing to be effective 2/15/2021.
*Filed Date:* 1/15/21.
*Accession Number:* 20210115–5194.
*Comments Due:* 5 p.m. ET 1/27/21.

The filings are accessible in the Commission's eLibrary system (*https://elibrary.ferc.gov/idmws/search/fercgensearch.asp*) by querying the docket number.

Any person desiring to intervene or protest in any of the above proceedings must file in accordance with Rules 211 and 214 of the Commission's Regulations (18 CFR 385.211 and 385.214) on or before 5:00 p.m. Eastern time on the specified date(s). Protests may be considered, but intervention is necessary to become a party to the proceeding.

eFiling is encouraged. More detailed information relating to filing requirements, interventions, protests, service, and qualifying facilities filings can be found at: *http://www.ferc.gov/docs-filing/efiling/filing-req.pdf.* For other information, call (866) 208–3676 (toll free). For TTY, call (202) 502–8659.

Dated: January 19, 2021.

**Nathaniel J. Davis, Sr.,**

*Deputy Secretary.*

[FR Doc. 2021–01659 Filed 1–26–21; 8:45 am]

**BILLING CODE 6717–01–P**

---

## DEPARTMENT OF ENERGY

### Federal Energy Regulatory Commission

[Docket No. CP21–29–000]

### Gas Transmission Northwest, LLC; Notice of Request Under Blanket Authorization and Establishing Intervention and Protest Deadline

Take notice that on January 13, 2020, Gas Transmission Northwest, LLC (GTN), 700 Louisiana Street, Suite 700, Houston, Texas 77002–2700, filed in the above referenced docket, a prior notice request pursuant to sections 157.205 and 157.208(b) of the Commission's regulations under the Natural Gas Act (NGA) and GTN's blanket certificate issued in Docket No. CP82–530–000, for authorization to construct and operate one (1) new compressor station, the Coyote Springs Compressor Station in Morrow County, Oregon (Coyote Springs Compressor Station Project), all as more fully set forth in the application which is on file with the Commission and open to public inspection.

In addition to publishing the full text of this document in the **Federal Register**, the Commission provides all interested persons an opportunity to view and/or print the contents of this document via the internet through the Commission's Home Page (*http://ferc.gov*) using the "eLibrary" link. Enter the docket number excluding the last three digits in the docket number field to access the document. At this time, the Commission has suspended access to the Commission's Public Reference Room, due to the proclamation declaring a National Emergency concerning the Novel Coronavirus Disease (COVID–19), issued by the President on March 13, 2020. For assistance, contact FERC at *FERCOnlineSupport@ferc.gov* or call toll-free, (886) 208–3676 or TYY, (202) 502–8659.

Any questions regarding this prior notice request should be directed to Richard Bralow, Senior Legal Counsel, Gas Transmission Northwest LLC, 700 Louisiana Street, Suite 700, Houston, Texas 77002–2700, at (832) 320–5177 or by email to *richard_bralow@tcenergy.com.*

## Public Participation

There are three ways to become involved in the Commission's review of this project: You can file a protest to the project, you can file a motion to intervene in the proceeding, and you can file comments on the project. There is no fee or cost for filing protests, motions to intervene, or comments. The deadline for filing protests, motions to intervene, and comments is 5:00 p.m. Eastern Time on March 22, 2021. How to file protests, motions to intervene, and comments is explained below.

### Protests

Pursuant to section 157.205 of the Commission's regulations under the NGA,[1] any person[2] or the Commission's staff may file a protest to the request. If no protest is filed within the time allowed or if a protest is filed and then withdrawn within 30 days after the allowed time for filing a protest, the proposed activity shall be deemed to be authorized effective the day after the time allowed for protest. If a protest is filed and not withdrawn within 30 days after the time allowed for filing a protest, the instant request for authorization will be considered by the Commission.

Protests must comply with the requirements specified in section 157.205(e) of the Commission's regulations,[3] and must be submitted by the protest deadline, which is March 22, 2021. A protest may also serve as a motion to intervene so long as the protestor states it also seeks to be an intervenor.

### Interventions

Any person has the option to file a motion to intervene in this proceeding. Only intervenors have the right to request rehearing of Commission orders issued in this proceeding and to subsequently challenge the Commission's orders in the U.S. Circuit Courts of Appeal.

To intervene, you must submit a motion to intervene to the Commission in accordance with Rule 214 of the Commission's Rules of Practice and Procedure[4] and the regulations under the NGA[5] by the intervention deadline for the project, which is March 22, 2021. As described further in Rule 214, your motion to intervene must state, to the extent known, your position regarding the proceeding, as well as your interest in the proceeding. For an individual, this could include your status as a landowner, ratepayer, resident of an impacted community, or recreationist. You do not need to have property directly impacted by the project in order to intervene. For more information about motions to intervene, refer to the FERC website at *https://www.ferc.gov/resources/guides/how-to/intervene.asp.*

All timely, unopposed motions to intervene are automatically granted by operation of Rule 214(c)(1). Motions to intervene that are filed after the intervention deadline are untimely and may be denied. Any late-filed motion to intervene must show good cause for being late and must explain why the time limitation should be waived and provide justification by reference to factors set forth in Rule 214(d) of the Commission's Rules and Regulations. A person obtaining party status will be placed on the service list maintained by the Secretary of the Commission and will receive copies (paper or electronic) of all documents filed by the applicant and by all other parties.

### Comments

Any person wishing to comment on the project may do so. The Commission considers all comments received about the project in determining the appropriate action to be taken. To ensure that your comments are timely and properly recorded, please submit your comments on or before March 22, 2021. The filing of a comment alone will not serve to make the filer a party to the proceeding. To become a party, you must intervene in the proceeding.

### How To File Protests, Interventions, and Comments

There are two ways to submit protests, motions to intervene, and comments. In both instances, please reference the Project docket number CP21–29–000 in your submission.

(1) You may file your protest, motion to intervene, and comments by using the Commission's eFiling feature, which is located on the Commission's website (*www.ferc.gov*) under the link to *Documents and Filings.* New eFiling users must first create an account by clicking on "eRegister." You will be asked to select the type of filing you are making; first select "General" and then select "Protest", "Intervention", or "Comment on a Filing"; or[6]

---

[1] 18 CFR 157.205.

[2] Persons include individuals, organizations, businesses, municipalities, and other entities. 18 CFR 385.102(d).

[3] 18 CFR 157.205(e).

[4] 18 CFR 385.214.

[5] 18 CFR 157.10.

---

[6] Additionally, you may file your comments electronically by using the eComment feature, which is located on the Commission's website at *www.ferc.gov* under the link to Documents and Filings. Using eComment is an easy method for

(2) You can file a paper copy of your submission by mailing it to the address below.[7] Your submission must reference the Project docket number CP21–29–000.

Kimberly D. Bose, Secretary, Federal Energy Regulatory Commission, 888 First Street NE, Washington, DC 20426

The Commission encourages electronic filing of submissions (option 1 above) and has eFiling staff available to assist you at (202) 502–8258 or *FercOnlineSupport@ferc.gov.*

Protests and motions to intervene must be served on the applicant either by mail at: 700 Louisiana Street, Suite 700, Houston, Texas 77002–2700, or email (with a link to the document) at: *richard_bralow@tcenergy.com.* Any subsequent submissions by an intervenor must be served on the applicant and all other parties to the proceeding. Contact information for parties can be downloaded from the service list at the eService link on FERC Online.

**Tracking the Proceeding**

Throughout the proceeding, additional information about the project will be available from the Commission's Office of External Affairs, at (866) 208–FERC, or on the FERC website at *www.ferc.gov* using the "eLibrary" link as described above. The eLibrary link also provides access to the texts of all formal documents issued by the Commission, such as orders, notices, and rulemakings.

In addition, the Commission offers a free service called eSubscription which allows you to keep track of all formal issuances and submittals in specific dockets. This can reduce the amount of time you spend researching proceedings by automatically providing you with notification of these filings, document summaries, and direct links to the documents. For more information and to register, go to *www.ferc.gov/docs-filing/esubscription.asp.*

Dated: January 21, 2021.

**Kimberly D. Bose,**
*Secretary.*

[FR Doc. 2021–01773 Filed 1–26–21; 8:45 am]

**BILLING CODE 6717–01–P**

interested persons to submit brief, text-only comments on a project.

[7] Hand-delivered submissions in docketed proceedings should be delivered to Health and Human Services, 12225 Wilkins Avenue, Rockville, Maryland 20852.

## DEPARTMENT OF ENERGY

**Federal Energy Regulatory Commission**

**[Project No. 14430–0093]**

## Apple Inc., Monroe Hydro, LLC; Notice of Transfer of Exemption

1. On January 8, 2021, Apple Inc., exemptee for the Monroe Drop Hydroelectric Project No. 14430, filed a letter notifying the Commission that the project was transferred from Apple Inc. to Monroe Hydro, LLC. The exemption from licensing was originally issued on August 1, 2014.[1] The project is located on the U.S. Bureau of Reclamation's North Unit Irrigation District's Main Canal near the town of Culver, Jefferson County, Oregon. The transfer of an exemption does not require Commission approval.

2. Monroe Hydro, LLC is now the exemptee of the Monroe Drop Hydroelectric Project No. 14430. All correspondence must be forwarded to: Mrs. Gia Schneider, Monroe Hydro, LLC, 2401 Monarch Street, Alameda, CA 94501, Phone: (510) 606–9073.

Dated: January 21, 2021.

**Kimberly D. Bose,**
*Secretary.*

[FR Doc. 2021–01774 Filed 1–26–21; 8:45 am]

**BILLING CODE 6717–01–P**

## DEPARTMENT OF ENERGY

**Federal Energy Regulatory Commission**

**Combined Notice of Filings #1**

Take notice that the Commission received the following electric rate filings:

*Docket Numbers:* ER15–1471–011; ER10–1874–012; ER10–2721–010; ER10–2861–009; ER12–1308–012; ER13–1504–010; ER15–1672–010; ER16–2010–005; ER16–2561–005; ER16–711–008; ER16–915–004; ER19–2287–002; ER19–2289–002; ER19–2294–002; ER19–2305–002; ER19–9–006.

*Applicants:* Blue Sky West, LLC, Comanche Solar PV, LLC, El Paso Electric Company, Evergreen Wind Power II, LLC, Fountain Valley Power, L.L.C., Goal Line L.P., Hancock Wind, LLC, KES Kingsburg, L.P., Mankato Energy Center, LLC, Mankato Energy Center II, LLC, Mesquite Power, LLC, Palouse Wind, LLC, Pio Pico Energy Center, LLC, Sunflower Wind Project, LLC, SWG Arapahoe, LLC, Valencia Power, LLC.

[1] *Monroe Hydro, LLC,* 148 FERC ¶ 62,098 (2014).

*Description:* Notice of Non-Material Change in Status of Blue Sky West, LLC, et al.

*Filed Date:* 1/19/21.
*Accession Number:* 20210119–5245.
*Comments Due:* 5 p.m. ET 2/9/21.

*Docket Numbers:* ER15–632–011; ER14–2140–011; ER14–2141–011; ER14–2465–012; ER14–2466–012; ER14–2939–009; ER15–1952–009; ER15–2728–011; ER15–634–011.

*Applicants:* CID Solar, LLC, Cottonwood Solar, LLC, RE Columbia Two, LLC, RE Camelot, LLC, Pavant Solar, LLC, Imperial Valley Solar Company (IVSC) 2, LLC, Maricopa West Solar PV, LLC, Mulberry Farm, LLC, Selmer Farm, LLC.

*Description:* Notice of Non-Material Change in Status of Dominion Companies.

*Filed Date:* 1/19/21.
*Accession Number:* 20210119–5250.
*Comments Due:* 5 p.m. ET 2/9/21.

*Docket Numbers:* ER16–505–006.

*Applicants:* GridLiance High Plains LLC.

*Description:* Compliance filing: Gridliance HP Supplemental Compliance Filing ER15–2594 to be effective N/A.

*Filed Date:* 1/19/21.
*Accession Number:* 20210119–5163.
*Comments Due:* 5 p.m. ET 2/9/21.

*Docket Numbers:* ER20–1505–003.

*Applicants:* Basin Electric Power Cooperative, Inc.

*Description:* Notice of Change in Status of Basin Electric Power Cooperative.

*Filed Date:* 1/19/21.
*Accession Number:* 20210119–5244.
*Comments Due:* 5 p.m. ET 2/9/21.

*Docket Numbers:* ER21–786–001.

*Applicants:* Trans Bay Cable LLC.

*Description:* Tariff Amendment: Revisions to the Annual TRBAA Filing 2020 to be effective 1/1/2021.

*Filed Date:* 1/21/21.
*Accession Number:* 20210121–5239.
*Comments Due:* 5 p.m. ET 2/11/21.

*Docket Numbers:* ER21–916–000.

*Applicants:* PJM Interconnection, L.L.C.

*Description:* § 205(d) Rate Filing: Amendment to ISA/ICSA; Queue No. AC1–068 to be effective 1/28/2019.

*Filed Date:* 1/21/21.
*Accession Number:* 20210121–5004.
*Comments Due:* 5 p.m. ET 2/11/21.

*Docket Numbers:* ER21–917–000.

*Applicants:* PJM Interconnection, L.L.C.

*Description:* § 205(d) Rate Filing: Amendment to ISA/CSA, SA Nos. 5920 and 5308; Queue No. AC1–069 to be effective 1/28/2019.

*Filed Date:* 1/21/21.
*Accession Number:* 20210121–5005.
*Comments Due:* 5 p.m. ET 2/11/21.
*Docket Numbers:* ER21–918–000.
*Applicants:* PJM Interconnection, L.L.C.
*Description:* § 205(d) Rate Filing: Amendment to ISA/CSA, SA Nos. 5291 and 5312 ; Queue No. AC1–165 to be effective 1/28/2019.

*Filed Date:* 1/21/21.
*Accession Number:* 20210121–5006.
*Comments Due:* 5 p.m. ET 2/11/21.
*Docket Numbers:* ER21–919–000.
*Applicants:* PJM Interconnection, L.L.C.
*Description:* § 205(d) Rate Filing: Amendment to ISA/CSA, SA Nos. 5409 and 5410 ; Queue No. AC1–166 to be effective 5/15/2019.

*Filed Date:* 1/21/21.
*Accession Number:* 20210121–5007.
*Comments Due:* 5 p.m. ET 2/11/21.
*Docket Numbers:* ER21–920–000.
*Applicants:* Midcontinent Independent System Operator, Inc.
*Description:* § 205(d) Rate Filing: 2021–01–21_Demand Response Testing Deferral and Collateral Handling to be effective 3/23/2021.

*Filed Date:* 1/21/21.
*Accession Number:* 20210121–5090.
*Comments Due:* 5 p.m. ET 2/11/21.
*Docket Numbers:* ER21–921–000.
*Applicants:* Midcontinent Independent System Operator, Inc.
*Description:* § 205(d) Rate Filing: 2021–01–21_SA 3634 Certificate of Concurrence LGE–KU–BREC 1st Rev IA to be effective 12/31/2020.

*Filed Date:* 1/21/21.
*Accession Number:* 20210121–5096.
*Comments Due:* 5 p.m. ET 2/11/21.
*Docket Numbers:* ER21–922–000.
*Applicants:* Entergy Mississippi, LLC.
*Description:* Tariff Cancellation: EML–TVA WDS Agreement Cancellation to be effective 11/1/2020.

*Filed Date:* 1/21/21.
*Accession Number:* 20210121–5116.
*Comments Due:* 5 p.m. ET 2/11/21.
*Docket Numbers:* ER21–923–000.
*Applicants:* Southwest Power Pool, Inc.
*Description:* Tariff Cancellation: Notice of Cancellation of Tariff ID 3292-Western Energy Imbalance Service Tariff to be effective 2/1/2021.

*Filed Date:* 1/21/21.
*Accession Number:* 20210121–5117.
*Comments Due:* 5 p.m. ET 2/11/21.
*Docket Numbers:* ER21–924–000.
*Applicants:* Southwest Power Pool, Inc.
*Description:* Tariff Cancellation: Notice of Cancellation of Tariff ID 3310-WEIS Rate Schedule Tariff to be effective 2/1/2021.

*Filed Date:* 1/21/21.
*Accession Number:* 20210121–5122.
*Comments Due:* 5 p.m. ET 2/11/21.
*Docket Numbers:* ER21–925–000.
*Applicants:* Southwest Power Pool, Inc.
*Description:* § 205(d) Rate Filing: Corrections to Schedule 1 to be effective 4/1/2021.

*Filed Date:* 1/21/21.
*Accession Number:* 20210121–5189.
*Comments Due:* 5 p.m. ET 2/11/21.

Take notice that the Commission received the following electric securities filings:

*Docket Numbers:* ES21–27–000.
*Applicants:* The Empire District Electric Company.
*Description:* Application Under Section 204 of the Federal Power Act for Authorization to Issue Securities of The Empire District Electric Company.
*Filed Date:* 1/19/21.
*Accession Number:* 20210119–5237.
*Comments Due:* 5 p.m. ET 2/9/21.

Take notice that the Commission received the following public utility holding company filings:

*Docket Numbers:* PH21–6–000.
*Applicants:* IIF US Holding 2 GP, LLC.
*Description:* IIF US Holding 2 GP, LLC submits FERC–65–A Notice of Non-Material Change in Fact to Waiver Notification.
*Filed Date:* 1/19/21.
*Accession Number:* 20210119–5243.
*Comments Due:* 5 p.m. ET 2/9/21.

The filings are accessible in the Commission's eLibrary system (*https://elibrary.ferc.gov/idmws/search/fercgensearch.asp*) by querying the docket number.

Any person desiring to intervene or protest in any of the above proceedings must file in accordance with Rules 211 and 214 of the Commission's Regulations (18 CFR 385.211 and 385.214) on or before 5:00 p.m. Eastern time on the specified comment date. Protests may be considered, but intervention is necessary to become a party to the proceeding.

eFiling is encouraged. More detailed information relating to filing requirements, interventions, protests, service, and qualifying facilities filings can be found at: *http://www.ferc.gov/docs-filing/efiling/filing-req.pdf*. For other information, call (866) 208–3676 (toll free). For TTY, call (202) 502–8659.

Dated: January 21, 2021.

**Nathaniel J. Davis, Sr.,**
*Deputy Secretary.*

[FR Doc. 2021–01757 Filed 1–26–21; 8:45 am]

**BILLING CODE 6717–01–P**

## DEPARTMENT OF ENERGY

### Federal Energy Regulatory Commission

**[Project No. 2417–065]**

### Northern States Power Company—Wisconsin; Notice of Intent To File License Application, Filing of Pre-Application Document, Approving Use of the Traditional Licensing Process

a. *Type of Filing:* Notice of Intent to File License Application and Request to Use the Traditional Licensing Process.

b. *Project No.:* 2417–065.

c. *Date Filed:* November 30, 2020.

d. *Submitted By:* Northern States Power Company—Wisconsin (Northern States).

e. *Name of Project:* Hayward Hydroelectric Project.

f. *Location:* The Hayward Project is located on the Namekagon River in Sawyer Country, Wisconsin. No federal lands are occupied by the projects works or located within the project boundary.

g. *Filed Pursuant to:* 18 CFR 5.3 of the Commission's regulations.

h. *Potential Applicant Contact:* James M. Zyduck, Director of Hydro Plants, Northern States Power Company—Wisconsin, 1414 W. Hamilton Ave., P.O. Box 8, Eau Claire, WI 54702–0008; email at *James.Zyduck@XcelEnergy.com*.

i. *FERC Contact:* Laura Washington at (202) 502–6072; or email at *Laura.Washington@ferc.gov*. or Tyrone Williams at (202) 502–6331; or email at *Tyrone.Williams@ferc.gov*.

j. Northern States filed its request to use the Traditional Licensing Process on November 30, 2020. Northern States provided public notice of its request on December 11, 2020. In a letter dated January 21, 2021, the Director of the Division of Hydropower Licensing approved Northern States' request to use the Traditional Licensing Process.

k. With this notice, we are initiating informal consultation with the U.S. Fish and Wildlife Service and/or NOAA Fisheries under section 7 of the Endangered Species Act and the joint agency regulations thereunder at 50 CFR, Part 402; and NOAA Fisheries under section 305(b) of the Magnuson-Stevens Fishery Conservation and Management Act and implementing regulations at 50 CFR 600.920. We are also initiating consultation with the Wisconsin State Historic Preservation Officer as required by section 106, National Historic Preservation Act, and the implementing regulations of the Advisory Council on Historic Preservation at 36 CFR 800.2.

l. With this notice, we are designating Northern States as the Commission's non-federal representative for carrying out informal consultation pursuant to section 7 of the Endangered Species Act, and consultation pursuant to section 106 of the National Historic Preservation Act.

m. Northern States filed a Pre-Application Document (PAD); including a proposed process plan and schedule with the Commission, pursuant to 18 CFR 5.6 of the Commission's regulations.

n. A copy of the PAD may be viewed and/or printed on the Commission's website (*http://www.ferc.gov*), using the "eLibrary" link. Enter the docket number, excluding the last three digits in the docket number field to access the document. At this time, the Commission has suspended access to the Commission's Public Reference Room, due to the proclamation declaring a National Emergency concerning the Novel Coronavirus Disease (COVID–19), issued by the President on March 13, 2020. For assistance, contact FERC Online Support at *FERCOnlineSupport@ferc.gov*, (866) 208–3676 (toll free), or (202) 502–8659 (TTY).

o. The licensee states its unequivocal intent to submit an application for a subsequent license for Project No 2417. Pursuant to 18 CFR 16.20, each application for a subsequent license and any competing license applications must be filed with the Commission at least 24 months prior to the expiration of the existing license. All applications for license for this project must be filed by November 30, 2023.

p. Register online at *http://www.ferc.gov/docs-filing/esubscription.asp* to be notified via email of new filing and issuances related to this or other pending projects. For assistance, contact FERC Online Support.

Dated: January 21, 2021.

**Kimberly D. Bose,**
*Secretary.*

[FR Doc. 2021–01778 Filed 1–26–21; 8:45 am]

**BILLING CODE 6717–01–P**

---

**DEPARTMENT OF ENERGY**

**Federal Energy Regulatory Commission**

**Combined Notice of Filings**

Take notice that the Commission has received the following Natural Gas Pipeline Rate and Refund Report filings:

*Docket Number:* PR21–17–000.

*Applicants:* Columbia Gas of Maryland, Inc.

*Description:* Tariff filing per 284.123(b),(e)/: CMD Tariff Rates Jan 1 2021 to be effective 1/1/2021.

*Filed Date:* 1/19/21.

*Accession Number:* 20210119–5060.

*Comments/Protests Due:* 5 p.m. ET 2/9/2021.

*Docket Numbers:* RP21–391–000.

*Applicants:* Stagecoach Pipeline & Storage Company LLC.

*Description:* § 4(d) Rate Filing: Stagecoach Pipeline & Storage Company LLC—Filing of Negotiated Rate Amendment to be effective 12/1/2020.

*Filed Date:* 1/19/21.

*Accession Number:* 20210119–5000.

*Comments Due:* 5 p.m. ET 2/1/21.

*Docket Numbers:* RP21–392–000.

*Applicants:* Transcontinental Gas Pipe Line Company, LLC.

*Description:* § 4(d) Rate Filing: DPEs—PSNC (SET) to be effective 2/19/2021.

*Filed Date:* 1/19/21.

*Accession Number:* 20210119–5010.

*Comments Due:* 5 p.m. ET 2/1/21.

The filings are accessible in the Commission's eLibrary system (*https://elibrary.ferc.gov/idmws/search/fercgensearch.asp*) by querying the docket number.

Any person desiring to intervene or protest in any of the above proceedings must file in accordance with Rules 211 and 214 of the Commission's Regulations (18 CFR 385.211 and 385.214) on or before 5:00 p.m. Eastern time on the specified comment date. Protests may be considered, but intervention is necessary to become a party to the proceeding.

eFiling is encouraged. More detailed information relating to filing requirements, interventions, protests, service, and qualifying facilities filings can be found at: *http://www.ferc.gov/docs-filing/efiling/filing-req.pdf*. For other information, call (866) 208–3676 (toll free). For TTY, call (202) 502–8659.

Dated: January 21, 2021.

**Nathaniel J. Davis, Sr.,**
*Deputy Secretary.*

[FR Doc. 2021–01758 Filed 1–26–21; 8:45 am]

**BILLING CODE 6717–01–P**

---

**DEPARTMENT OF ENERGY**

**Federal Energy Regulatory Commission**

[Docket No. IC21–6–000]

**Commission Information Collection Activities (FERC–725S); Comment Request; Extension**

**AGENCY:** Federal Energy Regulatory Commission.

**ACTION:** Notice of information collection and request for comments.

**SUMMARY:** In compliance with the requirements of the Paperwork Reduction Act of 1995, the Federal Energy Regulatory Commission (Commission or FERC) is soliciting public comment on the currently approved information collection FERC–725S (Emergency Preparedness and Operations (EOP) Reliability Standards) and submitting the information collection to the Office of Management and Budget (OMB) for review. Any interested person may file comments directly with OMB and should address a copy of those comments to the Commission as explained below.

**DATES:** Comments on the collection of information are due February 26, 2021.

**ADDRESSES:** You may submit comments (identified by Docket No. IC21–6–000) by one of the following methods:

• *eFiling at Commission's Website: http://www.ferc.gov.*

• *U.S. Postal Service Mail:* Persons unable to file electronically may mail similar pleadings to the Federal Energy Regulatory Commission, 888 First Street NE, Washington, DC 20426.

• Effective 7/1/2020, delivery of filings other than by eFiling or the U.S. Postal Service should be delivered to Federal Energy Regulatory Commission, Office of the Secretary, 12225 Wilkins Avenue, Rockville, Maryland 20852.

*Instructions:* All submissions must be formatted and filed in accordance with submission guidelines at: *http://www.ferc.gov*. For user assistance, contact FERC Online Support by email at *ferconlinesupport@ferc.gov*, or by phone at (866) 208–3676 (toll-free).

*Docket:* Users interested in receiving automatic notification of activity in this docket or in viewing/downloading comments and issuances in this docket may do so at *http://www.ferc.gov.*

**FOR FURTHER INFORMATION CONTACT:** Ellen Brown may be reached by email at *DataClearance@FERC.gov*, telephone at (202) 502–8663.

**SUPPLEMENTARY INFORMATION:**

*Title:* FERC–725S, Emergency Preparedness and Operations (EOP) Reliability Standards.

*OMB Control No.:* 1902–0270.

*Type of Request:* Three-year approval of the FERC–725S information collection requirements with no changes to the current reporting requirements.

*Abstract:* The Electricity Modernization Act of 2005, which is Title XII of the Energy Policy Act of 2005 (EPAct 2005), added a new section

215 to the Federal Power Act (FPA).[1] FPA section 215 requires a Commission-certified Electric Reliability Organization (ERO) to develop mandatory and enforceable Reliability Standards, subject to Commission review and approval. Section 215 of the FPA requires a Commission-certified ERO to develop mandatory and enforceable Reliability Standards, subject to Commission review and approval. In 2006, the Commission certified North American Electric Reliability Corporation (NERC) as the ERO pursuant to section 215 of the FPA. FERC–725S consists of Emergency Preparedness and Operations (EOP) Reliability Standards, EOP–004–4 (Event Reporting), EOP–005–3 (System Restoration from Blackstart Resources), EOP–006–3 (System Restoration Coordination), EOP–008–2 (Loss of Control Center Functionality), EOP–010–1 (Geomagnetic Disturbance Operations), and EOP–011–1 (Emergency Operations). These Reliability Standards enhance reliability by:

(1) Providing accurate reporting of events to NERC's event analysis group to analyze the impact on the reliability of the bulk electric system (Reliability Standard EOP–004–4).

(2) delineating the roles and responsibilities of entities that support system restoration from blackstart resources which generate power without the support of the bulk electric system (Reliability Standard EOP–005–3).

(3) clarifying the procedures and coordination requirements for reliability coordinator personnel to execute system restoration processes (Reliability Standard EOP–006–3).

(4) refining the required elements of an operating plan used to continue reliable operations of the bulk electric system in the event that primary control center functionality is lost (Reliability Standard EOP–008–2).

(5) addressing the effects of operating Emergencies by ensuring each Transmission Operator and Balancing Authority has developed Operating Plan(s) to mitigate operating Emergencies, and that those plans are coordinated within a Reliability Coordinator Area (EOP–010–1).

(6) streamlining the requirements for Emergency operations of the Bulk Electric System. Attachment 1, which is incorporated into Requirements R2 and R6, provides the process and descriptions of the levels used by the Reliability Coordinator when communicating the condition of a Balancing Authority that is experiencing an Energy Emergency (EOP–011–1).

The 60-day notice was published on November 18, 2020 (85 FR 73477), and no comments were received.

*Type of Respondents:* Public utilities subject to the FPA.

*Estimate of Annual Burden*[2] *and cost:*[3] With the exception of adjustments due to the Commission's recent experience with this information collection, the Commission estimates there will be no changes in the annual public reporting burden for the FERC–735S, as follows:

## FERC–725S

| Reliability standard and associated requirement | Number of respondents [4] | Annual number of responses per respondent | Total number of responses | Average burden & cost per response | Total annual burden & total annual cost | Cost per respondent ($) |
|---|---|---|---|---|---|---|
| | (1) | (2) | (1) * (2) = (3) | (4) | (3) * (4) = (5) | (5) ÷ (1) |
| EOP–010–1 ............................. | 181 | 1 | 181 | 20 hrs.; $1,660 ...... | 3,620 hrs.; $300,460. | $1,660 |
| EOP–011–1 ............................. | 12 | 1 | 12 | 1,500 hrs.; $124,500. | 18,000 hrs.; $1,494,000. | 124,500 |
| EOP–004–4, EOP–005–3, EOP–006–3, EOP–008–2. | 280 | 1 | 280 | 250.58 hrs.; $20,798. | 70,162.4 hrs.; $5,234,440. | 20,798 |
| Total EOP ...................... | 473 | .................... | .................... | .................... | 91,782 hrs.; $7,028,900. | .................... |

*Comments:* Comments are invited on: (1) Whether the collection of information is necessary for the proper performance of the functions of the Commission, including whether the information will have practical utility; (2) the accuracy of the agency's estimate of the burden and cost of the collection of information, including the validity of the methodology and assumptions used; (3) ways to enhance the quality, utility and clarity of the information collection; and (4) ways to minimize the burden of the collection of information on those who are to respond, including the use of automated collection techniques or other forms of information technology.

Dated: January 21, 2021.

**Nathaniel J. Davis, Sr.,**

*Deputy Secretary.*

[FR Doc. 2021–01756 Filed 1–26–21; 8:45 am]

**BILLING CODE 6717–01–P**

# FEDERAL COMMUNICATIONS COMMISSION

[OMB 3060–0645; FRS 17379]

## Information Collection Being Reviewed by the Federal Communications Commission

**AGENCY:** Federal Communications Commission.

**ACTION:** Notice and request for comments.

**SUMMARY:** As part of its continuing effort to reduce paperwork burdens, and as

---

[1] 16 U.S.C. 824*o*. The approved Reliability Standards are available on the Commission's eLibrary document retrieval system on the NERC website, *www.nerc.com.*

[2] Burden is defined as the total time, effort, or financial resources expended by persons to generate, maintain, retain, or disclose or provide information to or for a Federal agency. For further explanation of what is included in the information collection burden, refer to 5 Code of Federal Regulations 1320.3.

[3] Commission staff estimates that the industry's skill set and cost (for wages and benefits) for FERC–725S are approximately the same as the Commission's average cost. The FERC 2020 average salary plus benefits for one FERC full-time equivalent (FTE) is $172,329/year (or $83.00/hour).

[4] The number of respondents is based on NERC compliance registration information as of October 2, 2020.

required by the Paperwork Reduction Act of 1995 (PRA), the Federal Communications Commission (FCC or Commission) invites the general public and other Federal agencies to take this opportunity to comment on the following information collections. Comments are requested concerning: whether the proposed collection of information is necessary for the proper performance of the functions of the Commission, including whether the information shall have practical utility; the accuracy of the Commission's burden estimate; ways to enhance the quality, utility, and clarity of the information collected; ways to minimize the burden of the collection of information on the respondents, including the use of automated collection techniques or other forms of information technology; and ways to further reduce the information collection burden on small business concerns with fewer than 25 employees.

The FCC may not conduct or sponsor a collection of information unless it displays a currently valid Office of Management and Budget (OMB) control number. No person shall be subject to any penalty for failing to comply with a collection of information subject to the PRA that does not display a valid OMB control number.

**DATES:** Written PRA comments should be submitted on or before March 29, 2021. If you anticipate that you will be submitting comments but find it difficult to do so within the period of time allowed by this notice, you should advise the contact listed below as soon as possible.

**ADDRESSES:** Direct all PRA comments to Cathy Williams, FCC, via email to *PRA@ fcc.gov* and to *Cathy.Williams@fcc.gov.*

**FOR FURTHER INFORMATION CONTACT:** For additional information about the information collection, contact Cathy Williams at (202) 418–2918.

**SUPPLEMENTARY INFORMATION:**

*OMB Control Number:* 3060–0645.

*Title:* Sections 17.4, 17.48 and 17.49, Antenna Structure Registration Requirements.

*Form Number:* N/A.

*Type of Review:* Extension of a currently approved collection.

*Respondents:* Business or other for-profit institutions, not-for-profit institutions and state, local or tribal government.

*Number of Respondents:* 16,050 respondents; 69,716 responses.

*Estimated Time per Response:* .1–.25 hours.

*Frequency of Response:* On occasion reporting requirement, recordkeeping requirement and third-party disclosure requirement.

*Obligation to Respond:* Required to obtain or retain benefits. Statutory authority for this information collection is contained in Sections 4, 303, 48 Stat. 1066, 1082, as amended; 47 U.S.C. 154, 303.

*Total Annual Burden:* 9,889 hours.

*Total Annual Cost:* $59,460.

*Privacy Impact Assessment:* No impact(s).

*Nature and Extent of Confidentiality:* There is no need for confidentiality. However, respondents may request materials or information submitted to the Commission be withheld from public inspection under 47 CFR 0.459 of the Commission's rules.

*Needs and Uses:* The Commission is seeking Office of Management and Budget (OMB) approval for an extension of this information collection in order to obtain the full three-year approval. The Commission has adjusted its burden and cost estimates in order to update the collection burdens necessary to implement a uniform registration process as well as safe and effective lighting procedures for owners of antenna structures.

Section 17.4 includes third party disclosure requirements. Specifically, Section 17.4 requires the owner of any proposed or existing antenna structure that requires notice of proposed construction to the Federal Aviation Administration (FAA) to register the structure with the Commission. This includes those structures used as part of the stations licensed by the Commission for the transmission of radio energy, or to be used as part of a cable television head-end system. If a Federal Government antenna structure is to be used by a Commission licensee, the structure must be registered with the Commission. Section 17.4(f) provides that antenna structure owners shall immediately provide to all tenant licensees and permittees notification that the structure has been registered. This may be done by providing either a copy of Form 854 or a link to the FCC antenna structure registration website. This notification may be done electronically or via paper mail.

Section 17.4(g) requires antenna structure owners to display the Antenna Structure Registration Number in a conspicuous place that is readily visible near the base of the antenna. This rule specifically requires that the Antenna Structure Number be displayed so that it is conspicuously visible and legible from the publicly accessible area nearest the base of the antenna structure along the publicly accessible roadway or path. Where an antenna structure is surrounded by a perimeter fence, or where the point of access includes an

access gate, the Antenna Structure Registration Number should be posted on the perimeter fence or access gate. Where multiple antenna structures having separate Antenna Structure Registration Numbers are located within a single fenced area, the Antenna Structure Registration Numbers must be posted both on the perimeter fence or access gate and near the base of each antenna structure. If the base of the antenna structure has more than one point of access, the rule requires that the Antenna Structure Registration Number be posted so that it is visible at the publicly accessible area nearest each such point of access. The registration number is issued to identify antenna structure owners in order to enforce the Congressionally mandated provisions related to the owners.

Sections 17.48 and 17.49 contain reporting and recordkeeping requirements. Section 17.48(a) requires that antenna structure owners immediately report outages of top steady burning lights or flashing antenna structure lights to the FAA, if not corrected within 30 minutes. Upon receipt of the outage notification, the FAA will issue a Notice to Airmen (NOTAM), which notifies aircraft of the outage. Consistent with FAA requirements, if a lighting outage cannot be repaired within the FAA's original NOTAM period, Section 17.48(a) further requires the antenna structure owner to notify the FAA of that fact and provide any needed updates to its estimated return-to-service date. The rule also requires antenna structure owners to continue to provide these updates to the FAA every NOTAM period until its lights are repaired.

Section 17.49 requires antenna structure owners to maintain a record of observed or otherwise known extinguishments or improper functioning of structure lights for two years and provide the records to the Commission upon request.

Federal Communications Commission.

**Marlene Dortch,**

*Secretary, Office of the Secretary.*

[FR Doc. 2021–01602 Filed 1–26–21; 8:45 am]

**BILLING CODE 6712–01–P**

---

# FEDERAL MARITIME COMMISSION

## Notice of Agreements Filed

The Commission hereby gives notice of the filing of the following agreement under the Shipping Act of 1984. Interested parties may submit comments, relevant information, or documents regarding the agreements to

the Secretary by email at *Secretary@fmc.gov,* or by mail, Federal Maritime Commission, Washington, DC 20573. Comments will be most helpful to the Commission if received within 12 days of the date this notice appears in the **Federal Register**. Copies of agreements are available through the Commission's website (*www.fmc.gov*) or by contacting the Office of Agreements at (202) 523–5793 or *tradeanalysis@fmc.gov.*

*Agreement No.:* 201329–001.
*Agreement Name:* NPDL/PFLG Slot Charter Agreement.
*Parties:* Neptune Pacific Direct Line and Pacific Forum Line (Group) Limited (''PFLG'').
*Filing Party:* David Monroe; GKG Law.
*Synopsis:* The amendment updates the name of PDL International Pte Ltd. to Neptune Pacific Direct Line.
*Proposed Effective Date:* 1/15/2021.
*Location: https://www2.fmc.gov/FMC.Agreements.Web/Public/AgreementHistory/26453.*

*Agreement No.:* 201295–001.
*Agreement Name:* Australia New Zealand South Pacific Islands Agreement.
*Parties:* Neptune Pacific Direct Line; ANL Singapore Pte. Ltd. d/b/a Sofrana ANL; Pacific Forum Line (Group) Limited; and Neptune Pacific Line, Inc.
*Filing Party:* David Monroe; GKG Law.
*Synopsis:* The amendment updates the name and address of ANL Singapore and Neptune Pacific Direct Line, and removes revenue and cost pooling authority under the Agreement.
*Proposed Effective Date:* 3/5/2021.
*Location: https://www2.fmc.gov/FMC.Agreements.Web/Public/AgreementHistory/21386.*

*Agreement No.:* 011790–004.
*Agreement Name:* Dole Ocean Cargo Express/King Ocean Services Limited Space Charter Agreement.
*Parties:* Dole Ocean Cargo Express and King Ocean Services Limited, Inc.
*Filing Party:* Wayne Rohde; Cozen O'Connor.
*Synopsis:* The amendment divides Article 5.1 into sub-articles and adds a new Article 5.1(b) to reflect an on-going arrangement agreed upon by the parties. It also updates the address of Dole.
*Proposed Effective Date:* 3/5/2021.
*Location: https://www2.fmc.gov/FMC.Agreements.Web/Public/AgreementHistory/639.*

*Agreement No.:* 201265–001.
*Agreement Name:* Crowley/Seaboard Costa Rica & Panama Space Charter Agreement.
*Parties:* Crowley Latin America Services, LLC and Seaboard Marine, Ltd.
*Filing Party:* Wayne Rohde; Cozen O'Connor.

*Synopsis:* The amendment revises Article 7 to extend the minimum duration of the agreement.
*Proposed Effective Date:* 3/6/2021.
*Location: https://www2.fmc.gov/FMC.Agreements.Web/Public/AgreementHistory/15263.*

Dated: January 22, 2021.

**Rachel E. Dickon,**
*Secretary.*
[FR Doc. 2021–01775 Filed 1–26–21; 8:45 am]
**BILLING CODE 6731–02–P**

## FEDERAL RESERVE SYSTEM

### Formations of, Acquisitions by, and Mergers of Bank Holding Companies Extension of Comment Period

The companies listed in this notice applied to the Board for approval, pursuant to the Bank Holding Company Act of 1956 (12 U.S.C. 1841 *et seq.*) (BHC Act), Regulation Y (12 CFR part 225), and all other applicable statutes and regulations to become a bank holding company and/or to acquire the assets or the ownership of, control of, or the power to vote shares of a bank or bank holding company and all of the banks and nonbanking companies owned by the bank holding company, including the companies listed below.

The public portion of the application listed below, as well as other related filings required by the Board, if any, are available for immediate inspection at the Federal Reserve Bank indicated below and at the offices of the Board of Governors. This information may also be obtained on an expedited basis, upon request, by contacting the appropriate Federal Reserve Bank and from the Board's Freedom of Information Office at *https://www.federalreserve.gov/foia/request.htm.* Interested persons may express their views in writing on the standards enumerated in the BHC Act (12 U.S.C. 1842(c)).

The comment period for this application has been extended for good cause, in order to provide additional opportunity for interested persons to submit comments. Comments regarding the application must be received at the Reserve Bank indicated or the offices of the Board of Governors, Ann E. Misback, Secretary of the Board, 20th Street and Constitution Avenue NW, Washington DC 20551–0001; or *https://www.federalreserve.gov/apps/ContactUs/feedback.aspx,* not later than February 22, 2021.

*A. Federal Reserve Bank of Richmond* (Adam M. Drimer, Assistant Vice President) 701 East Byrd Street, Richmond, Virginia 23219. Comments

can also be sent electronically to *comments.applications@rich.frb.org:*

1. *First Citizens BancShares, Inc.,* Raleigh, North Carolina; to acquire CIT Group, Inc., New York, New York, and thereby indirectly acquire CIT Bank, National Association, Pasadena, California.

Board of Governors of the Federal Reserve System, January 21, 2021.

**Ann Misback,**
*Secretary of the Board.*
[FR Doc. 2021–01810 Filed 1–26–21; 8:45 am]
**BILLING CODE P**

## FEDERAL RESERVE SYSTEM

### Change in Bank Control Notices; Acquisitions of Shares of a Bank or Bank Holding Company

The notificants listed below have applied under the Change in Bank Control Act (Act) (12 U.S.C. 1817(j)) and § 225.41 of the Board's Regulation Y (12 CFR 225.41) to acquire shares of a bank or bank holding company. The factors that are considered in acting on the applications are set forth in paragraph 7 of the Act (12 U.S.C. 1817(j)(7)).

The public portions of the applications listed below, as well as other related filings required by the Board, if any, are available for immediate inspection at the Federal Reserve Bank(s) indicated below and at the offices of the Board of Governors. This information may also be obtained on an expedited basis, upon request, by contacting the appropriate Federal Reserve Bank and from the Board's Freedom of Information Office at *https://www.federalreserve.gov/foia/request.htm.* Interested persons may express their views in writing on the standards enumerated in paragraph 7 of the Act.

Comments regarding each of these applications must be received at the Reserve Bank indicated or the offices of the Board of Governors, Ann E. Misback, Secretary of the Board, 20th Street and Constitution Avenue NW, Washington, DC 20551–0001, not later than February 11, 2021.

*A. Federal Reserve Bank of Kansas City* (Dennis Denney, Assistant Vice President) 1 Memorial Drive, Kansas City, Missouri 64198–0001:

1. *Jeremy Brian McHugh, Donielle Eileen McHugh, Nathan Donald McHugh, and Kristina Lee McHugh, all of Murdock, Nebraska;* as a group acting in concert, to retain voting shares of McHugh Investment Company, Murdock, Nebraska, and thereby indirectly retain voting shares of Corn

Growers State Bank, Murdock, Nebraska.

2. *Thomas M. Annesley, Norman, Oklahoma,* as trustee of the Roy T. Oliver and Rebecca L. Oliver 2020 Irrevocable Trust, Oklahoma City, Oklahoma, and a member of the Oliver Family Group; to become the largest individual shareholder by acquiring additional voting shares of Valliance Financial Corp., and thereby indirectly acquire voting shares of Valliance Bank, both of Oklahoma City, Oklahoma.

In addition, The Roy T. Oliver and Rebecca L. Oliver 2020 Irrevocable Trust to join the Oliver Family Group, a group acting in concert, by acquiring shares of Valliance Financial Corp.

3. *Larry Adams, Chambers, Nebraska,* individually as the largest shareholder, as trustee of the Patrick Adams Testamentary Trust and the S and B Trust, both of Chambers, Nebraska, and as a member of the Adams Family Group, a group acting in concert; to retain voting shares of Chambanco, Inc., and thereby indirectly retain shares of Chambers State Bank, both of Chambers, Nebraska.

In addition, Patrick Adams, individually, the Patrick Adams Testamentary Trust, and the S and B Trust, all of Chambers, Nebraska; to join the Adams Family Group Chambanco, Inc., and thereby indirectly retain shares of Chambers State Bank.

*B. Federal Reserve Bank of St. Louis* (David L. Hubbard, Senior Manager) P.O. Box 442, St. Louis, Missouri 63166–2034. Comments can also be sent electronically to *Comments.applications@stls.frb.org:*

1. *Carl W. Adams, Jr., Port Charlotte, Florida,* individually and as trustee of the Carl W. Adams, Jr. Revocable Living Trust; Curtis Adams, Deborah Adams, and Caitlyn Adams, all of Quincy, Illinois; Collin Adams, Iowa City, Iowa; Craig Adams and his minor children, Heidi Adams and Jacob Adams, all of Clive, Iowa; Curt Hilbing and his minor child, and Crystal Hilbing and her minor children, all of Quincy, Illinois; to retain voting shares of First Bankers Trustshares, Inc., and thereby indirectly retain voting shares of First Bankers Trust Company, N.A., both of Quincy, Illinois.

Board of Governors of the Federal Reserve System, January 22, 2021.

**Michele Taylor Fennell,**
*Deputy Associate Secretary of the Board.*
[FR Doc. 2021–01808 Filed 1–26–21; 8:45 am]
**BILLING CODE P**

## DEPARTMENT OF HEALTH AND HUMAN SERVICES

### Centers for Disease Control and Prevention

### Board of Scientific Counselors, National Center for Health Statistics; Notice of Charter Renewal

**AGENCY:** Centers for Disease Control and Prevention (CDC), Department of Health and Human Services (HHS).

**ACTION:** Notice of charter renewal.

**SUMMARY:** This gives notice under the Federal Advisory Committee Act of October 6, 1972, that the Board of Scientific Counselors, National Center for Health Statistics, Department of Health and Human Services, has been renewed for a 2-year period through January 19, 2023.

**FOR FURTHER INFORMATION CONTACT:** Sayheedha Uddin, M.D., M.P.H., Designated Federal Officer, Board of Scientific Counselors, National Center for Health Statistics, Department of Health and Human Services, 3311 Toledo Road, Room 2627, Mailstop P08, Hyattsville, Maryland 20782, telephone (301) 458–4303 or fax (301) 458–4020.

The Director, Strategic Business Initiatives Unit, Office of the Chief Operating Officer, Centers for Disease Control and Prevention, has been delegated the authority to sign **Federal Register** notices pertaining to announcements of meetings and other committee management activities, for both the Centers for Disease Control and Prevention and the Agency for Toxic Substances and Disease Registry.

**Kalwant Smagh,**
*Director, Strategic Business Initiatives Unit, Office of the Chief Operating Officer, Centers for Disease Control and Prevention.*
[FR Doc. 2021–01738 Filed 1–26–21; 8:45 am]
**BILLING CODE 4163–18–P**

## DEPARTMENT OF HEALTH AND HUMAN SERVICES

### Centers for Disease Control and Prevention

[Docket No. CDC–2021–0008]

### Advisory Committee on Immunization Practices (ACIP)

**AGENCY:** Centers for Disease Control and Prevention (CDC), Department of Health and Human Services (HHS).

**ACTION:** Notice of meeting and request for comment.

**SUMMARY:** In accordance with the Federal Advisory Committee Act, the Centers for Disease Control and Prevention (CDC), announces the following meeting of the Advisory Committee on Immunization Practices (ACIP). This meeting is open to the public. Time will be available for public comment. The meeting will be webcast live via the World Wide Web.

**DATES:** The meeting will be held on February 24–25, 2021 from 10:00 a.m. to 5:30 p.m., EST (times subject to change).

Written comments must be received on or before February 25, 2021.

**ADDRESSES:** For more information on ACIP please visit the ACIP website: *http://www.cdc.gov/vaccines/acip/ index.html.* You may submit comments, identified by Docket No. CDC–2021– 0008 by any of the following methods:

• *Federal eRulemaking Portal: https://www.regulations.gov.* Follow the instructions for submitting comments.

• *Mail:* Docket No. CDC–2021–0008, c/o Attn: ACIP Meeting, Centers for Disease Control and Prevention, 1600 Clifton Road NE, MS H24–8, Atlanta, GA 30329–4027.

*Instructions:* All submissions received must include the Agency name and Docket Number. All relevant comments received in conformance with the *https://www.regulations.gov* suitability policy will be posted without change to *https://www.regulations.gov,* including any personal information provided. For access to the docket to read background documents or comments received, go to *https://www.regulations.gov.*

Written public comments submitted 72 hours prior to the ACIP meeting will be provided to ACIP members before the meeting.

**FOR FURTHER INFORMATION CONTACT:** Stephanie Thomas, ACIP Committee Management Specialist, Centers for Disease Control and Prevention, National Center for Immunization and Respiratory Diseases, 1600 Clifton Road, NE, MS–H24–8, Atlanta, GA 30329– 4027; Telephone: 404–639–8367; Email: *ACIP@cdc.gov.*

**SUPPLEMENTARY INFORMATION:**

*Purpose:* The committee is charged with advising the Director, CDC, on the use of immunizing agents. In addition, under 42 U.S.C. 1396s, the committee is mandated to establish and periodically review and, as appropriate, revise the list of vaccines for administration through the Vaccines for Children (VFC) program, along with schedules regarding dosing interval, dosage, and contraindications to administration of vaccines. Further, under provisions of the Affordable Care Act, section 2713 of the Public Health Service Act, immunization recommendations of the ACIP that have

been approved by the Director of the Centers for Disease Control and Prevention and appear on CDC immunization schedules must be covered by applicable health plans.

*Matters To Be Considered:* The agenda will include discussions on cholera vaccine, hepatitis B vaccine, influenza vaccines, zoster vaccine, orthopoxvirus vaccine, pneumococcal vaccine, rabies vaccine and tickborne encephalitis vaccine. A recommendation vote on the rabies vaccine is scheduled. Agenda items are subject to change as priorities dictate. For more information on the meeting agenda visit *https://www.cdc.gov/vaccines/acip/meetings/meetings-info.html.*

*Meeting Information:* The meeting will be webcast live via the World Wide Web; for more information on ACIP please visit the ACIP website: *http://www.cdc.gov/vaccines/acip/index.html.*

**Public Participation**

Interested persons or organizations are invited to participate by submitting written views, recommendations, and data. Please note that comments received, including attachments and other supporting materials are part of the public record and are subject to public disclosure. Do not include any information in your comment or supporting materials that you consider confidential or inappropriate for public disclosure. If you include your name, contact information, or other information that identifies you in the body of your comments, that information will be on public display. CDC will review all submissions and may choose to redact, or withhold, submissions containing private or proprietary information such as Social Security numbers, medical information, inappropriate language, or duplicate/near duplicate examples of a mass-mail campaign. CDC will carefully consider all comments submitted into the docket. CDC does not accept comment by email.

*Written Public Comment:* Written comments must be received on or before February 25, 2021. Oral Public Comment: This meeting will include time for members of the public to make an oral comment. Oral public comment will occur before any scheduled votes including all votes relevant to the ACIP's Affordable Care Act and Vaccines for Children Program roles. Priority will be given to individuals who submit a request to make an oral public comment before the meeting according to the procedures below.

*Procedure for Oral Public Comment:* All persons interested in making an oral public comment at the February 24, 2021 ACIP meeting must submit a request at *http://www.cdc.gov/vaccines/acip/meetings/* no later than 11:59 p.m., EST, February 18, 2021 according to the instructions provided.

If the number of persons requesting to speak is greater than can be reasonably accommodated during the scheduled time, CDC will conduct a lottery to determine the speakers for the scheduled public comment session. CDC staff will notify individuals regarding their request to speak by email by February 19, 2021. To accommodate the significant interest in participation in the oral public comment session of ACIP meetings, each speaker will be limited to 3 minutes, and each speaker may only speak once per meeting.

The Director, Strategic Business Initiatives Unit, Office of the Chief Operating Officer, Centers for Disease Control and Prevention, has been delegated the authority to sign **Federal Register** notices pertaining to announcements of meetings and other committee management activities, for both the Centers for Disease Control and Prevention and the Agency for Toxic Substances and Disease Registry.

**Kalwant Smagh,**
*Director, Strategic Business Initiatives Unit, Office of the Chief Operating Officer, Centers for Disease Control and Prevention.*
[FR Doc. 2021–01737 Filed 1–26–21; 8:45 am]
**BILLING CODE 4163–18–P**

---

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

**Centers for Disease Control and Prevention**

**Healthcare Infection Control Practices Advisory Committee (HICPAC); Notice of Charter Renewal**

**AGENCY:** Centers for Disease Control and Prevention (CDC), Department of Health and Human Services (HHS).

**ACTION:** Notice of charter renewal.

**SUMMARY:** This gives notice under the Federal Advisory Committee Act of October 6, 1972, that the Healthcare Infection Control Practices Advisory Committee, Department of Health and Human Services, has been renewed for a 2-year period through January 19, 2023.

**FOR FURTHER INFORMATION CONTACT:** Koo-Whang Chung, M.P.H., HICPAC, Division of Healthcare Quality Promotion, National Center for Emerging and Zoonotic Infectious Diseases, CDC, 1600 Clifton Road NE, Mailstop H16–3, Atlanta, Georgia 30329–4027, Telephone: (404) 498–0730, Email: *HICPAC@cdc.gov.*

The Director, Strategic Business Initiatives Unit, Office of the Chief Operating Officer, Centers for Disease Control and Prevention, has been delegated the authority to sign **Federal Register** notices pertaining to announcements of meetings and other committee management activities, for both the Centers for Disease Control and Prevention and the Agency for Toxic Substances and Disease Registry.

**Kalwant Smagh,**
*Director, Strategic Business Initiatives Unit, Office of the Chief Operating Officer, Centers for Disease Control and Prevention.*
[FR Doc. 2021–01739 Filed 1–26–21; 8:45 am]
**BILLING CODE 4163–18–P**

---

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

**Centers for Disease Control and Prevention**

**National Center for Health Statistics (NCHS), ICD–10 Coordination and Maintenance (C&M) Committee Meeting**

**AGENCY:** Centers for Disease Control and Prevention (CDC), Department of Health and Human Services (HHS).

**ACTION:** Notice of meeting.

**SUMMARY:** The CDC, National Center for Health Statistics (NCHS), Classifications and Public Health Data Standards Staff, announces the following meeting of the ICD–10 Coordination and Maintenance (C&M) Committee meeting. This meeting is open to the public, limited only by audio lines available. Online Registration is not required.

**DATES:** The meeting will be held on March 9, 2021, from 9:00 a.m. to 5:00 p.m., EDT, and March 10, 2021, from 9:00 a.m. to 5:00 p.m., EDT.

**ADDRESSES:** This is a virtual meeting. Information will be provided on each of our respective web pages when it becomes available. For CDC/NCHS *https://www.cdc.gov/nchs/icd/icd10cm_maintenance.htm.* For CMS *https://www.cms.gov/Medicare/Coding/ICD9ProviderDiagnosticCodes/meetings.*

**FOR FURTHER INFORMATION CONTACT:** Traci Ramirez, Program Specialist, CDC, 3311 Toledo Road, Hyattsville, Maryland 20782, Telephone (301) 458–4454; *TRamirez@cdc.gov.*

**SUPPLEMENTARY INFORMATION:**

*Purpose:* The ICD–10 Coordination and Maintenance (C&M) Committee is a public forum for the presentation of proposed modifications to the International Classification of Diseases, Tenth Revision, Clinical Modification and ICD–10 Procedure Coding System.

*Matters To Be Considered:* The tentative agenda will include discussions on ICD–10–CM and ICD–10–PCS topics listed below. Agenda items are subject to change as priorities dictate. Please refer to the posted agenda for updates one month prior to the meeting.

## ICD–10–PCS Topics

1. Administration of Trilaciclib *
2. Administration of ZEPZELCA™ (lurbinectedin) *
3. Administration of ENSPRYNG™ (satralizumab-mwge) *
4. Administration of ciltacabtagene autoleucel (cilta-cel) *
5. Administration of Amivantamab *
6. Administration of Molnupiravir *
7. Transfusion of Pathogen Reduced Cryoprecipitated Fibrinogen Complex (PRCFC) *
8. Administration of OTL–103
9. Administration of OTL–200
10. Application of Topical Agent for Non-Excisional Eschar Removal *
11. Application of Bioengineered Skin Construct *
12. Computer-Aided Assessment, Characterization and Notification Software for Head CT Scan *
13. Computer-Aided Detection, Triage and Notification Software for Acute Subdural Hemorrhage with Non-Contrast CT of the Head *
14. Computer-Aided Detection, Triage and Notification Software for Computed Tomography Pulmonary Angiography (CTPA) *
15. Computer-Aided Detection, Triage and Notification Software for Stroke with Non-Contrast CT of the Head *
16. Transthoracic Echocardiography with AI-Guide Image Acquisition *
17. Tissue Oxygen Saturation Imaging of GI Tract *
18. Mechanical Thrombectomy using AI Assistance *
19. Transcatheter Replacement of Pulmonary Valve *
20. Combined Thoracic Aortic Arch Replacement and Descending Thoracic Aorta Restriction *
21. Extraluminal Autologous Saphenous Vein Graft Support *
22. Coronary Intravascular Lithotripsy (IVL) *
23. Percutaneous Creation of an Arterio-Venous Fistula (AVF) *
24. Pharyngeal Electrical Stimulation *
25. Patient Specific Intervertebral Body Fusion *
26. Colonic Irrigation for Colonoscopy *
27. Blood Collection Utilizing Specimen Diversion *
28. Concurrent Measurement of mRNA, PCR test and Detection of Antibodies *
29. Metal Ureteral Stents
30. Regional Anticoagulation for Renal Replacement Therapy
31. Gene Expression Assay
32. Total Artificial Heart Systems
33. Tourniquets Used for Acute Hemorrhage Control
34. Measurement of Flow in a Cerebral Fluid Shunt
35. Endoscopic Suturing Device for Upper and Lower GI Procedures
36. Section X Updates
37. Addenda and Key Updates
   * Applicant has submitted a New Technology Add-on Payment (NTAP) application for FY 2022.

Presentations for procedure code requests are conducted by both the requestor and CMS during the Coordination & Maintenance Committee meeting. Discussion from the requestor generally focuses on the clinical issues for the procedure or technology, followed by the proposed coding options from a CMS analyst. Topics presented may also include requests for new procedure codes that relate to a new technology add-on payment (NTAP) policy request.

CMS is modifying the approach for presenting the new technology add-on payment (NTAP) related ICD–10–PCS procedure code requests that involve the administration of a therapeutic agent for the March 9–10, 2021 ICD–10 Coordination and Maintenance Committee meeting due to the volume of NTAP applications and corresponding procedure code requests being considered for FY 2022. Consistent with the requirements of section 1886(d)(5)(K)(iii) of the Social Security Act, applicants submitted requests to create a unique procedure code to describe the administration of a therapeutic agent, such as the option to create a new code in Section X within the ICD–10–PCS procedure code classification. In order to accommodate the number of requests received for the March 9–10, 2021 ICD–10 Coordination and Maintenance Committee meeting, CMS will initially only display those meeting materials associated with the NTAP related ICD–10–PCS procedure code requests that involve the administration of a therapeutic agent on the CMS website in early February 2021 at: *https://www.cms.gov/Medicare/Coding/ICD10/C-and-M-Meeting-Materials.*

The six NTAP related ICD–10–PCS procedure code requests that involve the administration of a therapeutic agent are:

1. Administration of Trilaciclib
2. Administration of ZEPZELCA™ (lurbinectedin)
3. Administration of ENSPRYNG™ (satralizumab-mwge)
4. Administration of Ciltacabtagene Autoleucel (cilta-cel)
5. Administration of Amivantamab
6. Transfusion of Pathogen Reduced Cryoprecipitated Fibrinogen Complex (PRCFC)

These topics will not be presented during the March 9–10, 2021 meeting.

CMS will solicit public comments regarding any clinical questions or coding options included for these six procedure code topics in advance of the meeting continuing through the end of the public comment period, April 9, 2021. Members of the public should send any questions or comments to the CMS mailbox at: *ICDProcedureCodeRequest@cms.hhs.gov* by the April 9, 2021 deadline.

CMS intends to post a question and answer document in advance of the meeting to address any clinical or coding questions that members of the public may have submitted. Following the conclusion of the meeting, CMS will post an updated question and answer document to address any additional clinical or coding questions that members of the public may have submitted during the meeting that CMS was not able to address or that were submitted after the meeting.

The NTAP related ICD–10–PCS procedure code requests that do not involve the administration of a therapeutic agent and all non-NTAP related procedure code requests will continue to be presented during the virtual meeting on March 9, 2021 consistent with the standard meeting process.

CMS will make all meeting materials and related documents available at: *https://www.cms.gov/Medicare/Coding/ICD10/C-and-M-Meeting-Materials.* Any inquiries related to the procedure code topics scheduled for the March 9–10, 2021 ICD–10 Coordination and Maintenance Committee meeting that are under consideration for October 1, 2021 implementation should be sent to the CMS mailbox at: *ICDProcedureCodeRequest@cms.hhs.gov.*

## ICD–10–CM Topics

1. Anatomical Flank Specificity
2. ANCA vasculitis
3. Apnea related conditions of Newborn
4. Atrial and Atrioventricular Septal Defect
5. Alzheimer's/Vascular Dementia
6. Endometriosis
7. Limb girdle muscular dystrophies expansion
8. Lumbar disc degeneration, with pain
9. Mild Cognitive Disorder due to Physiological Conditions (representation)
10. Prolonged Grief Disorder
11. Refractory Angina Pectoris
12. Rheumatic mitral valve leaflet calcification
13. Slipped Upper Femoral Epiphysis
14. Short Stature due to Endocrine Disorder
15. Substance Use Disorder, unspecified, in remission
16. Torsade de pointes expansion
17. Von Willebrand Disease

18. Addenda

The Director, Strategic Business Initiatives Unit, Office of the Chief Operating Officer, Centers for Disease Control and Prevention, has been delegated the authority to sign **Federal Register** notices pertaining to announcements of meetings and other committee management activities, for both the Centers for Disease Control and Prevention and the Agency for Toxic Substances and Disease Registry.

**Kalwant Smagh,**

*Director, Strategic Business Initiatives Unit, Office of the Chief Operating Officer, Centers for Disease Control and Prevention.*

[FR Doc. 2021–01740 Filed 1–26–21; 8:45 am]

**BILLING CODE 4163–18–P**

---

## DEPARTMENT OF HEALTH AND HUMAN SERVICES

### National Institutes of Health

### Center for Scientific Review; Notice of Closed Meetings

Pursuant to section 10(d) of the Federal Advisory Committee Act, as amended, notice is hereby given of the following meetings.

The meetings will be closed to the public in accordance with the provisions set forth in sections 552b(c)(4) and 552b(c)(6), Title 5 U.S.C., as amended. The grant applications and the discussions could disclose confidential trade secrets or commercial property such as patentable material, and personal information concerning individuals associated with the grant applications, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

*Name of Committee:* Biology of Development and Aging Integrated Review Group; Radiation Therapeutics and Biology Study Section.

*Date:* February 22–23, 2021.

*Time:* 8:30 a.m. to 4:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* Bo Hong, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institutes of Health, 6701 Rockledge Drive, Room 6194, MSC 7804, Bethesda, MD 20892, 301–996–6208, *hongb@csr.nih.gov.*

*Name of Committee:* Oncology 2— Translational Clinical Integrated Review Group; Clinical Oncology Study Section.

*Date:* February 22–23, 2021.

*Time:* 9:00 a.m. to 6:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* Malaya Chatterjee, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institutes of Health, 6701 Rockledge Drive, Room 6192, MSC 7804, Bethesda, MD 20892, 301–806–2515, *chatterm@csr.nih.gov.*

*Name of Committee:* Center for Scientific Review Special Emphasis Panel; Molecular Genetics A.

*Date:* February 22, 2021.

*Time:* 1:00 p.m. to 3:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* Elena Smirnova, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institutes of Health, 6701 Rockledge Drive, Room 5187, MSC 7840, Bethesda, MD 20892, 301–357–9112, *smirnove@csr.nih.gov.*

*Name of Committee:* Interdisciplinary Molecular Sciences and Training Integrated Review Group; Cellular and Molecular Technologies Study Section.

*Date:* February 24–25, 2021.

*Time:* 9:00 a.m. to 6:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* Tatiana V. Cohen, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institutes of Health, 6701 Rockledge Drive, Room 5213, Bethesda, MD 20892, 301–455–2364, *tatiana.cohen@nih.gov.*

*Name of Committee:* Cardiovascular and Respiratory Sciences Integrated Review Group; Integrative Myocardial Physiology/ Pathophysiology A Study Section.

*Date:* February 24–25, 2021.

*Time:* 9:00 a.m. to 6:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* Abdelouahab Aitouche, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institutes of Health, 6701 Rockledge Drive, Room 4222, MSC 7814, Bethesda, MD 20892, 301–435–2365, *aitouchea@csr.nih.gov.*

*Name of Committee:* Population Sciences and Epidemiology Integrated Review Group; Neurological, Aging and Musculoskeletal Epidemiology Study Section.

*Date:* February 24–26, 2021.

*Time:* 10:00 a.m. to 6:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* Heidi B. Friedman, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institutes of Health, 6701 Rockledge Drive, Room 1012A, MSC 7770, Bethesda, MD 20892, 301–435–1721, *hfriedman@csr.nih.gov.*

*Name of Committee:* Integrative, Functional and Cognitive Neuroscience Integrated Review Group; Neurobiology of Pain and Itch Study Section.

*Date:* February 24–25, 2021.

*Time:* 10:00 a.m. to 5:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* M. Catherine Bennett, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institutes of Health, 6701 Rockledge Drive, Room 5182, MSC 7846, Bethesda, MD 20892, 301–435–1766, *bennettc3@csr.nih.gov.*

*Name of Committee:* Center for Scientific Review Special Emphasis Panel; PAR Panel: Understanding Alzheimer's Disease.

*Date:* February 24, 2021.

*Time:* 10:00 a.m. to 7:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* Boris P. Sokolov, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institutes of Health, 6701 Rockledge Drive, Room 5217A, MSC 7846, Bethesda, MD 20892, 301–408–9115, *bsokolov@csr.nih.gov.*

*Name of Committee:* Molecular, Cellular and Developmental Neuroscience Integrated Review Group; Neurodifferentiation, Plasticity, Regeneration and Rhythmicity Study Section.

*Date:* February 24–25, 2021.

*Time:* 11:00 a.m. to 7:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* Joanne T. Fujii, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institutes of Health, 6701 Rockledge Drive, Room 4184, MSC 7850, Bethesda, MD 20892, (301) 435–1178, *fujiij@csr.nih.gov.*

(Catalogue of Federal Domestic Assistance Program Nos. 93.306, Comparative Medicine; 93.333, Clinical Research, 93.306, 93.333, 93.337, 93.393–93.396, 93.837–93.844, 93.846–93.878, 93.892, 93.893, National Institutes of Health, HHS)

Dated: January 21, 2021.

**David W. Freeman,**

*Program Analyst, Office of Federal Advisory Committee Policy.*

[FR Doc. 2021–01733 Filed 1–26–21; 8:45 am]

**BILLING CODE 4140–01–P**

---

## DEPARTMENT OF HEALTH AND HUMAN SERVICES

### National Institutes of Health

### National Cancer Institute; Notice of Meeting

Pursuant to section 10(d) of the Federal Advisory Committee Act, as amended, notice is hereby given of a

meeting of the National Cancer Advisory Board.

The meeting will be held as a virtual meeting and is open to the public as indicated below. Individuals who plan to view the virtual meeting and need special assistance or other reasonable accommodations to view the meeting should notify the Contact Person listed below in advance of the meeting. The meeting will be videocast and can be accessed from the NIH Videocasting and Podcasting website (*http://videocast.nih.gov/*).

A portion of the National Cancer Advisory Board meeting will be closed to the public in accordance with the provisions set forth in sections 552b(c)(4) and 552b(c)(6), Title 5 U.S.C., as amended. The grant applications and the discussions could disclose confidential trade secrets or commercial property such as patentable material, and personal information concerning individuals associated with the grant applications, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

*Name of Committee:* National Cancer Advisory Board.

*Date:* February 11, 2021.

*Open:* 11:00 a.m. to 1:00 p.m.

*Agenda:* NCAB Subcommittee Meetings—Subcommittee on Planning and Budget and Ad Hoc Subcommittee on Experimental Therapeutics.

*Open:* 1:15 p.m. to 3:45 p.m.

*Agenda:* Director's and Program reports and presentations; business of the Board.

*Closed:* 4:00 p.m. to 5:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Cancer Institute—Shady Grove, 9609 Medical Center Drive, Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* Paulette S. Gray, Ph.D., Executive Secretary, Division of Extramural Activities, National Cancer Institute—Shady Grove, National Institutes of Health, 9609 Medical Center Drive, 7th Floor, Room 7W444, Bethesda, MD 20892, 240–276–6340, *grayp@mail.nih.gov.*

Any interested person may file written comments with the committee by forwarding the statement to the Contact Person listed on this notice. The statement should include the name, address, telephone number and when applicable, the business or professional affiliation of the interested person.

Information is also available on the Institute's/Center's home page:

NCAB: *https://deainfo.nci.nih.gov/advisory/ncab/ncabmeetings.htm,* where an agenda, instructions for accessing the virtual NCAB meetings, and any additional information for the meetings will be posted when available.

(Catalogue of Federal Domestic Assistance Program Nos. 93.392, Cancer Construction; 93.393, Cancer Cause and Prevention Research; 93.394, Cancer Detection and Diagnosis Research; 93.395, Cancer Treatment Research; 93.396, Cancer Biology Research; 93.397, Cancer Centers Support; 93.398, Cancer Research Manpower; 93.399, Cancer Control, National Institutes of Health, HHS)

Dated: January 21, 2021.

**Melanie J. Pantoja,**
*Program Analyst, Office of Federal Advisory Committee Policy.*

[FR Doc. 2021–01702 Filed 1–26–21; 8:45 am]

**BILLING CODE 4140–01–P**

---

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

**National Institutes of Health**

**National Institute on Drug Abuse; Amended Notice of Meeting**

Notice is hereby given of a change in the meeting of the National Advisory Council on Drug Abuse, February 9, 2021, 11:00 a.m. to February 9, 2021, 4:30 p.m., National Institutes of Health, National Institute on Drug Abuse, 301 North Stonestreet Avenue, Bethesda, MD 20892 which was published in the **Federal Register** on December 29, 2020, 85 FR 85652.

This notice is being amended to change the start and end times of the closed session from 11:00 a.m.–12:45 p.m. to 10:45 a.m.–12:30 p.m. on February 9, 2021. The meeting is partially closed to the public.

Dated: January 21, 2021.

**Melanie J. Pantoja,**
*Program Analyst, Office of Federal Advisory Committee Policy.*

[FR Doc. 2021–01709 Filed 1–26–21; 8:45 am]

**BILLING CODE 4140–01–P**

---

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

**National Institutes of Health**

**Center for Scientific Review; Notice of Closed Meetings**

Pursuant to section 10(d) of the Federal Advisory Committee Act, as amended, notice is hereby given of the following meetings.

The meetings will be closed to the public in accordance with the provisions set forth in sections 552b(c)(4) and 552b(c)(6), Title 5 U.S.C., as amended. The grant applications and the discussions could disclose confidential trade secrets or commercial property such as patentable material, and personal information concerning individuals associated with the grant applications, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

*Name of Committee:* Surgical Sciences, Biomedical Imaging and Bioengineering Integrated Review Group; Imaging Technology Development Study Section.

*Date:* February 25–26, 2021.

*Time:* 9:00 a.m. to 7:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* Joonil Seog, SCD, Scientific Review Officer, Center for Scientific Review, 6701 Rockledge Drive, Room 804–N, Bethesda, MD 20852, 301–402–9791, *joonil.seog@nih.gov.*

*Name of Committee:* Molecular, Cellular and Developmental Neuroscience Integrated Review Group; Neurotransporters, Receptors, and Calcium Signaling Study Section.

*Date:* February 25, 2021.

*Time:* 9:00 a.m. to 6:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* Peter B. Guthrie, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institutes of Health, 6701 Rockledge Drive, Room 4182, MSC 7850, Bethesda, MD 20892, (301) 435–1239, *guthriep@csr.nih.gov.*

*Name of Committee:* Musculoskeletal, Oral and Skin Sciences Integrated Review Group; Oral, Dental and Craniofacial Sciences Study Section.

*Date:* February 25–26, 2021.

*Time:* 9:00 a.m. to 6:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* Yi-Hsin Liu, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institutes of Health, 6701 Rockledge Drive, Room 4214, MSC 7814, Bethesda, MD 20892, 301–435–1781, *liuyh@csr.nih.gov.*

*Name of Committee:* Cardiovascular and Respiratory Sciences Integrated Review Group; Respiratory Integrative Biology and Translational Research Study Section.

*Date:* February 25–26, 2021.

*Time:* 9:00 a.m. to 6:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* Bradley Nuss, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institutes of Health, 6701 Rockledge Drive, Room 4142, MSC7814, Bethesda, MD 20892, 301–451–8754, *nussb@csr.nih.gov.*

*Name of Committee:* Cell Biology Integrated Review Group; Cellular Mechanisms in Aging and Development Study Section.

*Date:* February 25–26, 2021.

*Time:* 9:00 a.m. to 6:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* John Burch, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institute of Health, 6701 Rockledge Drive, Room 3213, MSC 7808, Bethesda, MD 20892, 301–408–9519, *burchjb@csr.nih.gov.*

*Name of Committee:* Molecular, Cellular and Developmental Neuroscience Integrated Review Group; Molecular Neuropharmacology and Signaling Study Section.

*Date:* February 25–26, 2021.

*Time:* 9:00 a.m. to 6:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* Vanessa S. Boyce, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institute of Health, 6701 Rockledge Drive, Rm. 4016F, MSC 7812, Bethesda, MD 20892, (301) 435–0908, *boycevs@csr.nih.gov.*

*Name of Committee:* Infectious Diseases and Immunology B Integrated Review Group; Immunity and Host Defense Study Section.

*Date:* February 25–26, 2021.

*Time:* 9:00 a.m. to 6:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* Scott Jakes, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institute of Health, 6701 Rockledge Drive, Room 4198, MSC 7812, Bethesda, MD 20892, 301–435–1506, *jakesse@mail.nih.gov.*

*Name of Committee:* Surgical Sciences, Biomedical Imaging and Bioengineering Integrated Review Group; Emerging Imaging Technologies and Applications Study Section.

*Date:* February 25–26, 2021.

*Time:* 9:00 a.m. to 6:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* Songtao Liu, MD, Scientific Review Officer, Center for Scientific Review, National Institute of Health, 6701 Rockledge Drive, Room 5118, Bethesda, MD 20817, 301–827–6828, *songtao.liu@nih.gov.*

*Name of Committee:* Infectious Diseases and Immunology A Integrated Review Group; Cellular and Molecular Immunology—B Study Section.

*Date:* February 25–26, 2021.

*Time:* 9:00 a.m. to 5:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* Liying Guo, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institute of

Health, 6701 Rockledge Drive, Room 4198, MSC 7812, Bethesda, MD 20892, (301) 827–7728, *lguo@mail.nih.gov.*

*Name of Committee:* Digestive, Kidney and Urological Systems Integrated Review Group; Digestive System Host Defense, Microbial Interactions and Immune and Inflammatory Disease Study Section.

*Date:* February 25–26, 2021.

*Time:* 9:00 a.m. to 6:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* Aiping Zhao, MD, Scientific Review Officer, Center for Scientific Review, National Institute of Health, 6701 Rockledge Drive, Room 2188, Bethesda, MD 20892–7818, (301) 435–0682, *zhaoa2@csr.nih.gov.*

*Name of Committee:* Digestive, Kidney and Urological Systems Integrated Review Group; Hepatobiliary Pathophysiology Study Section.

*Date:* February 25–26, 2021.

*Time:* 9:00 a.m. to 6:30 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* Jianxin Hu, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institute of Health, 6701 Rockledge Drive, Room 2156, Bethesda, MD 20892, 301–827–4417, *jianxinh@csr.nih.gov.*

*Name of Committee:* Oncology 1—Basic Translational Integrated Review Group; Cancer Molecular Pathobiology Study Section.

*Date:* February 25–26, 2021.

*Time:* 9:00 a.m. to 6:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* Manzoor Zarger, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institute of Health, 6701 Rockledge Drive, Room 6208, MSC 7804, Bethesda, MD 20892, (301) 435–2477, *zargerma@csr.nih.gov.*

*Name of Committee:* Infectious Diseases and Immunology A Integrated Review Group; Virology—A Study Section.

*Date:* February 25–26, 2021.

*Time:* 9:30 a.m. to 8:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* Kenneth M Izumi, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institute of Health, 6701 Rockledge Drive, Room 3204, MSC 7808, Bethesda, MD 20892, 301–496–6980, *izumikm@csr.nih.gov.*

*Name of Committee:* Bioengineering Sciences & Technologies Integrated Review Group; Modeling and Analysis of Biological Systems Study Section.

*Date:* February 25–26, 2021.

*Time:* 10:00 a.m. to 3:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* James J. Li, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institute of Health, 6701 Rockledge Drive, Room 5148, MSC 7849, Bethesda, MD 20892, 301–806–8065, *lijames@csr.nih.gov.*

*Name of Committee:* Infectious Diseases and Immunology B Integrated Review Group; Hypersensitivity, Autoimmune, and Immune-mediated Diseases Study Section.

*Date:* February 25–26, 2021.

*Time:* 10:00 a.m. to 7:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* Deborah Hodge, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institute of Health, 6701 Rockledge Drive, Room 4207, MSC 7812, Bethesda, MD 20892, (301) 435–1238, *hodged@mail.nih.gov.*

(Catalogue of Federal Domestic Assistance Program Nos. 93.306, Comparative Medicine; 93.333, Clinical Research, 93.306, 93.333, 93.337, 93.393–93.396, 93.837–93.844, 93.846–93.878, 93.892, 93.893, National Institutes of Health, HHS)

Dated: January 21, 2021.

**Melanie J. Pantoja,**

*Program Analyst, Office of Federal Advisory Committee Policy.*

[FR Doc. 2021–01706 Filed 1–26–21; 8:45 am]

**BILLING CODE 4140–01–P**

---

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**

**National Institutes of Health**

**National Institute of Dental & Craniofacial Research; Notice of Closed Meeting**

Pursuant to section 10(d) of the Federal Advisory Committee Act, as amended, notice is hereby given of the following meeting.

The meeting will be closed to the public in accordance with the provisions set forth in sections 552b(c)(4) and 552b(c)(6), Title 5 U.S.C., as amended. The grant applications and the discussions could disclose confidential trade secrets or commercial property such as patentable material, and personal information concerning individuals associated with the grant applications, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

*Name of Committee:* National Institute of Dental and Craniofacial Research Special

Emphasis Panel; ZDE1 EP (13) NIDCR Secondary and Genomic Data Analysis Application Review Meeting.

*Date:* March 10, 2021.

*Time:* 10:00 a.m. to 6:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institute of Dental and Craniofacial Research, National Institutes of Health, 6701 Democracy Boulevard, Suite 662, Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* Elizabeth M. Perruccio, Ph.D., Scientific Review Officer, Scientific Review Branch, Division of Extramural Activities, National Institute of Dental and Craniofacial Research, National Institute of Health, 6701 Democracy Boulevard, Suite 662, Bethesda, MD 20892, (301) 827–4603, *perruccioem@mail.nih.gov.*

(Catalogue of Federal Domestic Assistance Program Nos. 93.121, Oral Diseases and Disorders Research, National Institutes of Health, HHS)

Dated: January 21, 2021.

**Melanie J. Pantoja,**
*Program Analyst, Office of Federal Advisory Committee Policy.*

[FR Doc. 2021–01698 Filed 1–26–21; 8:45 am]

**BILLING CODE 4140–01–P**

---

# DEPARTMENT OF HEALTH AND HUMAN SERVICES

## National Institutes of Health

### National Institute of Mental Health; Notice of Closed Meetings

Pursuant to section 10(d) of the Federal Advisory Committee Act, as amended, notice is hereby given of the following meetings.

The meetings will be closed to the public in accordance with the provisions set forth in sections 552b(c)(4) and 552b(c)(6), Title 5 U.S.C., as amended. The grant applications and the discussions could disclose confidential trade secrets or commercial property such as patentable material, and personal information concerning individuals associated with the grant applications, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

*Name of Committee:* National Institute of Mental Health Special Emphasis Panel; Technology Based Interventions.

*Date:* February 23, 2021.

*Time:* 12:30 p.m. to 5:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, Neuroscience Center, 6001 Executive Boulevard, Rockville, MD 20852 (Telephone Conference Call).

*Contact Person:* Nicholas Gaiano, Ph.D., Review Branch Chief, Division of Extramural Activities, National Institute of Mental Health, NIH, Neuroscience Center/Room 6150/MSC 9606, 6001 Executive Boulevard,

Bethesda, MD 20892–9606, 301–443–2742, *nick.gaiano@nih.gov.*

*Name of Committee:* National Institute of Mental Health Special Emphasis Panel; NIMH Clinical Trials to Test the Effectiveness of Treatment, Preventive, and Services Interventions (R01).

*Date:* February 24, 2021.

*Time:* 11:00 a.m. to 5:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, Neuroscience Center, 6001 Executive Boulevard, Rockville, MD 20852 (Telephone Conference Call).

*Contact Person:* Marcy Ellen Burstein, Ph.D., Scientific Review Officer, Division of Extramural Activities, National Institute of Mental Health, NIH, Neuroscience Center, 6001 Executive Blvd., Room 6143, MSC 9606, Bethesda, MD 20892–9606, 301–443–9699, *bursteinme@mail.nih.gov.*

(Catalogue of Federal Domestic Assistance Program No. 93.242, Mental Health Research Grants, National Institutes of Health, HHS)

Dated: January 21, 2021.

**Melanie J. Pantoja,**
*Program Analyst, Office of Federal Advisory Committee Policy.*

[FR Doc. 2021–01700 Filed 1–26–21; 8:45 am]

**BILLING CODE 4140–01–P**

---

# DEPARTMENT OF HEALTH AND HUMAN SERVICES

## National Institutes of Health

### National Institute of Allergy and Infectious Diseases; Notice of Closed Meeting

Pursuant to section 10(d) of the Federal Advisory Committee Act, as amended, notice is hereby given of the following meeting.

The meeting will be closed to the public in accordance with the provisions set forth in sections 552b(c)(4) and 552b(c)(6), Title 5 U.S.C., as amended. The grant applications and the discussions could disclose confidential trade secrets or commercial property such as patentable material, and personal information concerning individuals associated with the grant applications, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

*Name of Committee:* National Institute of Allergy and Infectious Diseases Special Emphasis Panel; NIAID Trial Planning Grant (R34 Clinical Trials Not Allowed), NIAID Clinical Trial Implementation Cooperative Agreement (U01 Clinical Trial Required).

*Date:* February 12, 2021.

*Time:* 10:00 a.m. to 1:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institute of Allergy and Infectious Diseases, National Institutes of

Health, 5601 Fishers Lane, Room 3G41, Rockville, MD 20892 (Virtual Meeting).

*Contact Person:* Kelly L. Hudspeth, Ph.D., Scientific Review Officer, Scientific Review Program, Division of Extramural Activities, National Institute of Allergy and Infectious Diseases, National Institutes of Health, 5601 Fishers Lane, Room 3G41, Rockville, MD 20852, 240–669–5067, *kelly.hudspeth@nih.gov.*

This notice is being published less than 15 days prior to the meeting due to the timing limitations imposed by the review and funding cycle.

(Catalogue of Federal Domestic Assistance Program Nos. 93.855, Allergy, Immunology, and Transplantation Research; 93.856, Microbiology and Infectious Diseases Research, National Institutes of Health, HHS)

Dated: January 21, 2021.

**Melanie J. Pantoja,**
*Program Analyst, Office of Federal Advisory Committee Policy.*

[FR Doc. 2021–01707 Filed 1–26–21; 8:45 am]

**BILLING CODE 4140–01–P**

---

# DEPARTMENT OF HEALTH AND HUMAN SERVICES

## National Institutes of Health

### National Institute of Neurological Disorders and Stroke; Notice of Closed Meeting

Pursuant to section 10(d) of the Federal Advisory Committee Act, as amended, notice is hereby given of the following meeting.

The meeting will be closed to the public in accordance with the provisions set forth in sections 552b(c)(4) and 552b(c)(6), Title 5 U.S.C., as amended. The grant applications and the discussions could disclose confidential trade secrets or commercial property such as patentable material, and personal information concerning individuals associated with the grant applications, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

*Name of Committee:* National Institute of Neurological Disorders and Stroke Special Emphasis Panel; NINDS Human Biospecimen and Data Repository U24 Review.

*Date:* February 11, 2021.

*Time:* 1:00 p.m. to 3:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, Neuroscience Center, 6001 Executive Boulevard, Rockville, MD 20852 (Virtual Meeting).

*Contact Person:* Li Jia, Ph.D., Scientific Review Officer, Scientific Review Branch, Division of Extramural Research, NINDS/NIH, 6001 Executive Boulevard, Room 3208D, Rockville, MD 20852, 301–451–2854, *li.jia@nih.gov.*

(Catalogue of Federal Domestic Assistance Program Nos. 93.853, Clinical Research Related to Neurological Disorders; 93.854, Biological Basis Research in the Neurosciences, National Institutes of Health, HHS)

Dated: January 21, 2021.

**Melanie J. Pantoja,**

*Program Analyst, Office of Federal Advisory Committee Policy.*

[FR Doc. 2021–01705 Filed 1–26–21; 8:45 am]

**BILLING CODE 4140–01–P**

---

# DEPARTMENT OF HEALTH AND HUMAN SERVICES

## National Institutes of Health

## National Institute on Drug Abuse; Notice of Closed Meetings

Pursuant to section 10(d) of the Federal Advisory Committee Act, as amended, notice is hereby given of the following meetings.

The meetings will be closed to the public in accordance with the provisions set forth in sections 552b(c)(4) and 552b(c)(6), Title 5 U.S.C., as amended. The grant applications and the discussions could disclose confidential trade secrets or commercial property such as patentable material, and personal information concerning individuals associated with the grant applications, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

*Name of Committee:* National Institute on Drug Abuse Special Emphasis Panel; NIDA Career Development and Education SEP (K99/R00 and R25).

*Date:* March 1, 2021.

*Time:* 11:00 a.m. to 5:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, National Institute on Drug Abuse, 301 North Stonestreet Avenue, Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* Sindhu Kizhakke Madathil, Ph.D., Scientific Review Officer, Scientific Review Branch, National Institute on Drug Abuse, NIH, MSC 6021, Bethesda, MD 20892, (301) 827–5702, *sindhu.kizhakkemadathil@ nih.gov.*

*Name of Committee:* National Institute on Drug Abuse Special Emphasis Panel; Using Human Cell Animal Chimera Brains to Study HIV Latency and Pathology R01—Clinical Trials Not Allowed.

*Date:* March 10, 2021.

*Time:* 1:00 p.m. to 4:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, National Institute on Drug Abuse, 301 North Stonestreet Avenue, Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* Gerald L. McLaughlin, Ph.D., Scientific Review Officer, Office of

Extramural Policy and Review, National Institute on Drug Abuse, NIH, 301 North Stonestreet Avenue, MSC 6021, Bethesda, MD 20892, (301) 827–5819, *gm145a@nih.gov.*

*Name of Committee:* National Institute on Drug Abuse Special Emphasis Panel; Multi-Site Studies for System-Level Implementation of Substance Use Prevention and Treatment Services (R01; R34).

*Date:* March 22, 2021.

*Time:* 12:00 p.m. to 4:30 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, National Institute on Drug Abuse, 301 North Stonestreet Avenue, Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* Yvonne Owens Ferguson, Ph.D., Scientific Review Officer, Office of Extramural Policy and Review, Division of Extramural Research, National Institute on Drug Abuse, NIH, 301 North Stonestreet Avenue, MSC 6021, Bethesda, MD 20892, (301) 402–7371, *yvonne.ferguson@nih.gov.*

(Catalogue of Federal Domestic Assistance Program Nos. 93.277, Drug Abuse Scientist Development Award for Clinicians, Scientist Development Awards, and Research Scientist Awards; 93.278, Drug Abuse National Research Service Awards for Research Training; 93.279, Drug Abuse and Addiction Research Programs, National Institutes of Health, HHS)

Dated: January 21, 2021.

**Melanie J. Pantoja,**

*Program Analyst, Office of Federal Advisory Committee Policy.*

[FR Doc. 2021–01699 Filed 1–26–21; 8:45 am]

**BILLING CODE 4140–01–P**

---

# DEPARTMENT OF HEALTH AND HUMAN SERVICES

## National Institutes of Health

## National Institute of Nursing Research; Amended Notice of Meeting

Notice is hereby given of a change in the meeting of the National Institute of Nursing Research Special Emphasis Panel, February 19, 2021, 10:00 a.m. to 2:00 p.m., 6701 Democracy Blvd., Democracy One, Bethesda, MD 20892, which was published in the **Federal Register** on January 14, 2021, 86 FR 3163.

The NINR Special Emphasis Panel meeting is being amended due to a change in the meeting time. This meeting held on February 19, 2021 will now start at 2:00 p.m. and will adjourn at 4:00 p.m. The meeting is closed to the public.

Dated: January 21, 2021.

**Melanie J. Pantoja,**

*Program Analyst, Office of Federal Advisory Committee Policy.*

[FR Doc. 2021–01704 Filed 1–26–21; 8:45 am]

**BILLING CODE 4140–01–P**

---

# DEPARTMENT OF HEALTH AND HUMAN SERVICES

## National Institutes of Health

## National Center for Complementary & Integrative Health; Notice of Closed Meeting

Pursuant to section 10(d) of the Federal Advisory Committee Act, as amended, notice is hereby given of the following meeting.

The meeting will be closed to the public in accordance with the provisions set forth in sections 552b(c)(4) and 552b(c)(6), Title 5 U.S.C., as amended. The grant applications and the discussions could disclose confidential trade secrets or commercial property such as patentable material, and personal information concerning individuals associated with the grant applications, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

*Name of Committee:* National Center for Complementary and Integrative Health Special Emphasis Panel; NCCIH Training and Education Review Panel (CT).

*Date:* February 18th–19th, 2021.

*Time:* 8:00 a.m. to 12:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* NCCIH/NIH, Democracy II, 6707 Democracy Blvd., Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* Patrick Colby Still, Ph.D., Scientific Review Officer, Office of Scientific Review, Division of Extramural Activities, NCCIH/NIH, 6707 Democracy Boulevard, Suite 401, Bethesda, MD 20892–5475, *patrick.still@nih.gov.*

(Catalogue of Federal Domestic Assistance Program Nos. 93.213, Research and Training in Complementary and Alternative Medicine, National Institutes of Health, HHS)

Dated: January 21, 2021.

**Ronald J. Livingston, Jr.,**

*Program Analyst, Office of Federal Advisory Committee Policy.*

[FR Doc. 2021–01710 Filed 1–26–21; 8:45 am]

**BILLING CODE 4140–01–P**

---

# DEPARTMENT OF HEALTH AND HUMAN SERVICES

## National Institutes of Health

## National Center for Complementary & Integrative Health; Notice of Closed Meeting

Pursuant to section 10(d) of the Federal Advisory Committee Act, as amended, notice is hereby given of the following meeting.

The meeting will be closed to the public in accordance with the provisions set forth in sections

552b(c)(4) and 552b(c)(6), Title 5 U.S.C., as amended. The grant applications and the discussions could disclose confidential trade secrets or commercial property such as patentable material, and personal information concerning individuals associated with the grant applications, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

*Name of Committee:* National Center for Complementary and Integrative Health Special Emphasis Panel; Pilot Projects Increasing the Impact of the NIH Centers for Advancing Research on Botanicals and Other Natural Products.

*Date:* February 19th, 2021.
*Time:* 1:00 p.m. to 5:00 p.m.
*Agenda:* To review and evaluate grant applications.
*Place:* NIH/NCCIH, Democracy II, 6707 Democracy Blvd., Bethesda, MD 20892 (Virtual Meeting).
*Contact Person:* Patrick Colby Still, Ph.D., Scientific Review Officer, Office of Scientific Review, Division of Extramural Activities, NCCIH/NIH, 6707 Democracy Boulevard, Suite 401, Bethesda, MD 20892–5475, *patrick.still@nih.gov.*

(Catalogue of Federal Domestic Assistance Program No. 93.213, Research and Training in Complementary and Alternative Medicine, National Institutes of Health, HHS)

Dated: January 21, 2021.

**Ronald J. Livingston, Jr.,**
*Program Analyst, Office of Federal Advisory Committee Policy.*

[FR Doc. 2021–01708 Filed 1–26–21; 8:45 am]

**BILLING CODE 4140–01–P**

---

# DEPARTMENT OF HEALTH AND HUMAN SERVICES

## National Institutes of Health

## Center for Scientific Review; Notice of Closed Meetings

Pursuant to section 10(d) of the Federal Advisory Committee Act, as amended, notice is hereby given of the following meetings.

The meetings will be closed to the public in accordance with the provisions set forth in sections 552b(c)(4) and 552b(c)(6), Title 5 U.S.C., as amended. The grant applications and the discussions could disclose confidential trade secrets or commercial property such as patentable material, and personal information concerning individuals associated with the grant applications, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

*Name of Committee:* Center for Scientific Review Special Emphasis Panel; Special Topics: Vision Imaging, Bioengineering and Low Vision Technology Development.
*Date:* February 25–26, 2021.

*Time:* 8:00 a.m. to 6:00 p.m.
*Agenda:* To review and evaluate grant applications.
*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).
*Contact Person:* Susan Gillmor, Ph.D., Scientific Review Officer, National Institutes of Health, Center for Scientific Review, 6701 Rockledge Drive, Room 5220, Bethesda, MD 20892, 240–762–3076, *susan.gillmor@nih.gov.*

*Name of Committee:* Emerging Technologies and Training Neurosciences Integrated Review Group; Emerging Imaging Technologies in Neuroscience Study Section.
*Date:* February 25–26, 2021.
*Time:* 8:00 a.m. to 7:00 p.m.
*Agenda:* To review and evaluate grant applications.
*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).
*Contact Person:* Sharon S. Low, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institutes of Health, 6701 Rockledge Drive, Room 5104, MSC 7846, Bethesda, MD 20892, 301–237–1487, *lowss@csr.nih.gov.*

*Name of Committee:* Center for Scientific Review Special Emphasis Panel; Fellowships: Learning, Memory, Language, Communication, and Related Neuroscience.
*Date:* February 25–26, 2021.
*Time:* 8:30 a.m. to 6:00 p.m.
*Agenda:* To review and evaluate grant applications.
*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).
*Contact Person:* Jyothi Arikkath, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institutes of Health, 6701 Rockledge Drive, Room 5215, Bethesda, MD 20892, (301) 435–1042, *arikkathj2@mail.nih.gov.*

*Name of Committee:* Population Sciences and Epidemiology Integrated Review Group; Cancer, Heart, and Sleep Epidemiology A Study Section.
*Date:* February 25–26, 2021.
*Time:* 9:00 a.m. to 5:00 p.m.
*Agenda:* To review and evaluate grant applications.
*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).
*Contact Person:* Denise Wiesch, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institutes of Health, 6701 Rockledge Drive, Room 3138, MSC 7770, Bethesda, MD 20892, (301) 437–3478, *wieschd@csr.nih.gov.*

*Name of Committee:* Vascular and Hematology Integrated Review Group; Basic Biology of Blood, Heart and Vasculature Study Section.
*Date:* February 25–26, 2021.
*Time:* 9:00 a.m. to 7:00 p.m.
*Agenda:* To review and evaluate grant applications.
*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).
*Contact Person:* Ashlee Tipton, Ph.D., Scientific Review Officer, Center for

Scientific Review, National Institutes of Health, 6701 Rockledge Drive, Room 4144, Bethesda, MD 20817, 301–451–3849, *ashlee.tipton@nih.gov.*

*Name of Committee:* Center for Scientific Review Special Emphasis Panel; Fellowships: Biophysical, Physiological, Pharmacological and Bioengineering Neuroscience.
*Date:* February 25–26, 2021.
*Time:* 9:00 a.m. to 7:00 p.m.
*Agenda:* To review and evaluate grant applications.
*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).
*Contact Person:* Sussan Paydar, Ph.D. Scientific Review Officer, Center for Scientific Review, National Institutes of Health, 6701 Rockledge Drive, RM 5222 Bethesda, MD 20817 (301) 827–4994, *sussan.paydar@nih.gov*

*Name of Committee:* Center for Scientific Review Special Emphasis Panel; PAR–20–117: Maximizing Investigators' Research Award (MIRA) for Early Stage Investigators (R35—Clinical Trial Optional).
*Date:* February 25–26, 2021.
*Time:* 9:00 a.m. to 7:30 p.m.
*Agenda:* To review and evaluate grant applications.
*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).
*Contact Person:* Sudha Veeraraghavan, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institutes of Health, 6701 Rockledge Drive, Room 4166, Bethesda, MD 20892, 301–435–1504, *sudha.veeraraghavan@nih.gov.*

*Name of Committee:* Oncology 2—Translational Clinical Integrated Review Group; Cancer Prevention Study Section.
*Date:* February 25–26, 2021.
*Time:* 9:30 a.m. to 6:00 p.m.
*Agenda:* To review and evaluate grant applications.
*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).
*Contact Person:* Svetlana Kotliarova, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institutes of Health, 6701 Rockledge Drive, Room 6214, Bethesda, MD 20892, 301–594–7945, *kotliars@mail.nih.gov.*

*Name of Committee:* Center for Scientific Review Special Emphasis Panel; RFA–AG–21–025: Training and Education for AD/ADRD Caregivers on Financial Management and Legal Planning.
*Date:* February 25, 2021.
*Time:* 1:00 p.m. to 5:00 p.m.
*Agenda:* To review and evaluate grant applications.
*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).
*Contact Person:* Weijia Ni, Ph.D., Chief/Scientific Review Officer, Center for Scientific Review, National Institutes of Health, 6701 Rockledge Drive, Room 3100, MSC 7808, Bethesda, MD 20892, 301–594–3292, *niw@csr.nih.gov.*

*Name of Committee:* Center for Scientific Review Special Emphasis Panel; PAR–20–

117: Maximizing Investigators' Research Award (MIRA) for Early Stage Investigators (R35—Clinical Trial Optional).

*Date:* February 25, 2021.

*Time:* 2:00 p.m. to 5:00 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Institutes of Health, Rockledge II, 6701 Rockledge Drive, Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* William A Greenberg, Ph.D., Scientific Review Officer, Center for Scientific Review, National Institutes of Health, 6701 Rockledge Drive, Room 4168, MSC 7806, Bethesda, MD 20892, (301) 435–1726, *greenbergwa@csr.nih.gov.*

(Catalogue of Federal Domestic Assistance Program Nos. 93.306, Comparative Medicine; 93.333, Clinical Research, 93.306, 93.333, 93.337, 93.393–93.396, 93.837–93.844, 93.846–93.878, 93.892, 93.893, National Institutes of Health, HHS)

Dated: January 21, 2021.

**Melanie J. Pantoja,**

*Program Analyst, Office of Federal Advisory Committee Policy.*

[FR Doc. 2021–01703 Filed 1–26–21; 8:45 am]

**BILLING CODE 4140–01–P**

---

## DEPARTMENT OF HEALTH AND HUMAN SERVICES

### National Institutes of Health

### National Eye Institute; Notice of Closed Meeting

Pursuant to section 10(d) of the Federal Advisory Committee Act, as amended, notice is hereby given of the following meeting.

The meeting will be closed to the public in accordance with the provisions set forth in sections 552b(c)(4) and 552b(c)(6), Title 5 U.S.C., as amended. The grant applications and the discussions could disclose confidential trade secrets or commercial property such as patentable material, and personal information concerning individuals associated with the grant applications, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

*Name of Committee:* National Eye Institute Special Emphasis Panel; NEI Clinical Research, Secondary Data Analysis, and Conference Grant Applications.

*Date:* March 25, 2021.

*Time:* 12:00 p.m. to 4:30 p.m.

*Agenda:* To review and evaluate grant applications.

*Place:* National Eye Institute, National Institutes of Health, 6700B Rockledge Drive, Suite 3400, Bethesda, MD 20892 (Virtual Meeting).

*Contact Person:* Ashley Fortress, Ph.D., Designated Federal Official, Division of Extramural Activities, National Eye Institute, National Institutes of Health, 6700B Rockledge Drive, Suite 3400, Bethesda, MD 20817, (301) 451–2020, *ashley.fortress@nih.gov.*

(Catalogue of Federal Domestic Assistance Program Nos. 93.867, Vision Research, National Institutes of Health, HHS)

Dated: January 21, 2021.

**Melanie J. Pantoja,**

*Program Analyst, Office of Federal Advisory Committee Policy.*

[FR Doc. 2021–01747 Filed 1–26–21; 8:45 am]

**BILLING CODE 4140–01–P**

---

## DEPARTMENT OF HEALTH AND HUMAN SERVICES

### National Institutes of Health

### National Institute of Neurological Disorders and Stroke; Amended Notice of Meeting

Notice is hereby given of a change in the meeting of the National Institute of Neurological Disorders and Stroke Special Emphasis Panel, February 25, 2021, 10:00 a.m. to February 25, 2021, 6:30 p.m., National Institutes of Health, Neuroscience Center, 6001 Executive Boulevard, Rockville, MD 20852 (Virtual Meeting) which was published in the **Federal Register** on January 14, 2021, 86 FR 3164.

This notice is being amended to change the date of this one-day meeting to April 22, 2021. The meeting time remains the same. The meeting is closed to the public.

Dated: January 21, 2021.

**Melanie J. Pantoja,**

*Program Analyst, Office of Federal Advisory Committee Policy.*

[FR Doc. 2021–01701 Filed 1–26–21; 8:45 am]

**BILLING CODE 4140–01–P**

---

## DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

**[Docket No. FR–7035–N–01]**

### 60-Day Notice of Proposed Information Collection: Improving Customer Experience (OMB Circular A–11, Section 280 Implementation)

**AGENCY:** Office of Chief Financial Officer, HUD.

**ACTION:** Notice.

**SUMMARY:** The Department of Housing and Urban Development (HUD), as part of its continuing effort to reduce paperwork and respondent burden, is announcing an opportunity for public comment on a new proposed collection of information by the Agency. Under the Paperwork Reduction Act of 1995 (PRA), Federal Agencies are required to publish notice in the **Federal Register** concerning each proposed collection of information, and to allow 60 days for public comment in response to the notice. This notice solicits comments on new collection proposed by the Agency.

**DATES:** *Comments Due Date:* March 29, 2021.

**ADDRESSES:** Interested persons are invited to submit comments regarding this proposal. Comments should refer to the proposal by name and/or OMB Control Number and should be sent to: Colette Pollard, Reports Management Officer, QDAM, Department of Housing and Urban Development, 451 7th Street SW, Room 4176, Washington, DC 20410–5000; telephone 202–402–3400 (this is not a toll-free number) or email at *Colette.Pollard@hud.gov* for a copy of the proposed forms or other available information. Persons with hearing or speech impairments may access this number through TTY by calling the toll-free Federal Relay Service at (800) 877–8339.

**FOR FURTHER INFORMATION CONTACT:** Colette Pollard, Reports Management Officer, QDAM, Department of Housing and Urban Development, 451 7th Street SW, Washington, DC 20410; email Colette Pollard at *Colette.Pollard@hud.gov* or telephone 202–402–3400. This is not a toll-free number. Persons with hearing or speech impairments may access this number through TTY by calling the toll-free Federal Relay Service at (800) 877–8339.

Copies of available documents submitted to OMB may be obtained from Ms. Pollard.

**SUPPLEMENTARY INFORMATION:** This notice informs the public that HUD is seeking approval from OMB for the information collection described in Section A.

### A. Overview of Information Collection

*Title of Information Collection:* Improving Customer Experience (OMB Circular A–11, Section 280 Implementation).

*OMB Approval Number:* Pending.

*Type of Request:* New.

*Form Number:* None.

*Description of the need for the information and proposed use:* Under the PRA, (44 U.S.C. 3501–3520) Federal Agencies must obtain approval from the Office of Management and Budget (OMB) for each collection of information they conduct or sponsor. "Collection of information" is defined in 44 U.S.C. 3502(3) and 5 CFR 1320.3(c) and includes Agency requests or requirements that members of the public submit reports, keep records, or provide information to a third party. Section 3506(c)(2)(A) of the PRA

requires Federal Agencies to provide a 60-day notice in the **Federal Register** concerning each proposed collection of information, including each proposed extension of an existing collection of information, before submitting the collection to OMB for approval. To comply with this requirement, HUD is publishing notice of the proposed collection of information set forth in this document.

Whether seeking a loan, Social Security benefits, veterans' benefits, or other services provided by the Federal Government, individuals and businesses expect Government customer services to be efficient and intuitive, just like services from leading private-sector organizations. Yet the 2016 American Consumer Satisfaction Index and the 2017 Forrester Federal Customer Experience Index show that, on average, Government services lag nine percentage points behind the private sector.

A modern, streamlined and responsive customer experience means: Raising government-wide customer experience to the average of the private sector service industry; developing indicators for high-impact Federal programs to monitor progress towards excellent customer experience and mature digital services; and providing the structure (including increasing transparency) and resources to ensure customer experience is a focal point for agency leadership. To support this, OMB Circular A–11 Section 280 established government-wide standards for mature customer experience organizations in government and measurement. To enable Federal programs to deliver the experience taxpayers deserve, they must undertake three general categories of activities: Conduct ongoing customer research, gather and share customer feedback, and test services and digital products.

These data collection efforts may be either qualitative or quantitative in nature or may consist of mixed methods. Additionally, data may be collected via a variety of means, including but not limited to electronic or social media, direct or indirect observation (*i.e.,* in person, video and audio collections), interviews, questionnaires, surveys, and focus groups. HUD will limit its inquiries to data collections that solicit strictly voluntary opinions or responses. Steps will be taken to ensure anonymity of respondents in each activity covered by this request.

The results of the data collected will be used to improve the delivery of Federal services and programs. It will include the creation of personas,

customer journey maps, and reports and summaries of customer feedback data and user insights. It will also provide government-wide data on customer experience that can be displayed on *performance.gov* to help build transparency and accountability of Federal programs to the customers they serve.

*Method of Collection:* HUD will collect this information by electronic means when possible, as well as by mail, fax, telephone, technical discussions, and in-person interviews. HUD may also utilize observational techniques to collect this information.

*Data:*

*Form Number(s):* None.

*Type of Review:* New.

*Affected Public:* Collections will be targeted to the solicitation of opinions from respondents who have experience with the program or may have experience with the program in the near future. For the purposes of this request, "customers" are individuals, businesses, and organizations that interact with a Federal Government agency or program, either directly or via a Federal contractor. This could include individuals or households; businesses or other for-profit organizations; not-for-profit institutions; State, local or tribal governments; Federal government; and Universities.

• *Estimated Number of Respondents:* 500,000.

• *Estimated Time per Response:* Varied, dependent upon the data collection method used. The possible response time to complete a questionnaire or survey may be 3 minutes or up to 2 hours to participate in an interview.

• *Estimated Total Annual Burden Hours:* 25,000.

• *Estimated Total Annual Cost to Public:* $0.

**B. Solicitation of Public Comment**

This notice is soliciting comments from members of the public and affected parties concerning the collection of information described in Section A on the following:

(1) Whether the proposed collection of information is necessary for the proper performance of the functions of the agency, including whether the information will have practical utility;

(2) The accuracy of the agency's estimate of the burden of the proposed collection of information;

(3) Ways to enhance the quality, utility, and clarity of the information to be collected; and

(4) Ways to minimize the burden of the collection of information on those who are to respond; including through

the use of appropriate automated collection techniques or other forms of information technology, *e.g.,* permitting electronic submission of responses.

HUD encourages interested parties to submit comment in response to these questions.

**C. Authority**

Section 3507 of the Paperwork Reduction Act of 1995, 44 U.S.C. Chapter 35.

The Acting Customer Experience Officer, Katherine Darling, having reviewed and approved this document, is delegating the authority to electronically sign this document to submitter, Nacheshia Foxx, who is the **Federal Register** Liaison for HUD, for purposes of publication in the **Federal Register**.

**Nacheshia Foxx,**

*Federal Register Liaison for the Department of Housing and Urban Development.*

[FR Doc. 2021–01574 Filed 1–26–21; 8:45 am]

**BILLING CODE 4210–67–P**

# DEPARTMENT OF THE INTERIOR

## National Indian Gaming Commission

## Fee Rate and Fingerprint Fees

**AGENCY:** National Indian Gaming Commission, Interior.

**ACTION:** Notice.

**SUMMARY:** Notice is hereby given that the National Indian Gaming Commission has adopted its annual fee rates of 0.00% for tier 1 and 0.062% (.00062) for tier 2, which remain the same as current fee rates. These rates shall apply to all assessable gross revenues from each gaming operation under the jurisdiction of the Commission. If a tribe has a certificate of self-regulation, the fee rate on Class II revenues shall be 0.031% (.00031) which is one-half of the annual fee rate.

The Commission may need to reassess these rates during the year, as well as the fee collection processes laid out in its regulations. This reassessment includes the Commission considering actions to potentially increase fee rates before November 2021, promulgate changes to the provisions described in the Commission's Fees regulations, and/or other potential measures to address the agency's budget planning. These potential measures will not be implemented before the third quarter payment due date, will comply with the Indian Gaming Regulatory Act's existing requirements, and will be done in consultation with tribal governments as outlined in the Agency's policies on

government-to-government consultation. The annual fee rates being adopted here are effective November 23, 2020 and will remain in effect until new rates are adopted.

The National Indian Gaming Commission has also adopted its fingerprint processing fee of $45 per card effective November 13, 2020. The increase from the current $22 per card is necessary to update the NIGC's fingerprint system and network (equipment cost) and implement additional measures required to ensure compliance with Federal Bureau of Investigation requirements. The fingerprint processing fee being adopted here is effective November 13, 2020, and will remain in effect until the Commission adopts a new rate.

**FOR FURTHER INFORMATION CONTACT:**
Yvonne Lee, National Indian Gaming Commission, 1849 C Street NW, Mail Stop #1621, Washington, DC 20240; telephone (202) 632–7003; fax (202) 632–7066.

**SUPPLEMENTARY INFORMATION:** The Indian Gaming Regulatory Act (IGRA) established the National Indian Gaming Commission, which is charged with regulating gaming on Indian lands.

Commission regulations (25 CFR 514) provide for a system of fee assessment and payment that is self-administered by gaming operations. Pursuant to those regulations, the Commission is required to adopt and communicate assessment rates and the gaming operations are required to apply those rates to their revenues, compute the fees to be paid, report the revenues, and remit the fees to the Commission. All gaming operations within the jurisdiction of the Commission are required to self-administer the provisions of these regulations, and report and pay any fees that are due to the Commission.

Pursuant to 25 CFR 514, the Commission must also review annually the costs involved in processing fingerprint cards and set a fee based on fees charged by the Federal Bureau of Investigation and costs incurred by the Commission. Commission costs include Commission personnel, supplies, equipment costs, and postage to submit the results to the requesting tribe.

Dated: January 13, 2021.

**E. Sequoyah Simermeyer,**
*Chairman.*

Dated: January 12, 2021.

**Kathryn C. Isom-Clause,**
*Vice Chair.*

[FR Doc. 2021–01772 Filed 1–26–21; 8:45 am]

**BILLING CODE 7565–01–P**

## INTERNATIONAL TRADE COMMISSION

### Notice of Receipt of Complaint; Solicitation of Comments Relating to the Public Interest

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Notice.

**SUMMARY:** Notice is hereby given that the U.S. International Trade Commission has received a complaint entitled *Certain Cellular Signal Boosters, Repeaters, Bi-Directional Amplifiers, and Components Thereof, DN 3527;* the Commission is soliciting comments on any public interest issues raised by the complaint or complainant's filing pursuant to the Commission's Rules of Practice and Procedure.

**FOR FURTHER INFORMATION CONTACT:** Lisa R. Barton, Secretary to the Commission, U.S. International Trade Commission, 500 E Street SW, Washington, DC 20436, telephone (202) 205–2000. The public version of the complaint can be accessed on the Commission's Electronic Document Information System (EDIS) at *https://edis.usitc.gov.* For help accessing EDIS, please email *EDIS3Help@usitc.gov.*

General information concerning the Commission may also be obtained by accessing its internet server at United States International Trade Commission (USITC) at *https://www.usitc.gov* . The public record for this investigation may be viewed on the Commission's Electronic Document Information System (EDIS) at *https://edis.usitc.gov.* Hearing-impaired persons are advised that information on this matter can be obtained by contacting the Commission's TDD terminal on (202) 205–1810.

**SUPPLEMENTARY INFORMATION:** The Commission has received a complaint and a submission pursuant to § 210.8(b) of the Commission's Rules of Practice and Procedure filed on behalf of Wilson Electronics LLC on January 21, 2021. The complaint alleges violations of section 337 of the Tariff Act of 1930 (19 U.S.C. 1337) in the importation into the United States, the sale for importation, and the sale within the United States after importation of certain cellular signal boosters, repeaters, bi-directional amplifiers, and components thereof. The complaint names as respondents: Cellphone-Mate, Inc. d/b/a SureCall of Fremont, CA; and Shenzhen SureCall Communication Technology Co. Ltd. of China. The complainant requests that the Commission issue a limited exclusion order, cease and desist orders,

and impose a bond upon respondents' alleged infringing articles during the 60-day Presidential review period pursuant to 19 U.S.C. 1337(j).

Proposed respondents, other interested parties, and members of the public are invited to file comments on any public interest issues raised by the complaint or § 210.8(b) filing. Comments should address whether issuance of the relief specifically requested by the complainant in this investigation would affect the public health and welfare in the United States, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, or United States consumers.

In particular, the Commission is interested in comments that:

(i) Explain how the articles potentially subject to the requested remedial orders are used in the United States;

(ii) identify any public health, safety, or welfare concerns in the United States relating to the requested remedial orders;

(iii) identify like or directly competitive articles that complainant, its licensees, or third parties make in the United States which could replace the subject articles if they were to be excluded;

(iv) indicate whether complainant, complainant's licensees, and/or third party suppliers have the capacity to replace the volume of articles potentially subject to the requested exclusion order and/or a cease and desist order within a commercially reasonable time; and

(v) explain how the requested remedial orders would impact United States consumers.

Written submissions on the public interest must be filed no later than by close of business, eight calendar days after the date of publication of this notice in the **Federal Register**. There will be further opportunities for comment on the public interest after the issuance of any final initial determination in this investigation. Any written submissions on other issues must also be filed by no later than the close of business, eight calendar days after publication of this notice in the **Federal Register**. Complainant may file replies to any written submissions no later than three calendar days after the date on which any initial submissions were due. Any submissions and replies filed in response to this Notice are limited to five (5) pages in length, inclusive of attachments.

Persons filing written submissions must file the original document

**Federal Register** / Vol. 86, No. 16 / Wednesday, January 27, 2021 / Notices

7305

electronically on or before the deadlines stated above. Submissions should refer to the docket number ("Docket No. 3527") in a prominent place on the cover page and/or the first page. (*See* Handbook for Electronic Filing Procedures, Electronic Filing Procedures [1]). Please note the Secretary's Office will accept only electronic filings during this time. Filings must be made through the Commission's Electronic Document Information System (EDIS, *https:// edis.usitc.gov*.) No in-person paper-based filings or paper copies of any electronic filings will be accepted until further notice. Persons with questions regarding filing should contact the Secretary at *EDIS3Help@usitc.gov*.

Any person desiring to submit a document to the Commission in confidence must request confidential treatment. All such requests should be directed to the Secretary to the Commission and must include a full statement of the reasons why the Commission should grant such treatment. *See* 19 CFR 201.6. Documents for which confidential treatment by the Commission is properly sought will be treated accordingly. All information, including confidential business information and documents for which confidential treatment is properly sought, submitted to the Commission for purposes of this Investigation may be disclosed to and used: (i) By the Commission, its employees and Offices, and contract personnel (a) for developing or maintaining the records of this or a related proceeding, or (b) in internal investigations, audits, reviews, and evaluations relating to the programs, personnel, and operations of the Commission including under 5 U.S.C. Appendix 3; or (ii) by U.S. government employees and contract personnel,[2] solely for cybersecurity purposes. All nonconfidential written submissions will be available for public inspection at the Office of the Secretary and on EDIS.[3]

This action is taken under the authority of section 337 of the Tariff Act of 1930, as amended (19 U.S.C. 1337), and of §§ 201.10 and 210.8(c) of the Commission's Rules of Practice and Procedure (19 CFR 201.10, 210.8(c)).

By order of the Commission.

[1] Handbook for Electronic Filing Procedures: *https://www.usitc.gov/documents/handbook_on_ filing_procedures.pdf.*

[2] All contract personnel will sign appropriate nondisclosure agreements.

[3] Electronic Document Information System (EDIS): *https://edis.usitc.gov.*

Issued: January 21, 2021.

Lisa Barton,
*Secretary to the Commission.*
[FR Doc. 2021–01679 Filed 1–26–21; 8:45 am]
**BILLING CODE 7020–02–P**

---

**INTERNATIONAL TRADE COMMISSION**

**[Inv. No. 337–TA–1240]**

**Certain UMTS and LTE Cellular Communication Modules and Products Containing the Same; Institution of Investigation**

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Notice.

**SUMMARY:** Notice is hereby given that a complaint was filed with the U.S. International Trade Commission on December 17, 2020, under section 337 of the Tariff Act of 1930, as amended, on behalf of Koninklijke Philips N.V. of the Netherlands and Philips RS North America LLC (f/k/a Respironics, Inc.) of Pittsburgh, Pennsylvania. A supplement to the complaint was filed January 6, 2021. The complaint, as supplemented, alleges violations of section 337 based upon the importation into the United States, the sale for importation, and the sale within the United States after importation of certain UMTS and LTE cellular communication modules and products containing the same by reason of infringement of certain claims of U.S. Patent No. 7,831,271 ("the '271 patent"); U.S. Patent No. 8,199,711 ("the '711 patent"); U.S. Patent No. 7,554,943 ("the '943 patent"); and U.S. Patent No. 7,944,935 ("the '935 patent"). The complaint further alleges that an industry in the United States exists and/ or is in the process of being established as required by the applicable Federal Statute. The complainant requests that the Commission institute an investigation and, after the investigation, issue a limited exclusion order and cease and desist orders.

**ADDRESSES:** The complaint, except for any confidential information contained therein, may be viewed on the Commission's electronic docket (EDIS) at *https://edis.usitc.gov*. For help accessing EDIS, please email *EDIS3Help@usitc.gov*. Hearing impaired individuals are advised that information on this matter can be obtained by contacting the Commission's TDD terminal on (202) 205–1810. Persons with mobility impairments who will need special assistance in gaining access to the Commission should contact the Office of the Secretary at (202) 205–

2000. General information concerning the Commission may also be obtained by accessing its internet server at *https://www.usitc.gov*.

**FOR FURTHER INFORMATION CONTACT:** Pathenia M. Proctor, The Office of Unfair Import Investigations, U.S. International Trade Commission, telephone (202) 205–2560.

**SUPPLEMENTARY INFORMATION:**

*Authority:* The authority for institution of this investigation is contained in section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. 1337, and in section 210.10 of the Commission's Rules of Practice and Procedure, 19 CFR 210.10 (2020).

*Scope of Investigation:* Having considered the complaint, the U.S. International Trade Commission, on January 19, 2021, *ordered that*—

(1) Pursuant to subsection (b) of section 337 of the Tariff Act of 1930, as amended, an investigation be instituted to determine whether there is a violation of subsection (a)(1)(B) of section 337 in the importation into the United States, the sale for importation, or the sale within the United States after importation of certain products identified in paragraph (2) by reason of infringement of one or more of claims 1–4, 9–12 and 17 of the '935 patent; claims 12 and 15 of the '943 patent; claims 9 and 12 of the '711 patent; claims 1–8 of the '271 patent; and whether an industry in the United States exists or is in the process of being established as required by subsection (a)(2) of section 337;

(2) Pursuant to section 210.10(b)(1) of the Commission's Rules of Practice and Procedure, 19 CFR 210.10(b)(1), the plain language description of the accused products or category of accused products, which defines the scope of the investigation, is "UMTS and LTE cellular communication modules of Thales (Gemalto/Cinterion), Telit and Quectel, and machine to machine (M2M) cellular communication devices (*i.e.*, gateways, routers, trackers, monitors, readers, controllers, and M2M cellular connected sensor products) that incorporate such UMTS and LTE cellular communication modules of Thales (Gemalto/Cinterion), Telit and Quectel;"

(3) Pursuant to Commission Rule 210.50(b)(1), 19 CFR 201.50(b)(1), the presiding administrative law judge shall take evidence or other information and hear arguments from the parties and other interested persons with respect to the public interest in this investigation, as appropriate, and provide the Commission with findings of facts and a recommended determination on this

issue, which shall be limited to the statutory public interest factors set forth in 19 U.S.C. 1337(d)(1), (f)(1), and (g)(1);

(4) For the purpose of the investigation so instituted, the following are hereby named as parties upon which this notice of investigation shall be served:

(a) The complainants are:

Koninklijke Philips N.V., High Tech Campus 52, 5656 AG Eindhoven, Netherlands

Philips RS North America LLC, 6501 Living Place, Pittsburgh, PA 15206

(b) The respondents are the following entities alleged to be in violation of section 337, and are the parties upon which the complaint is to be served:

Thales DIS AIS USA, LLC, 310 120th Avenue NE, Unit A/100, Bellevue, Washington, 98005

Thales DIS AIS Deutschland GmbH, Werinherstraße 81, München, Bayern 81541, Germany

Thales USA, Inc., 2733 Crystal Drive, Suite 120, Arlington, VA 22202

Thales S.A., Tour Carpe Diem, 31 Place Place des Corolles—CS 20001, 92098 Paris La Defense Cedex, Paris, France

Telit Wireless Solutions, Inc., 5425 Page Road, Suite 120, Durham, North Carolina 27703–7009

Telit Communications PLC, 78 Cannon Street, Cannon Place, London, EC4N 6AF, United Kingdom

Quectel Wireless Solutions Co., Ltd., Building 5, Shanghai Business Park, Phase III (Area B), No.1016 Tianlin Road, Minhang District, Shanghai 200233 China

CalAmp Corp., 15635 Alton Parkway, Suite 250, Irvine, California 92618

Xirgo Technologies, LLC, 188 Camino Ruiz, 2nd Floor, Camarillo, California 93012

Laird Connectivity, Inc., 50 South Main Street, Akron, Ohio 44308

(c) The Office of Unfair Import Investigations, U.S. International Trade Commission, 500 E Street SW, Suite 401, Washington, DC 20436; and

(5) For the investigation so instituted, the Chief Administrative Law Judge, U.S. International Trade Commission, shall designate the presiding Administrative Law Judge.

Responses to the complaint and the notice of investigation must be submitted by the named respondents in accordance with section 210.13 of the Commission's Rules of Practice and Procedure, 19 CFR 210.13. Pursuant to 19 CFR 201.16(e) and 210.13(a), as amended in 85 FR 15798 (March 19, 2020), such responses will be considered by the Commission if

received not later than 20 days after the date of service by the complainants of the complaint and the notice of investigation. Extensions of time for submitting responses to the complaint and the notice of investigation will not be granted unless good cause therefor is shown.

Failure of a respondent to file a timely response to each allegation in the complaint and in this notice may be deemed to constitute a waiver of the right to appear and contest the allegations of the complaint and this notice, and to authorize the administrative law judge and the Commission, without further notice to the respondent, to find the facts to be as alleged in the complaint and this notice and to enter an initial determination and a final determination containing such findings, and may result in the issuance of an exclusion order or a cease and desist order or both directed against the respondent.

By order of the Commission.

Issued: January 19, 2021.

**William Bishop,**
*Supervisory Hearings and Information Officer.*

[FR Doc. 2021–01604 Filed 1–26–21; 8:45 am]

**BILLING CODE 7020–02–P**

---

## DEPARTMENT OF LABOR

### Bureau of Labor Statistics

### Information Collection Activities; Comment Request

**AGENCY:** Bureau of Labor Statistics, Department of Labor.

**ACTION:** Notice of information collection; request for comment.

---

**SUMMARY:** The Department of Labor, as part of its continuing effort to reduce paperwork and respondent burden, conducts a pre-clearance consultation program to provide the general public and Federal agencies with an opportunity to comment on proposed and/or continuing collections of information in accordance with the Paperwork Reduction Act of 1995. This program helps to ensure that requested data can be provided in the desired format, reporting burden (time and financial resources) is minimized, collection instruments are clearly understood, and the impact of collection requirements on respondents can be properly assessed. The Bureau of Labor Statistics (BLS) is soliciting comments concerning the proposed extension without change of "General Inquiries to State Agency Contacts." A copy of the proposed information collection request

can be obtained by contacting the individual listed below in the **ADDRESSES** section of this notice.

**DATES:** Written comments must be submitted to the office listed in the **ADDRESSES** section of this notice on or before March 29, 2021.

**ADDRESSES:** Send comments to Erin Good, BLS Clearance Officer, Division of Management Systems, Bureau of Labor Statistics, Room 4080, 2 Massachusetts Avenue NE, Washington, DC 20212. Written comments also may be transmitted by email to *BLS_PRA_Public@bls.gov*.

**FOR FURTHER INFORMATION CONTACT:** Erin Good, BLS Clearance Officer, at 202–691–7628 (this is not a toll free number). (See **ADDRESSES** section.)

**SUPPLEMENTARY INFORMATION:**

### I. Background

The Bureau of Labor Statistics (BLS) awards funds to State agencies in the 50 States, the District of Columbia, Puerto Rico, Guam, and the Virgin Islands, hereinafter referred to as the "States") in order to jointly conduct BLS/State Labor Market Information and Occupational Safety and Health Statistics cooperative statistical programs, which themselves have been approved by OMB separately, as follows:

Current Employment Statistics 1220–0011

Local Area Unemployment Statistics 1220–0017

Occupational Employment Statistics 1220–0042

Quarterly Census of Employment and Wages Report 1220–0012

Annual Refiling Survey 1220–0032

Labor Market Information Cooperative Agreement 1220–0079

Multiple Worksite Report 1220–0134

Annual Survey of Occupational Injuries and Illnesses 1220–0045

Census of Fatal Occupational Injuries 1220–0133

BLS/OSHS Federal State Cooperative Agreement 1220–0149

To ensure the timely flow of information and to be able to evaluate and improve the BLS/State cooperative programs' management and operations, it is necessary to conduct ongoing communications between the BLS and its State partners. Whether information requests deal with program deliverables, program enhancements, operations, or administrative issues, questions and dialogue are crucial to the successful implementation of these programs.

### II. Current Action

Office of Management and Budget clearance is being sought for an extension of General Inquiries to State

Agency Contacts. Information collected under this clearance is used to support the administrative and programmatic needs of jointly conducted BLS/State Labor Market Information and Occupational Safety and Health Statistics cooperative statistical programs.

### III. Desired Focus of Comments

The Bureau of Labor Statistics is particularly interested in comments that:

• Evaluate whether the proposed collection of information is necessary for the proper performance of the functions of the agency, including whether the information will have practical utility.

• Evaluate the accuracy of the agency's estimate of the burden of the proposed collection of information, including the validity of the methodology and assumptions used.

• Enhance the quality, utility, and clarity of the information to be collected.

• Minimize the burden of the collection of information on those who are to respond, including through the use of appropriate automated, electronic, mechanical, or other technological collection techniques or other forms of information technology, *e.g.,* permitting electronic submissions of responses.

*Title of Collection:* General Inquiries to State Agency Contacts.

*OMB Number:* 1220–0168.

*Type of Review:* Extension without change of a currently approved collection.

*Affected Public:* State, Local, or Tribal Government.

*Total Respondents:* 54.

*Frequency:* As needed.

*Total Responses:* 23,890.

*Average Time per Response:* 40 minutes.

*Estimated Total Burden Hours:* 15,927 hours.

Comments submitted in response to this notice will be summarized and/or included in the request for Office of Management and Budget approval of the information collection request; they also will become a matter of public record.

Signed at Washington, DC, on January 21, 2021.

**Mark Staniorski,**

*Chief, Division of Management Systems.*

[FR Doc. 2021–01715 Filed 1–26–21; 8:45 am]

**BILLING CODE 4510–24–P**

## MERIT SYSTEMS PROTECTION BOARD

### Privacy Act of 1974; System of Records

**AGENCY:** U.S. Merit Systems Protection Board.

**ACTION:** Notice of a new system of records.

**SUMMARY:** In accordance with the Privacy Act of 1974 (Privacy Act), the U.S. Merit Systems Protection Board (MSPB or Board) proposes to establish a new MSPB system of records titled "Surveys for Special Studies of the Civil Service." This system of records contains information that MSPB collects, maintains, and uses in order to develop and administer the Merit Principles Survey (MPS) and other surveys for special studies of the civil service and to evaluate and distribute the results of such surveys. This system of records will be included in MSPB's inventory of record systems.

**DATES:** Please submit comments on or before February 26, 2021. This new system is effective upon publication in today's **Federal Register**, with the exception of the routine uses, which are effective February 26, 2021.

**ADDRESSES:** You may submit written comments to the Office of the Clerk of the Board by any of the following methods: By email to *privacy@mspb.gov* or by mail to Clerk of the Board, U.S. Merit Systems Protection Board, 1615 M Street NW, Washington, DC 20419. All comments must reference "MSPB—2, Surveys for Special Studies of the Civil Service." Regardless of the method used for submitting comments or material, all submissions will be posted, without change, to MSPB's website (*www.mspb.gov*) and will include any personal information you provide, such as your name, address, phone number, email address, or any other personally identifying information in your comment or materials. Therefore, any submissions will be made public and without change.

**FOR FURTHER INFORMATION CONTACT:** Fon Muttamara at (202) 653–7200. You may submit written questions to the Office of the Clerk of the Board by any of the following methods: By email to *privacy@mspb.gov* or by mail to Clerk of the Board, U.S. Merit Systems Protection Board, 1615 M Street NW, Washington, DC 20419. Please include "MSPB—2, Surveys for Special Studies of the Civil Service" with your question(s).

**SUPPLEMENTARY INFORMATION:** In accordance with the Privacy Act, 5

U.S.C. 552a, MSPB proposes to establish a new system of records titled "Surveys for Special Studies of the Civil Service." This system of records is being established in order to develop and administer the Merit Principles Survey (MPS), along with other surveys for special studies of the civil service and to evaluate and distribute the results of such surveys. This system of records contains information that MSPB collects, maintains, and uses regarding individuals who are potential or actual survey respondents.

MSPB was instituted under the Civil Service Reform Act of 1978 and administers surveys under its general authorities to conduct studies and research on matters relevant to the MSPs and Prohibited Personnel Practices (PPPs). The statute (5 U.S.C. 1204(a)(3)) also authorizes a "special studies" function, under which MSPB has the authority to conduct studies when it deems appropriate on the topics it deems appropriate, so long as the studies relate to "the civil service and to other merit systems in the executive branch[.]" This function enables MSPB to independently conduct research and present the subsequent findings to the President, Congress, and other Federal human capital stakeholders so that they can have access to information to aid in their decision-making processes.

MSPB established the MPS in support of its statutory responsibility to assess the health of Federal merit systems. MSPB has conducted the MPS since 1983 as part of its statutory oversight responsibilities (5 U.S.C. 1204(a)(3) and 5 U.S.C. 1204(e)(3)). The survey tracks a variety of Federal workforce issues related to the MSPs and PPPs, with results reported to the President and Congress and shared with Federal policy-makers and decision-makers. This survey differs from the Federal Employee Viewpoint Survey administered by the Office of Personnel Management (OPM) in several respects, such as: A focus on MSPs and PPPs and human resources policy and practice; administration every few years instead of annually; and a smaller sample, and use of non-recurring questions to delve into discrete topics of interest. MSPB conducted Government-wide MPS administrations as part of its program of survey research in 1983, 1986, 1989, 1992, 1996, 2000, 2005, 2007, 2010, and 2016. In addition, MSPB has administered and collected data from other surveys, such as the 2007 Career Advancement Survey, 2009 MSPB Federal Telework Survey, and the 2011 Fair and Open Competition Survey.

The MPS and other surveys conducted by MSPB are tools that

measure Federal employees' perceptions of whether, and to what extent, MSPs are being protected and PPPs are being prevented in Federal agencies. MSPB surveys ask participants to share their attitudes, behaviors, and thoughts on topic areas related to the MSPs, PPPs, and other human capital management topics relevant to the MSPs. Demographic questions are also included to evaluate differences among subgroups in the way responses were distributed.

In order to administer an MSPB survey, information about Federal employees is routinely collected from the OPM Enterprise Human Resource Integration (EHRI) system and other Federal Government entities associated with the administration of the surveys. This data is used to (1) identify current Federal employees, (2) determine survey eligibility, (3) collect contact information where necessary and available, (4) perform statistical weighting procedures using select demographic information, and (5) support research and reporting functions. All survey administrations, data cleaning, and statistical weighting procedures are executed by MSPB. At the end of the survey cycle, selected summary results and a technical report may be published, and a public version of the data file is released.

While individual employee participation in our surveys is voluntary, agency participation in our surveys is mandatory for agencies selected by MSPB (5 U.S.C. 1204(e)(3)).

The records concerning the potential and actual survey respondents will be maintained in this system of records, pursuant to the Privacy Act, which will be included in MSPB's inventory. The Privacy Act embodies fair information practice principles in a statutory framework governing the means by which Federal agencies collect, maintain, use, and disseminate individuals' records. The Privacy Act applies to records about individuals that are maintained in a "system of records." A system of records is a group of any records under the control of an agency from which information is retrieved by the name of an individual or by some identifying number, symbol, or other identifying particular assigned to the individual. The Privacy Act defines an individual as a United States citizen or lawful permanent resident. Individuals may request access to their own records that are maintained in a system of records in the possession or under the control of MSPB by complying with MSPB Privacy Act regulations at 5 CFR part 1205, and following the procedures outlined in the Records Access,

Contesting Record, and Notification Procedures sections of this notice. The Privacy Act requires each agency to publish in the **Federal Register** a description denoting the existence and character of each system of records that the agency maintains and the routine uses of each system. The new Surveys for Special Studies of the Civil Service System of Records Notice is published in its entirety below. In accordance with the Privacy Act, 5 U.S.C. 552a(r), and OMB Circular A–108, "Federal Agency Responsibilities for Review, Reporting, and Publication under the Privacy Act" (Dec. 2016), MSPB has submitted a report of a new system of records to the Office of Management and Budget and Congress.

**Jennifer Everling,**

*Acting Clerk of the Board, U.S. Merit Systems Protection Board.*

SYSTEM NAME AND NUMBER:

MSPB—2, Surveys for Special Studies of the Civil Service.

SECURITY CLASSIFICATION:

Unclassified.

SYSTEM LOCATION:

Records are maintained by the Office of Policy and Evaluation, U.S. Merit Systems Protection Board, 1615 M Street NW, Washington, DC 20419 and the third-party vendor(s) providing the survey administration system.

SYSTEM MANAGER(S):

Program Manager, Office of Policy and Evaluation, U.S. Merit Systems Protection Board, 1615 M Street NW, Washington, DC 20419, *studies@ MSPB.gov.*

AUTHORITY FOR MAINTENANCE OF THE SYSTEM:

5 U.S.C. 1204(a)(3), 1204(e)(3), 1206.

PURPOSE(S) OF THE SYSTEM:

The purpose of the system or records is to permit MSPB to administer, collect, maintain, and evaluate the results of the special studies surveys. These surveys include sets of questions posed to selected Federal employees throughout executive branch agencies; to measure Federal employees' perceptions of whether, and to what extent, conditions that characterize successful merit principles protection are in place in their agencies; to obtain general indicators of how well the Federal Government is (1) protecting merit, (2) preventing PPPs, and (3) managing the Federal workforce consistent with merit in order to provide senior managers with critical information needed to make their agency work better; to write reports of findings to the President and

to Congress and other oversight entities, as appropriate; to determine individuals' eligibility for the survey; and to conduct statistical weighting procedures. In addition, information in this system of records is used to produce a de-identified, publicly available data file that contains survey responses, select demographics, and limited agency organizational information; as well as to produce reports of summarized survey results for participating agencies, their subcomponents, and others.

CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:

Current and former Federal employees.

CATEGORIES OF RECORDS IN THE SYSTEM:

1. Pay (*e.g.*, Grade, Pay Plan).
2. Work Location (*e.g.*, Agency, Personnel Office Identifier).
3. The Position (*e.g.*, Occupational Series, Supervisory Status).
4. Performance (*e.g.*, Rating Level, Rating Pattern).
5. EHRI Demographics (*e.g.*, Sex, Veteran's Status).
6. Personal Identifiers, whether provided by the individual or as part of the administration of the survey (*e.g.*, Employee Name and Email Address, randomly assigned identifier for survey administration).
7. Voluntary Survey Question Responses (*e.g.*, Responses to Survey Questions).
8. Personnel Actions History (*e.g.*, Service Computation Date for Retirement Purposes, Hiring Authority).

RECORD SOURCE CATEGORIES:

Individual survey participant records are obtained from OPM's EHRI system, which contains general personnel records from the OPM/GOVT–1 General Personnel Records system of records, from the individual Federal agencies that participate in MSPB's surveys, and from the individuals who voluntarily complete these surveys.

ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND PURPOSES OF SUCH USES:

In addition to those disclosures generally permitted under 5 U.S.C. 552a(b) of the Privacy Act, all or a portion of the records or information contained in this system may be disclosed outside MSPB as a routine use pursuant to 5 U.S.C. 552a(b)(3) as follows:

a. To the Department of Justice (DOJ), including Offices of the U.S. Attorneys; or other Federal agency conducting litigation or in proceedings before any court, adjudicative, or administrative

body, when it is relevant or necessary to the litigation and one of the following is a party to the litigation or has an interest in such litigation:

(1) MSPB, or any component thereof;

(2) Any employee or former employee of MSPB in his or her official capacity;

(3) Any employee or former employee of MSPB in his or her individual capacity where the Department of Justice or MSPB has agreed to represent the employee;

(4) The United States, a Federal agency, or another party in litigation before a court, adjudicative, or administrative body, upon the MSPB General Counsel's approval, pursuant to 5 CFR part 295 or otherwise.

b. To the appropriate Federal, State, or local agency responsible for investigating, prosecuting, enforcing, or implementing a statute, rule, regulation, or order, when a record, either on its face or in conjunction with other information, indicates or is relevant to a violation or potential violation of civil or criminal law or regulation.

c. To a member of Congress from the record of an individual in response to an inquiry made at the request of the individual to whom the record pertains.

d. To the National Archives and Records Administration (NARA) in records management inspections conducted under the authority of 44 U.S.C. 2904 and 2906.

e. To appropriate agencies and persons when (1) MSPB suspects or has confirmed that there has been a breach of the system of records; (2) MSPB has determined that as a result of the suspected or confirmed breach there is a risk of harm to individuals, MSPB (including its information systems, programs, and operations), the Federal Government, or national security; and (3) the disclosure made to such agencies, entities, and persons is reasonably necessary to assist in connection with MSPB's efforts to respond to the suspected or confirmed breach or to prevent, minimize, or remedy such harm.

f. To another Federal agency or Federal entity, when MSPB determines that information from this system of records is reasonably necessary to assist the recipient agency or entity in (1) responding to a suspected or confirmed breach or (2) preventing, minimizing, or remedying the risk of harm to individuals, the recipient agency or entity (including its information systems, programs, and operations), the Federal Government, or national security, resulting from a suspected or confirmed breach.

g. To contractors, grantees, experts, consultants, or volunteers performing or

working on a contract, service, grant, cooperative agreement, or other assignment for MSPB when MSPB determines that it is necessary to accomplish an agency function related to this system of records. Individuals provided information under this routine use are subject to the same Privacy Act requirements and limitations on disclosure as are applicable to MSPB employees.

h. To Federal agencies whose employees participate in MSPB special studies surveys, and their subcomponents, where MSPB determines that assistance may be required in any aspect of administering and reporting on the special studies survey.

**POLICIES AND PRACTICES FOR STORAGE OF RECORDS:**

The records in this system of records are stored electronically on (1) MSPB system(s) and/or (2) temporarily on an MSPB vendor's system(s) to facilitate the administration of the survey(s). Access in both locations is limited to a small number of authorized personnel at MSPB and at MSPB's vendor.

**POLICIES AND PRACTICES FOR RETRIEVAL OF RECORDS:**

Records may be retrieved by survey case identifier or other personal identifier but are generally only retrieved in this manner leading up to and during the administration of special studies surveys. After the survey is administered, personal identifiers are rarely used to retrieve records or for any other purpose. Instead, post-administration of the survey, records are typically retrieved by a respondent characteristic (such as agency or demographic group) or response pattern (such as response to a particular survey item or set of items) in a manner that is not intended to identify individual survey respondents. Additionally, post-administration of the survey, records may be retrieved by personal identifier for another research purpose as permitted by law, regulation, or agreement.

**POLICIES AND PRACTICES FOR RETENTION AND DISPOSAL OF RECORDS:**

MSPB is currently working to develop a records schedule for the survey responses to submit to NARA for approval. Until a records schedule is in place, the records will be retained as permanent records.

Data provided to MSPB from OPM's EHRI data warehouse under an OPM–MSPB Memorandum of Understanding is retained until no longer needed or when OPM instructs MSPB to destroy data.

**ADMINISTRATIVE, TECHNICAL, AND PHYSICAL SAFEGUARDS:**

Records in the system are protected from unauthorized access and misuse through various administrative, technical, and physical security measures, such as access controls, mandatory security and privacy training, encryption, multi-factor authentication, security guards, and locked offices.

**RECORD ACCESS PROCEDURES:**

Individuals seeking notification of and access to their records in this system of records may submit a request in writing to the Office of the Clerk of the Board, Merit Systems Protection Board, 1615 M Street NW, Washington, DC 20419. Individuals requesting access must comply with MSPB's Privacy Act regulations regarding verification of identity and access to records (5 CFR part 1205).

**CONTESTING RECORD PROCEDURES:**

Individuals may request that records about them be amended by writing to the Office of the Clerk of the Board, Merit Systems Protection Board, 1615 M Street, NW, Washington, DC 20419. Individuals requesting amendment must follow MSPB's Privacy Act regulations regarding verification of identity and amendment to records (5 CFR part 1205).

**NOTIFICATION PROCEDURES:**

See Record Access Procedures above.

**EXEMPTIONS PROMULGATED FOR THE SYSTEM:**

None.

**HISTORY:**

None.

[FR Doc. 2021–01812 Filed 1–26–21; 8:45 am]

**BILLING CODE 7400–01–P**

# NATIONAL FOUNDATION ON THE ARTS AND THE HUMANITIES

## National Endowment for the Arts

## Arts Advisory Panel Meetings

**AGENCY:** National Endowment for the Arts, National Foundation on the Arts and the Humanities.

**ACTION:** Notice of meetings.

**SUMMARY:** Pursuant to the Federal Advisory Committee Act, as amended, notice is hereby given that 2 meetings of the Arts Advisory Panel to the National Council on the Arts will be held by teleconference.

**DATES:** See the **SUPPLEMENTARY INFORMATION** section for individual meeting times and dates. All meetings

**7310** **Federal Register** / Vol. 86, No. 16 / Wednesday, January 27, 2021 / Notices

are Eastern time and ending times are approximate:

**ADDRESSES:** National Endowment for the Arts, Constitution Center, 400 7th St. SW, Washington, DC 20506.

**FOR FURTHER INFORMATION CONTACT:** Further information with reference to these meetings can be obtained from Ms. Sherry Hale, Office of Guidelines & Panel Operations, National Endowment for the Arts, Washington, DC 20506; *hales@arts.gov,* or call 202/682–5696.

**SUPPLEMENTARY INFORMATION:** The closed portions of meetings are for the purpose of Panel review, discussion, evaluation, and recommendations on financial assistance under the National Foundation on the Arts and the Humanities Act of 1965, as amended, including information given in confidence to the agency. In accordance with the determination of the Chairman of September 10, 2019, these sessions will be closed to the public pursuant to subsection (c)(6) of section 552b of title 5, United States Code.

**The Upcoming Meetings Are**

*Literature Fellowships (review of applications):* This meeting will be closed.

*Date and time:* February 17, 2021; 2:00 p.m. to 3:00 p.m.

*South Arts Leadership (review of applications):* This meeting will be closed.

*Date and time:* February 17, 2021; 3:00 p.m. to 4:00 p.m.

Dated: January 22, 2021.

**Sherry P. Hale,**

*Staff Assistant, National Endowment for the Arts.*

[FR Doc. 2021–01787 Filed 1–26–21; 8:45 am]

**BILLING CODE 7537–01–P**

---

**NATIONAL FOUNDATION ON THE ARTS AND THE HUMANITIES**

**National Endowment for the Humanities**

**Agency Information Collection Request; 60-Day Public Comment Request**

**AGENCY:** National Endowment for the Humanities; National Foundation on the Arts and the Humanities.

**ACTION:** Notice; request for comments.

**SUMMARY:** In accordance with the Paperwork Reduction Act of 1995, the National Endowment for the Humanities (NEH) is seeking comment concerning a proposed revision to an existing information collection that it uses to solicit grant applications, recruit peer

reviewers, and monitor the performance of recipients.

**DATES:** Please submit comments by March 29, 2021.

**ADDRESSES:** Submit comments to Mr. Timothy Carrigan, Chief Funding Opportunity Officer, Office of Grant Management, National Endowment for the Humanities: 400 Seventh Street SW, Washington, DC 20506, or *tcarrigan@neh.gov.*

**FOR FURTHER INFORMATION CONTACT:** Mr. Timothy Carrigan, Chief Funding Opportunity Officer, Office of Grant Management, National Endowment for the Humanities: 400 Seventh Street SW, Washington, DC 20506, or *tcarrigan@neh.gov.*

**SUPPLEMENTARY INFORMATION:**

**Overview of This Information Collection**

*Type of Review:* Revision of an existing information collection.

*Title of Information Collection:* Generic Clearance Authority for the National Endowment for the Humanities.

*Abstract:* The National Endowment for the Humanities is seeking to renew its generic clearance authority. The generic clearance authority includes all NEH information collections, except one-time evaluations, questionnaires, and surveys.

The proposed revision adjusts the overall burden estimate from 88,815 to 296,433 hours. This estimate reflects the anticipated change in the number of respondents from 7,815 to 6,767 and the updated estimated time per response that more accurately reflects the hours required to complete a grant application. Previously, NEH estimated fifteen hours were needed to complete a grant application. Further study has increased the estimate to sixty hours per proposal. The burden estimate for associated forms and reporting requirements has not changed.

*OMB Number:* 3136–0134.

*Affected Public:* Applicants to NEH grant programs, reviewers of NEH grant applications, and NEH award recipients.

*Frequency of Collection:* On occasion.

*Total Respondents:* 6,767.

*Total Responses:* 6,767.

*Estimated Time per Response:* Varies according to type of information collection.

*Estimated Total Burden Hours:* 296,433.

**Request for Comments**

NEH will make comments submitted in response to this notice, including names and addresses where provided, a matter of public record. NEH will

summarize the contents and include them in the request for OMB approval. We are requesting comments on all aspects of this clearance request, including (a) whether the proposed collection of information is necessary for the proper performance of the functions of the agency, including whether the information will have practical utility; (b) the accuracy of the agency's estimate of the burden of the proposed collection of information; (c) ways to enhance the quality, utility, and clarity of the information to be collected; and (d) ways to minimize the burden of the collection of information on respondents, including through the use of appropriate automated, electronic, mechanical, or other technological collection techniques or other forms of information technology.

Dated: January 15, 2021.

**Caitlin Cater,**

*Attorney-Advisor, National Endowment for the Humanities.*

[FR Doc. 2021–01743 Filed 1–26–21; 8:45 am]

**BILLING CODE 7536–01–P**

---

**NUCLEAR REGULATORY COMMISSION**

**[Docket Nos. 50–528, 50–529, 50–530, and 72–44; NRC–2021–0031]**

**Palo Verde Nuclear Generating Station, Units 1, 2, and 3; Independent Spent Fuel Storage Installation; Consideration of Approval of Transfer of Licenses**

**AGENCY:** Nuclear Regulatory Commission.

**ACTION:** Application for indirect transfer of license; opportunity to comment, request a hearing, and petition for leave to intervene.

**SUMMARY:** The U.S. Nuclear Regulatory Commission (NRC) received and is considering approval of an indirect license transfer application filed by Arizona Public Service Company (APS) on December 2, 2020. The application seeks NRC approval of the indirect transfer of possession-only non-operating interests in Renewed Facility Operating License Nos. NPF–41, NPF–51, and NPF–74 for Palo Verde Nuclear Generating Station (Palo Verde), Units 1, 2, and 3, respectively, and the general license for the Palo Verde Independent Spent Fuel Storage Installation (ISFSI) from Public Service Company of New Mexico (PNM) to Avangrid, Inc. (Avangrid), whereby PNM and its parent holding company would become indirect wholly owned subsidiaries of Avangrid. PNM currently owns a 10.2

**Federal Register**/Vol. 86, No. 16/Wednesday, January 27, 2021/Notices 7311

percent tenant-in-common interest and holds possession-only rights in the NRC licenses. The proposed indirect license transfer would result from Avangrid acquiring PNM and its parent holding company as its subsidiaries, thereby owning 100 percent of the shares in PNM.

**DATES:** Comments must be filed by February 26, 2021. Requests for a hearing or petitions for leave to intervene must be filed by February 16, 2021.

**ADDRESSES:** You may submit comments by any of the following methods; however, the NRC encourages electronic comment submission through the Federal Rulemaking Website:

• *Federal Rulemaking Website:* Go to *https://www.regulations.gov* and search for Docket ID NRC–2021–0031. Address questions about Docket IDs in *Regulations.gov* to Jennifer Borges; telephone: 301–287–9127; email: *Jennifer.Borges@nrc.gov.* For technical questions, contact the individual listed in the **FOR FURTHER INFORMATION CONTACT** section of this document.

• *Mail comments to:* Office of Administration, Mail Stop: TWFN–7–A60M, U.S. Nuclear Regulatory Commission, Washington, DC 20555–0001, ATTN: Program Management, Announcements and Editing Staff.

For additional direction on obtaining information and submitting comments, see "Obtaining Information and Submitting Comments" in the **SUPPLEMENTARY INFORMATION** section of this document.

**FOR FURTHER INFORMATION CONTACT:** Siva P. Lingam, Office of Nuclear Reactor Regulation, U.S. Nuclear Regulatory Commission, Washington, DC 20555–0001; telephone: 301–415–1564, email: *Siva.Lingam@nrc.gov.*

**SUPPLEMENTARY INFORMATION:**

## I. Obtaining Information and Submitting Comments

### A. Obtaining Information

Please refer to Docket ID NRC–2021–0031 when contacting the NRC about the availability of information for this action. You may obtain publicly available information related to this action by any of the following methods:

• *Federal Rulemaking Website:* Go to *https://www.regulations.gov* and search for Docket ID NRC–2021–0031.

• *NRC's Agencywide Documents Access and Management System (ADAMS):* You may obtain publicly available documents online in the ADAMS Public Documents collection at *https://www.nrc.gov/reading-rm/adams.html.* To begin the search, select

"Begin Web-based ADAMS Search." For problems with ADAMS, please contact the NRC's Public Document Room (PDR) reference staff at 1–800–397–4209, 301–415–4737, or by email to *pdr.resource@nrc.gov.* The application for indirect transfer of the licenses dated December 2, 2020, is available in ADAMS under Accession No. ML20337A344.

• *Attention:* The PDR, where you may examine and order copies of public documents, is currently closed. You may submit your request to the PDR via email at *pdr.resource@nrc.gov* or call 1–800–397–4209 or 301–415–4737, between 8:00 a.m. and 4:00 p.m. (EST), Monday through Friday, except Federal holidays.

### B. Submitting Comments

The NRC encourages electronic comment submission through the Federal Rulemaking Website (*https://www.regulations.gov*). Please include Docket ID NRC–2021–0031 in your comment submission.

The NRC cautions you not to include identifying or contact information that you do not want to be publicly disclosed in your comment submission. The NRC will post all comment submissions at *https://www.regulations.gov* as well as enter the comment submissions into ADAMS. The NRC does not routinely edit comment submissions to remove identifying or contact information.

If you are requesting or aggregating comments from other persons for submission to the NRC, then you should inform those persons not to include identifying or contact information that they do not want to be publicly disclosed in their comment submission. Your request should state that the NRC does not routinely edit comment submissions to remove such information before making the comment submissions available to the public or entering the comment submissions into ADAMS.

## II. Introduction

The NRC is considering the issuance of an order under § 50.80 and § 72.50 of title 10 of the *Code of Federal Regulations* (10 CFR), approving the indirect transfer of Renewed Facility Operating License Nos. NPF–41, NPF–51, and NPF–74 for Palo Verde, Units 1, 2, and 3, respectively, and the general license for the Palo Verde ISFSI. PNM currently owns a 10.2 percent tenant-in-common interest and holds possession-only rights in the NRC licenses. The proposed indirect license transfer would result from Avangrid acquiring PNM and its parent holding company as its subsidiaries, thereby owning 100 percent of the shares in PNM.

According to the application, Avangrid is a New York corporation, and its shares are publicly traded on the New York Stock Exchange. Approximately 18.5 percent of the shares are widely held, with the vast majority of these shares held by institutional investors. Approximately 81.5 percent of the shares are owned by Iberdrola, S.A. (Iberdrola), a Sociedad Anónima organized under the laws of the Kingdom of Spain. Iberdrola's shares are widely held and publicly traded on the Madrid Stock Exchange. It is one of the largest energy companies in the world with a market capitalization of $85 billion. Iberdrola is based in Spain. The only known government-controlled entities with interests in Iberdrola are the Qatar Investment Authority, which owns approximately 8.69 percent of Iberdrola, and Norges Bank (the central bank of Norway), which owns approximately 3.43 percent of Iberdrola. Neither the Qatar Investment Authority nor Norges Bank has control over Iberdrola or Avangrid or is represented on their boards. Iberdrola has ownership interests in six generating nuclear reactors in Spain, one of which is operates.

With respect to Palo Verde, APS owns a 29.1 percent tenant-in-common interest and holds both operating and possession rights in the NRC licenses. Further, APS operates each of the Palo Verde units and the ISFSI pursuant to the operating rights granted to it under the license of each Palo Verde unit. The remaining tenant-in-common co-owners that hold possession-only rights in the NRC licenses are: Salt River Project Agricultural Improvement and Power District (17.49 percent); Southern California Edison Company (15.8 percent); IIF US Holding 2 LP (15.8 percent); Southern California Public Power Authority (5.91 percent); and Los Angeles Department of Water and Power (5.7 percent). The proposed transaction would not involve or implicate any change in PNM's rights and obligations under any of the NRC licenses, nor would it implicate APS's or any other possession-only co-owners' rights and obligations under any of the NRC licenses.

According to the application, the proposed indirect license transfer is acceptable because: (1) PNM will continue to have the requisite managerial, technical, and financial qualifications to continue its role as a Palo Verde licensee; (2) PNM will continue to provide reasonable assurance of funding for decommissioning Palo Verde; (3) the

terms of the Palo Verde licenses will not be affected; and (4) PNM has committed to adopting a Negation Action Plan in order to assure that the proposed indirect license transfer will not result in any impermissible foreign ownership, control, or domination.

No physical changes or operational changes are being proposed in the application.

The NRC's regulations at 10 CFR 50.80 and 10 CFR 72.50 state that no license for a utilization facility or ISFSI, or any right thereunder, shall be transferred, either voluntarily or involuntarily, directly or indirectly, through transfer of control of the license, unless the Commission gives its consent in writing. The Commission will approve an application for the indirect transfer of a license if the Commission determines that the proposed transaction will not affect the qualifications of the licensee to hold the license, and that the transfer is otherwise consistent with applicable provisions of law, regulations, and orders issued by the Commission.

## III. Opportunity To Request a Hearing and Petition for Leave To Intervene

Within 20 days after the date of publication of this notice, any persons (petitioner) whose interest may be affected by this action may file a request for a hearing and petition for leave to intervene (petition) with respect to the action. Petitions shall be filed in accordance with the Commission's "Agency Rules of Practice and Procedure" in 10 CFR part 2. Interested persons should consult a current copy of 10 CFR 2.309. The NRC's regulations are accessible electronically from the NRC Library on the NRC's website at *https://www.nrc.gov/reading-rm/doc-collections/cfr/*. If a petition is filed, the Commission or a presiding officer will rule on the petition and, if appropriate, a notice of a hearing will be issued.

As required by 10 CFR 2.309(d) the petition should specifically explain the reasons why intervention should be permitted with particular reference to the following general requirements for standing: (1) The name, address, and telephone number of the petitioner; (2) the nature of the petitioner's right to be made a party to the proceeding; (3) the nature and extent of the petitioner's property, financial, or other interest in the proceeding; and (4) the possible effect of any decision or order which may be entered in the proceeding on the petitioner's interest.

In accordance with 10 CFR 2.309(f), the petition must also set forth the specific contentions that the petitioner seeks to have litigated in the proceeding. Each contention must consist of a specific statement of the issue of law or fact to be raised or controverted. In addition, the petitioner must provide a brief explanation of the bases for the contention and a concise statement of the alleged facts or expert opinion that support the contention and on which the petitioner intends to rely in proving the contention at the hearing. The petitioner must also provide references to the specific sources and documents on which the petitioner intends to rely to support its position on the issue. The petition must include sufficient information to show that a genuine dispute exists with the applicant or licensee on a material issue of law or fact. Contentions must be limited to matters within the scope of the proceeding. The contention must be one which, if proven, would entitle the petitioner to relief. A petitioner who fails to satisfy the requirements at 10 CFR 2.309(f) with respect to at least one contention will not be permitted to participate as a party.

Those permitted to intervene become parties to the proceeding, subject to any limitations in the order granting leave to intervene. Parties have the opportunity to participate fully in the conduct of the hearing with respect to resolution of that party's admitted contentions, including the opportunity to present evidence, consistent with the NRC's regulations, policies, and procedures.

Petitions must be filed no later than 20 days from the date of publication of this notice. Petitions and motions for leave to file new or amended contentions that are filed after the deadline will not be entertained absent a determination by the presiding officer that the filing demonstrates good cause by satisfying the three factors in 10 CFR 2.309(c)(1)(i) through (iii). The petition must be filed in accordance with the filing instructions in the "Electronic Submissions (E-Filing)" section of this document.

A State, local governmental body, Federally recognized Indian Tribe, or agency thereof, may submit a petition to the Commission to participate as a party under 10 CFR 2.309(h)(1). The petition should state the nature and extent of the petitioner's interest in the proceeding. The petition should be submitted to the Commission no later than 20 days from the date of publication of this notice. The petition must be filed in accordance with the filing instructions in the "Electronic Submissions (E-Filing)" section of this document, and should meet the requirements for petitions set forth in this section, except that under 10 CFR 2.309(h)(2) a State, local governmental body, or Federally recognized Indian Tribe, or agency thereof does not need to address the standing requirements in 10 CFR 2.309(d) if the facility is located within its boundaries. Alternatively, a State, local governmental body, Federally recognized Indian Tribe, or agency thereof may participate as a non-party under 10 CFR 2.315(c).

If a petition is submitted, any person who is not a party to the proceeding and is not affiliated with or represented by a party may, at the discretion of the presiding officer, be permitted to make a limited appearance pursuant to the provisions of 10 CFR 2.315(a). A person making a limited appearance may make an oral or written statement of his or her position on the issues but may not otherwise participate in the proceeding. A limited appearance may be made at any session of the hearing or at any prehearing conference, subject to the limits and conditions as may be imposed by the presiding officer. Details regarding the opportunity to make a limited appearance will be provided by the presiding officer if such sessions are scheduled.

## V. Electronic Submissions (E-Filing)

All documents filed in NRC adjudicatory proceedings, including a request for hearing and petition for leave to intervene (petition), any motion or other document filed in the proceeding prior to the submission of a request for hearing or petition to intervene, and documents filed by interested governmental entities that request to participate under 10 CFR 2.315(c), must be filed in accordance with the NRC's E-Filing rule (72 FR 49139; August 28, 2007, as amended at 77 FR 46562, August 3, 2012). The E-Filing process requires participants to submit and serve all adjudicatory documents over the internet, or in some cases to mail copies on electronic storage media. Detailed guidance on making electronic submissions may be found in the Guidance for Electronic Submissions to the NRC and on the NRC website at *https://www.nrc.gov/site-help/e-submittals.html*. Participants may not submit paper copies of their filings unless they seek an exemption in accordance with the procedures described below.

To comply with the procedural requirements of E-Filing, at least 10 days prior to the filing deadline, the participant should contact the Office of the Secretary by email at *hearing.docket@nrc.gov*, or by telephone at 301–415–1677, to (1) request a digital identification (ID) certificate, which allows the participant (or its counsel or representative) to digitally sign

submissions and access the E-Filing system for any proceeding in which it is participating; and (2) advise the Secretary that the participant will be submitting a petition or other adjudicatory document (even in instances in which the participant, or its counsel or representative, already holds an NRC-issued digital ID certificate). Based upon this information, the Secretary will establish an electronic docket for the hearing in this proceeding if the Secretary has not already established an electronic docket.

Information about applying for a digital ID certificate is available on the NRC's public website at *https://www.nrc.gov/site-help/e-submittals/getting-started.html.* Once a participant has obtained a digital ID certificate and a docket has been created, the participant can then submit adjudicatory documents. Submissions must be in Portable Document Format (PDF). Additional guidance on PDF submissions is available on the NRC's public website at *https://www.nrc.gov/site-help/electronic-sub-ref-mat.html.* A filing is considered complete at the time the documents are submitted through the NRC's E-Filing system. To be timely, an electronic filing must be submitted to the E-Filing system no later than 11:59 p.m. Eastern Time on the due date. Upon receipt of a transmission, the E-Filing system time-stamps the document and sends the submitter an email notice confirming receipt of the document. The E-Filing system also distributes an email notice that provides access to the document to the NRC's Office of the General Counsel and any others who have advised the Office of the Secretary that they wish to participate in the proceeding, so that the filer need not serve the document on those participants separately. Therefore, applicants and other participants (or their counsel or representative) must apply for and receive a digital ID certificate before adjudicatory documents are filed so that they can obtain access to the documents via the E-Filing system.

A person filing electronically using the NRC's adjudicatory E-Filing system may seek assistance by contacting the NRC's Electronic Filing Help Desk through the ''Contact Us'' link located on the NRC's public website at *https://www.nrc.gov/site-help/e-submittals.html,* by email to *MSHD.Resource@nrc.gov,* or by a toll-free call at 1–866–672–7640. The NRC Electronic Filing Help Desk is available between 9 a.m. and 6 p.m., Eastern Time, Monday through Friday, excluding government holidays.

Participants who believe that they have a good cause for not submitting documents electronically must file an exemption request, in accordance with 10 CFR 2.302(g), with their initial paper filing stating why there is good cause for not filing electronically and requesting authorization to continue to submit documents in paper format. Such filings must be submitted by: (1) First class mail addressed to the Office of the Secretary of the Commission, U.S. Nuclear Regulatory Commission, Washington, DC 20555–0001, Attention: Rulemaking and Adjudications Staff; or (2) courier, express mail, or expedited delivery service to the Office of the Secretary, 11555 Rockville Pike, Rockville, Maryland 20852, Attention: Rulemaking and Adjudications Staff. Participants filing adjudicatory documents in this manner are responsible for serving the document on all other participants. Filing is considered complete by first-class mail as of the time of deposit in the mail, or by courier, express mail, or expedited delivery service upon depositing the document with the provider of the service. A presiding officer, having granted an exemption request from using E-Filing, may require a participant or party to use E-Filing if the presiding officer subsequently determines that the reason for granting the exemption from use of E-Filing no longer exists.

Documents submitted in adjudicatory proceedings will appear in the NRC's electronic hearing docket which is available to the public at *https://adams.nrc.gov/ehd,* unless excluded pursuant to an order of the Commission or the presiding officer. If you do not have an NRC-issued digital ID certificate as described above, click ''cancel'' when the link requests certificates and you will be automatically directed to the NRC's electronic hearing docket where you will be able to access any publicly available documents in a particular hearing docket. Participants are requested not to include personal privacy information, such as social security numbers, home addresses, or personal phone numbers in their filings, unless an NRC regulation or other law requires submission of such information. For example, in some instances, individuals provide home addresses in order to demonstrate proximity to a facility or site. With respect to copyrighted works, except for limited excerpts that serve the purpose of the adjudicatory filings and would constitute a Fair Use application, participants are requested not to include copyrighted materials in their submission.

The Commission will issue a notice or order granting or denying a hearing request or intervention petition, designating the issues for any hearing that will be held, and designating the Presiding Officer. A notice granting a hearing will be published in the **Federal Register** and served on the parties to the hearing.

For further details with respect to this application, see the application dated December 2, 2020 (ADAMS Accession No. ML20337A344).

Dated: January 21, 2021.

For the Nuclear Regulatory Commission.

**Dennis J. Galvin,**

*Project Manager, Plant Licensing Branch IV, Division of Operating Reactor Licensing, Office of Nuclear Reactor Regulation.*

[FR Doc. 2021–01742 Filed 1–26–21; 8:45 am]

**BILLING CODE 7590–01–P**

## NUCLEAR REGULATORY COMMISSION

**[Docket Nos. 50–438 and 50–439; NRC–2020–0273]**

## In the Matter of Tennessee Valley Authority Bellefonte Nuclear Plant, Units 1 and 2

**AGENCY:** Nuclear Regulatory Commission.

**ACTION:** Order; issuance.

**SUMMARY:** The U.S. Nuclear Regulatory Commission (NRC) has approved the Tennessee Valley Authority (TVA) requests to extend the latest construction completion dates for Bellefonte Nuclear Plant (BLN), Units 1 and 2, to October 1, 2021. TVA is the current construction permit (CP) holder for BLN, Units 1 and 2. The initial CPs for BLN were issued on December 24, 1974, authorizing TVA to construct BLN, Units 1 and 2, in Jackson County, AL.

**DATES:** The Order was issued on January 22, 2021.

**ADDRESSES:** Please refer to Docket NRC–2020–0273 when contacting the NRC about the availability of information regarding this document. You may obtain publicly available information related to this document using any of the following methods:

• *Federal Rulemaking Website:* Go to *https://www.regulations.gov* and search for Docket ID NRC–2020–0273. Address questions about Docket IDs in *Regulations.gov* to Jennifer Borges; telephone: 301–287–9127; email: *Jennifer.Borges@nrc.gov.* For technical questions, contact the individual listed in the **FOR FURTHER INFORMATION CONTACT** section of this document.

• *NRC's Agencywide Documents Access and Management System (ADAMS):* You may obtain publicly available documents online in the ADAMS Public Documents collection at *https://www.nrc.gov/reading-rm/adams.html.* To begin the search, select ''Begin Web-based ADAMS Search.'' For problems with ADAMS, please contact the NRC's Public Document Room (PDR) reference staff at 1–800–397–4209, 301–415–4737, or by email to *pdr.resource@nrc.gov.* The ''Bellefonte Nuclear Plant, Units 1 and 2—Extension of Construction Permits Expiration Dates,'' is available in ADAMS under Accession No. ML20335A393.

• *Attention:* The PDR, where you may examine and order copies of public documents is currently closed. You may submit your request to the PDR via email at *pdr.resource@nrc.gov* or call 1–800–397–4209 or 301–415–4737, between 8:00 a.m. and 4:00 p.m. (EST), Monday through Friday, except Federal holidays.

**FOR FURTHER INFORMATION CONTACT:**
Omid Tabatabai, Office of Nuclear Reactor Regulation, U.S. Nuclear Regulatory Commission, Washington, DC 20555–0001; telephone: 301–415–6616, email: *Omid.Tabatabai@nrc.gov.*

**SUPPLEMENTARY INFORMATION:** The text of the Order is attached.

Dated: January 22, 2021.

For the Nuclear Regulatory Commission.

**Omid Tabatabai-Yazdi,**

*Senior Project Manager, New Reactor Licensing Branch, Division of New and Renewed Licenses, Office of Nuclear Reactor Regulation.*

## United States of America Nuclear Regulatory Commission

In the Matter of TENNESSEE VALLEY AUTHORITY (Bellefonte Nuclear Plant, Units 1 and 2)
Docket Nos. 50–438 and 50–439

## Order

### I

The Tennessee Valley Authority (TVA, or the applicant) is the current holder of Construction Permit (CP) Nos. CPPR–122 and CPPR–123, which the Atomic Energy Commission (now the U.S. Nuclear Regulatory Commission (NRC)) issued on December 24, 1974 (Agencywide Documents Access and Management System (ADAMS) Accession No. ML090680334), for construction of the Bellefonte Nuclear Plant (BLN), Units 1 and 2, respectively. The CPs for CPPR–122 and CPPR–123 expire on October 1, 2020, and October 1, 2014, respectively.

These facilities, currently in deferred plant status as described in the Commission Policy Statement on Deferred Plants, published in Volume 52 of the **Federal Register** (FR), page 38077 (52 FR 38077), on October 14, 1987, are at the applicant's site in Jackson County, AL, located on a peninsula at Tennessee River Mile 392 on the west shore of Guntersville Reservoir, about 6 miles east-northeast of Scottsboro, AL.

TVA filed a request on June 10, 2014 (ADAMS Accession No. ML14168A489), as supplemented on March 31, 2017 (ADAMS Accession No. ML17090A388), under Title 10 of the *Code of Federal Regulations* (10 CFR) 50.55(b) for the extension of the latest date for the completion of construction as stated in CPPR–123 for BLN Unit 2. TVA also filed a request on August 28, 2020 (ADAMS Accession No. ML20244A305), under 10 CFR 50.55(b) for the extension of the latest date for the completion of construction as stated in CPPR–122 for BLN Unit 1.

In its letter dated June 14, 2014, TVA requested the NRC to extend the latest construction completion date for BLN Unit 2 from October 1, 2014, to October 1, 2017. Later, in a letter dated March 31, 2017, TVA stated that it had sold the Bellefonte property at auction and proposed that the NRC leave the extension request for BLN Unit 2 as an open item until the NRC is able to obtain construction completion information based on the purchaser's plans.

In its letter dated August 28, 2020, TVA requested the NRC to extend the latest construction completion date for BLN Unit 1 from October 1, 2020 to October 1, 2021. TVA stated that the sale of BLN Units 1 and 2 did not close in November 2018, and that the purchaser, Nuclear Development, LLC, filed a lawsuit against TVA for breach of contract. TVA stated that an extension for BLN Unit 1 is needed to allow the parties additional time to obtain a decision in the lawsuit.

### II

The NRC reviewed TVA's requests in the letters dated June 10, 2014; March 31, 2017; and August 28, 2020. As discussed more fully in the staff's related safety evaluation, the NRC staff finds that good cause exists for extending the completion date to October 1, 2021, for BLN Units 1 and 2. The staff also finds that the requested extensions involve no significant hazards consideration.

The NRC staff prepared an environmental assessment and finding of no significant impact and published it in the **Federal Register** on January 19, 2021 (86 FR 5280). Under 10 CFR 51.32,

''Finding of no significant impact,'' the Commission has determined that extending the construction completion date will not have a significant effect on the quality of the human environment.

### III

Within 60 days after the date of publication of this notice, any persons (petitioner) whose interest may be affected by this action may file a request for a hearing and petition for leave to intervene (petition) with respect to the action. The scope of this order extending the construction completion dates and any proceeding hereunder is limited to direct challenges to the CP holder's asserted reasons that show good cause for the extension. Petitions shall be filed in accordance with the Commission's ''Agency Rules of Practice and Procedure'' in 10 CFR part 2. Interested persons should consult a current copy of 10 CFR 2.309. The NRC's regulations are accessible electronically from the NRC Library on the NRC's website at *https://www.nrc.gov/reading-rm/doc-collections/cfr/.* Alternatively, a copy of the regulations is available at the NRC's Public Document Room, located at One White Flint North, Room O1–F21, 11555 Rockville Pike (first floor), Rockville, Maryland 20852. If a petition is filed, the Commission or a presiding officer will rule on the petition and, if appropriate, a notice of a hearing will be issued.

As required by 10 CFR 2.309(d) the petition should specifically explain the reasons why intervention should be permitted with particular reference to the following general requirements for standing: (1) The name, address, and telephone number of the petitioner; (2) the nature of the petitioner's right to be made a party to the proceeding; (3) the nature and extent of the petitioner's property, financial, or other interest in the proceeding; and (4) the possible effect of any decision or order which may be entered in the proceeding on the petitioner's interest.

In accordance with 10 CFR 2.309(f), the petition must also set forth the specific contentions which the petitioner seeks to have litigated in the proceeding. Each contention must consist of a specific statement of the issue of law or fact to be raised or controverted. In addition, the petitioner must provide a brief explanation of the bases for the contention and a concise statement of the alleged facts or expert opinion which support the contention and on which the petitioner intends to rely in proving the contention at the hearing. The petitioner must also provide references to the specific

sources and documents on which the petitioner intends to rely to support its position on the issue. The petition must include sufficient information to show that a genuine dispute exists with the applicant or licensee on a material issue of law or fact. Contentions must be limited to matters within the scope of the proceeding. The contention must be one which, if proven, would entitle the petitioner to relief. A petitioner who fails to satisfy the requirements at 10 CFR 2.309(f) with respect to at least one contention will not be permitted to participate as a party.

Those permitted to intervene become parties to the proceeding, subject to any limitations in the order granting leave to intervene. Parties have the opportunity to participate fully in the conduct of the hearing with respect to resolution of that party's admitted contentions, including the opportunity to present evidence, consistent with the NRC's regulations, policies, and procedures.

Petitions must be filed no later than 60 days from the date of publication of this notice. Petitions and motions for leave to file new or amended contentions that are filed after the deadline will not be entertained absent a determination by the presiding officer that the filing demonstrates good cause by satisfying the three factors in 10 CFR 2.309(c)(1)(i) through (iii). The petition must be filed in accordance with the filing instructions in the "Electronic Submissions (E-Filing)" section of this document.

If a hearing is requested, and the Commission has not made a final determination on the issue of no significant hazards consideration, the Commission will make a final determination on the issue of no significant hazards consideration. The final determination will serve to establish when the hearing is held. If the final determination is that the amendment request involves no significant hazards consideration, the Commission may issue the amendment and make it immediately effective, notwithstanding the request for a hearing. Any hearing will take place after issuance of the amendment. If the final determination is that the amendment request involves a significant hazards consideration, then any hearing held would take place before the issuance of the amendment unless the Commission finds an imminent danger to the health or safety of the public, in which case it will issue an appropriate order or rule under 10 CFR part 2.

A State, local governmental body, Federally recognized Indian Tribe, or agency thereof, may submit a petition to the Commission to participate as a party under 10 CFR 2.309(h)(1). The petition should state the nature and extent of the petitioner's interest in the proceeding. The petition should be submitted to the Commission no later than 60 days from the date of publication of this notice. The petition must be filed in accordance with the filing instructions in the "Electronic Submissions (E-Filing)" section of this document, and should meet the requirements for petitions set forth in this section, except that under 10 CFR 2.309(h)(2) a State, local governmental body, or Federally-recognized Indian Tribe, or agency thereof does not need to address the standing requirements in 10 CFR 2.309(d) if the facility is located within its boundaries. Alternatively, a State, local governmental body, Federally recognized Indian Tribe, or agency thereof may participate as a non-party under 10 CFR 2.315(c).

If a hearing is granted, any person who is not a party to the proceeding and is not affiliated with or represented by a party may, at the discretion of the presiding officer, be permitted to make a limited appearance pursuant to the provisions of 10 CFR 2.315(a). A person making a limited appearance may make an oral or written statement of his or her position on the issues but may not otherwise participate in the proceeding. A limited appearance may be made at any session of the hearing or at any prehearing conference, subject to the limits and conditions as may be imposed by the presiding officer. Details regarding the opportunity to make a limited appearance will be provided by the presiding officer if such sessions are scheduled.

**IV**

All documents filed in NRC adjudicatory proceedings, including a request for hearing and petition for leave to intervene (petition), any motion or other document filed in the proceeding prior to the submission of a request for hearing or petition to intervene, and documents filed by interested governmental entities that request to participate under 10 CFR 2.315(c), must be filed in accordance with the NRC's E-Filing rule (72 FR 49139; August 28, 2007, as amended at 77 FR 46562; August 3, 2012). The E-Filing process requires participants to submit and serve all adjudicatory documents over the internet, or in some cases to mail copies on electronic storage media. Detailed guidance on making electronic submissions may be found in the Guidance for Electronic Submissions to the NRC and on the NRC website at *https://www.nrc.gov/site-help/e-submittals.html*. Participants may not submit paper copies of their filings unless they seek an exemption in accordance with the procedures described below.

To comply with the procedural requirements of E-Filing, at least 10 days prior to the filing deadline, the participant should contact the Office of the Secretary by email at *hearing.docket@nrc.gov*, or by telephone at 301–415–1677, to (1) request a digital identification (ID) certificate, which allows the participant (or its counsel or representative) to digitally sign submissions and access the E-Filing system for any proceeding in which it is participating; and (2) advise the Secretary that the participant will be submitting a petition or other adjudicatory document (even in instances in which the participant, or its counsel or representative, already holds an NRC-issued digital ID certificate). Based upon this information, the Secretary will establish an electronic docket for the hearing in this proceeding if the Secretary has not already established an electronic docket.

Information about applying for a digital ID certificate is available on the NRC's public website at *https://www.nrc.gov/site-help/e-submittals/getting-started.html*. Once a participant has obtained a digital ID certificate and a docket has been created, the participant can then submit adjudicatory documents. Submissions must be in Portable Document Format (PDF). Additional guidance on PDF submissions is available on the NRC's public website at *https://www.nrc.gov/site-help/electronic-sub-ref-mat.html*. A filing is considered complete at the time the document is submitted through the NRC's E-Filing system. To be timely, an electronic filing must be submitted to the E-Filing system no later than 11:59 p.m. Eastern Time on the due date. Upon receipt of a transmission, the E-Filing system time-stamps the document and sends the submitter an email notice confirming receipt of the document. The E-Filing system also distributes an email notice that provides access to the document to the NRC's Office of the General Counsel and any others who have advised the Office of the Secretary that they wish to participate in the proceeding, so that the filer need not serve the document on those participants separately. Therefore, applicants and other participants (or their counsel or representative) must apply for and receive a digital ID certificate before adjudicatory documents are filed so that they can obtain access to the documents via the E-Filing system.

A person filing electronically using the NRC's adjudicatory E-Filing system may seek assistance by contacting the NRC's Electronic Filing Help Desk through the "Contact Us" link located on the NRC's public website at *https://www.nrc.gov/site-help/e-submittals.html,* by email to *MSHD.Resource@nrc.gov,* or by a toll-free call at 1–866–672–7640. The NRC Electronic Filing Help Desk is available between 9 a.m. and 6 p.m., Eastern Time, Monday through Friday, excluding government holidays.

Participants who believe that they have a good cause for not submitting documents electronically must file an exemption request, in accordance with 10 CFR 2.302(g), with their initial paper filing stating why there is good cause for not filing electronically and requesting authorization to continue to submit documents in paper format. Such filings must be submitted by: (1) First class mail addressed to the Office of the Secretary of the Commission, U.S. Nuclear Regulatory Commission, Washington, DC 20555–0001, Attention: Rulemaking and Adjudications Staff; or (2) courier, express mail, or expedited delivery service to the Office of the Secretary, 11555 Rockville Pike, Rockville, Maryland 20852, Attention: Rulemaking and Adjudications Staff. Participants filing adjudicatory documents in this manner are responsible for serving the document on all other participants. Filing is considered complete by first-class mail as of the time of deposit in the mail, or by courier, express mail, or expedited delivery service upon depositing the document with the provider of the service. A presiding officer, having granted an exemption request from using E-Filing, may require a participant or party to use E-Filing if the presiding officer subsequently determines that the reason for granting the exemption from use of E-Filing no longer exists.

Documents submitted in adjudicatory proceedings will appear in the NRC's electronic hearing docket which is available to the public at *https://adams.nrc.gov/ehd,* unless excluded pursuant to an order of the Commission or the presiding officer. If you do not have an NRC-issued digital ID certificate as described above, click "cancel" when the link requests certificates and you will be automatically directed to the NRC's electronic hearing dockets where you will be able to access any publicly available documents in a particular hearing docket. Participants are requested not to include personal privacy information, such as social security numbers, home addresses, or personal phone numbers in their filings,

unless an NRC regulation or other law requires submission of such information. For example, in some instances, individuals provide home addresses in order to demonstrate proximity to a facility or site. With respect to copyrighted works, except for limited excerpts that serve the purpose of the adjudicatory filings and would constitute a Fair Use application, participants are requested not to include copyrighted materials in their submission.

The attorney for the permit holder is Sherry A. Quirk, Executive Vice President and General Counsel, Tennessee Valley Authority, 400 West Summit Hill Drive, Knoxville, TN 37902.

**V**

*It is hereby ordered that* the latest dates for the completion of construction for CP Nos. CPPR–122 and CPPR–123 are extended to October 1, 2021.

Dated at Rockville, Maryland, this 22 day of January 2021.

For the Nuclear Regulatory Commission.

/RA/

Robert M. Taylor,
*Deputy Director, Office of Nuclear Reactor Regulation.*

[FR Doc. 2021–01754 Filed 1–26–21; 8:45 am]

**BILLING CODE 7590–01–P**

---

# PENSION BENEFIT GUARANTY CORPORATION

## Submission of Information Collection for OMB Review; Comment Request; Disclosure of Termination Information

**AGENCY:** Pension Benefit Guaranty Corporation.

**ACTION:** Notice of request for extension of OMB approval.

**SUMMARY:** Pension Benefit Guaranty Corporation ("PBGC") is requesting that the Office of Management and Budget ("OMB") extend approval, under the Paperwork Reduction Act, of a collection of information on the disclosure of termination information under its regulations for distress terminations and for PBGC-initiated terminations. This notice informs the public of PBGC's intent and solicits public comment on the collection of information.

**DATES:** Comments must be submitted on or before February 26, 2021.

**ADDRESSES:** Written comments and recommendations for the proposed information collection should be sent within 30 days of publication of this notice to *https://www.reginfo.gov/*

*public/do/PRAMain.* Find this particular information collection by selecting "Currently under 30-day Review—Open for Public Comments" or by using the search function.

A copy of a request will be posted on PBGC's website at *https://www.pbgc.gov/prac/laws-and-regulation/federal-register-notices-open-for-comment.* It may also be obtained by writing to Disclosure Division, Office of the General Counsel, Pension Benefit Guaranty Corporation, 1200 K Street NW, Washington, DC 20005–4026, or calling 202–326–4040 during normal business hours. TTY users may call the Federal Relay Service toll-free at 800–877–8339 and ask to be connected to 202–326–4040.

**FOR FURTHER INFORMATION CONTACT:** Melissa Rifkin (*rifkin.melissa@pbgc.gov*), Attorney, Regulatory Affairs Division, Office of the General Counsel, Pension Benefit Guaranty Corporation, 1200 K Street NW, Washington, DC 20005–4026; 202–229–6563. (TTY users may call the Federal Relay Service toll-free at 800–877–8339 and ask to be connected to 202–229–6563.)

**SUPPLEMENTARY INFORMATION:** Sections 4041 and 4042 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. 1301–1461, govern the termination of single-employer defined benefit pension plans that are subject to Title IV of ERISA. A plan administrator may initiate a distress termination pursuant to section 4041(c), and PBGC may itself initiate proceedings to terminate a pension plan under section 4042 if PBGC determines that certain conditions are present. Section 506 of the Pension Protection Act of 2006 amended sections 4041 and 4042 of ERISA. These amendments require that, upon a request by an affected party, a plan administrator must disclose information it has submitted to PBGC in connection with a distress termination filing, and that a plan administrator or plan sponsor must disclose information it has submitted to PBGC in connection with a PBGC-initiated termination. The provisions also require PBGC to disclose the administrative record relating to a PBGC-initiated termination upon request by an affected party.

The collection of information has been approved by OMB under control number 1212–0065 (expires March 31, 2021). On November 16, 2020, PBGC published in the **Federal Register** (at 85 FR 73090) a notice informing the public of its intent to request an extension of this collection of information without modification. PBGC did not receive any comments in response. PBGC is

requesting that OMB extend its approval for another three years. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.

PBGC estimates that approximately 70 plans will terminate as distress or PBGC-initiated terminations each year. PBGC further estimates that two participants or other affected parties of every nine distress terminations or PBGC-initiated terminations filed will annually make requests for termination information, or ²⁄₉ of 70 (approximately 16 plans per year). PBGC estimates that the hour burden for each request will be about 20 hours. The total annual hour burden is estimated to be 320 hours (16 plans × 20 hours). PBGC expects that the staff of plan administrators and sponsors will perform the work in-house and that no work will be contracted to third parties. Therefore, the annual cost burden is estimated to be $0.

Issued in Washington, DC.

**Hilary Duke,**
*Assistant General Counsel for Regulatory Affairs, Pension Benefit Guaranty Corporation.*

[FR Doc. 2021–01741 Filed 1–26–21; 8:45 am]
**BILLING CODE 7709–02–P**

## SECURITIES AND EXCHANGE COMMISSION

[Release No. 34–90962; File No. SR–PEARL–2020–30]

**Self-Regulatory Organizations; MIAX PEARL, LLC; Notice of Designation of a Longer Period for Commission Action on a Proposed Rule Change To Amend the Exchange's By-Laws in Connection With an Equity Rights Program**

January 21, 2021.

On November 24, 2020, MIAX PEARL, LLC ("MIAX PEARL" or "Exchange") filed with the Securities and Exchange Commission ("Commission"), pursuant to Section 19(b)(1) of the Securities Exchange Act of 1934 ("Act")[1] and Rule 19b–4 thereunder,[2] a proposed rule change to amend the Amended and Restated By-Laws of MIAX PEARL to correspond with an Equity Rights Program recently established by the Exchange. The proposed rule change was published for comment in the **Federal Register** on December 9, 2020.[3] The Commission

has received no comments on the proposal.

Section 19(b)(2) of the Act[4] provides that within 45 days of the publication of notice of the filing of a proposed rule change, or within such longer period up to 90 days as the Commission may designate if it finds such longer period to be appropriate and publishes its reasons for so finding, or as to which the self-regulatory organization consents, the Commission shall either approve the proposed rule change, disapprove the proposed rule change, or institute proceedings to determine whether the proposed rule change should be disapproved. The 45th day after publication of the notice for this proposed rule change is January 23, 2021. The Commission is extending this 45-day time period.

The Commission finds it appropriate to designate a longer period within which to take action on the proposed rule change so that it has sufficient time to consider the proposed rule change. Accordingly, the Commission, pursuant to Section 19(b)(2) of the Act,[5] designates March 9, 2021, as the date by which the Commission shall either approve or disapprove, or institute proceedings to determine whether to disapprove, the proposed rule change (File No. SR–PEARL–2020–30).

For the Commission, by the Division of Trading and Markets, pursuant to delegated authority.[6]

**J. Matthew DeLesDernier,**
*Assistant Secretary.*

[FR Doc. 2021–01730 Filed 1–26–21; 8:45 am]
**BILLING CODE 8011–01–P**

## SECURITIES AND EXCHANGE COMMISSION

[Release No. 34–90960; File No. SR–OCC–2021–002]

**Self-Regulatory Organizations; The Options Clearing Corporation; Notice of Filing and Immediate Effectiveness of Proposed Rule Change Relating to Revisions to Part 39 of the Commodity Futures Trading Commission Regulations**

January 21, 2021.

Pursuant to Section 19(b)(1) of the Securities Exchange Act of 1934 ("Act"),[1] and Rule 19b–4 thereunder,[2] notice is hereby given that on January 13, 2021, The Options Clearing Corporation ("OCC") filed with the

Securities and Exchange Commission ("SEC" or "Commission") the proposed rule change as described in Items I, II, and III below, which Items have been prepared primarily by OCC. OCC filed the proposed rule change pursuant to Section 19(b)(3)(A)(ii)[3] of the Act and Rule 19b–4(f)(6)[4] thereunder so that the proposal was effective upon filing with the Commission. The Commission is publishing this notice to solicit comments on the proposed rule change from interested persons.

**I. Clearing Agency's Statement of the Terms of Substance of the Proposed Rule Change**

The proposed rule change by OCC would amend Interpretation and Policy ("I&P") .01 to OCC Rule 602 (Customer-Level Margin Requirement), add I&P .02 to OCC Rule 602 (Customer-Level Margin Requirement) and add I&P .01 to OCC Rule 1103 (Notice of Suspension to Clearing Members) to achieve compliance with recent amendments to Part 39 of the Commodity Futures Trading Commission ("CFTC")[5] regulations and facilitate no-action relief issued by CFTC staff.[6] The proposed changes to OCC Rules are included in Exhibit 5 of File No. SR–OCC–2021–002. Material proposed to be added to OCC's Rules as currently in effect is underlined and material proposed to be deleted is marked in strikethrough text. All capitalized terms not defined herein have the same meaning as set forth in the OCC By-Laws and Rules.[7]

**II. Clearing Agency's Statement of the Purpose of, and Statutory Basis for, the Proposed Rule Change**

In its filing with the Commission, OCC included statements concerning the purpose of and basis for the proposed rule change and discussed any comments it received on the proposed rule change. The text of these statements may be examined at the places specified in Item IV below. OCC has prepared summaries, set forth in sections (A), (B), and (C) below, of the most significant aspects of these statements.

---

[1] 15 U.S.C. 78s(b)(1).
[2] 17 CFR 240.19b–4.
[3] *See* Securities Exchange Act Release No. 90563 (December 3, 2020), 85 FR 79252.

[4] 15 U.S.C. 78s(b)(2).
[5] *Id.*
[6] 17 CFR 200.30–3a(31).
[1] 15 U.S.C. 78s(b)(1).
[2] 17 CFR 240.19b–4.

[3] 15 U.S.C. 78s(b)(3)(A)(ii).
[4] 17 CFR 240.19b–4(f)(6).
[5] Derivatives Clearing Organizations General Provisions and Core Principles, 85 FR 4800 (January 27, 2020).
[6] CFTC Letter No. 19–17, Comm. Fut. L. Rep. ¶ 34,523 (July 10, 2019). *See also* CFTC Letter No. 20–28, Comm. Fut. L. Rep. ¶ 34,798 (September 15, 2020).
[7] OCC's By-Laws and Rules can be found on OCC's public website: *https://www.theocc.com/ Company-Information/Documents-and-Archives/ By-Laws-and-Rules.*

*(A) Clearing Agency's Statement of the Purpose of, and Statutory Basis for, the Proposed Rule Change*

(1) Purpose

The purpose of revised I&P .01 to OCC Rule 602 is to achieve compliance with recent amendments to CFTC Regulation 39.13(g)(8)(ii).[8] Departing from the historical practice of establishing distinct minimum initial margin requirements for hedge and speculative customer accounts,[9] revised CFTC Regulation 39.13(g)(8)(ii) provides that a derivatives clearing organization ("DCO") shall establish a minimum initial margin requirement that clearing members must charge their customers with respect to each product and portfolio that is commensurate with the risk presented by each customer account.[10] The revised regulation also provides DCOs reasonable discretion in establishing a higher minimum initial margin requirement that clearing members must collect for categories of customers determined by the clearing member to have heightened risk profiles.[11] As amended, I&P .01 to Rule 602 will allow OCC to achieve compliance with CFTC Regulation 39.13(g)(8)(ii) by requiring Clearing Members to determine which futures customers or categories of futures customers have heightened risk profiles and to collect, at a minimum, the amount of initial margin established by OCC for such customers or categories of customers from time to time. The proposal also eliminates the existing language in I&P .01 to OCC Rule 602 contemplating distinct margin requirements for customer hedge and speculative positions.[12]

OCC also proposes to adopt I&P .02 to OCC Rule 602 to facilitate no-action relief granted by the CFTC. By way of background, in 2011, the CFTC adopted Regulation 39.13(g)(8)(iii) requiring each DCO to prohibit the withdrawal of funds from a customer account unless the clearing member holds a sufficient amount of the customer's assets to cover its initial margin requirements with respect to products cleared by the

DCO.[13] In 2012, OCC adopted Rule 602(b) to satisfy this requirement.[14] CFTC staff has issued time-limited no-action relief pursuant to which a DCO may allow a futures commission merchant ("FCM") clearing member to treat the separate accounts of a customer as accounts of separate entities for purposes of CFTC Regulation 39.13(g)(8)(iii), provided that the clearing member satisfies several conditions set forth in the letter.[15] Proposed I&P .02 creates an exception to OCC Rule 602(b) that allows FCM Clearing Members that satisfy the conditions established by the CFTC to treat separate futures customer accounts as accounts of separate entities for purposes of OCC Rule 602(b).

Finally, the proposed rule change adds I&P .01 to OCC Rule 1103, which specifies that OCC will publish a public notice of a decision to suspend a Clearing Member on its website as soon as reasonably practical. OCC is adopting this I&P to achieve compliance with CFTC Regulation 39.16(c)(2)(ii), which requires each DCO to adopt rules describing the actions a DCO will take upon a default,[16] which must include posting a public notice of a declaration of default on the DCO's website.[17]

OCC proposes to make the revisions to the I&Ps to OCC Rules 602 and 1103 described above effective on January 27, 2021. This effective date aligns to the compliance date for the revisions to Part 39 of the CFTC regulations.[18]

(2) Statutory Basis

Section 17A(b)(3)(F)[19] of the Act requires, among other things, that the rules of a clearing agency be designed to promote the prompt and accurate clearance and settlement of securities and derivatives transactions and protect investors and the public interest. OCC believes that the proposed rule change is consistent with Section 17A(b)(3)(F)

of the Act.[20] As noted above, the proposed revision to I&P .01 to Rule 602 protects investors and the public interest by more clearly describing which accounts are subject to increased initial margin requirements. The addition of .02 to OCC Rule 602 will promote the prompt and accurate clearance and settlement of transactions by accommodating no-action relief that is intended to help Clearing Members and their customers realize operational efficiencies for separate accounts. The proposed addition of I&P .01 to OCC Rule 1103 promotes the public interest by specifying that OCC will publish a public notice of a decision to suspend a Clearing Member on its website. The proposal also enables OCC to satisfy certain requirements set forth in Part 39 of the CFTC regulations and provides for a well-founded, clear, transparent and enforceable legal basis for its activities in accordance with SEC Rule 17Ad–22(e)(1).[21] The proposed rule change is not inconsistent with the existing rules of OCC, including any other rules proposed to be amended.

*(B) Clearing Agency's Statement on Burden on Competition*

Section 17A(b)(3)(I) of the Act[22] requires that the rules of a clearing agency not impose any burden on competition not necessary or appropriate in furtherance of the purposes of the Act. OCC does not believe that the proposed rule change would have any impact or impose a burden on competition. Although this proposed rule change affects Clearing Members, their customers, and the markets that OCC serves, OCC believes that the proposed rule change would not disadvantage or favor any particular user of OCC's services in relationship to another user because the proposed amendments apply equally to all users of OCC. OCC also notes that two of the proposed revisions to OCC Rules are designed to achieve compliance with amendments to Part 39 of the CFTC Regulations, and, in adopting these amendments, the CFTC identified no anticompetitive effects.[23] Given that the revisions to I&P .01 to OCC Rule 602 and I&P .01 to OCC Rule 1103 are narrowly tailored to achieve compliance with regulatory requirements for which no anticompetitive effects have been identified, OCC does not believe that these amendments would have any impact or impose a burden on competition. The addition of I&P .02 to

---

[8] 85 FR at 4812 and 4856.

[9] *See, e.g.* 85 FR at 4812.

[10] 17 CFR 39.13(g)(8)(ii).

[11] *Id.*

[12] OCC plans to distribute information used to calculate the minimum initial margin requirement for futures customer accounts and futures customer accounts with heightened risk profiles through a daily theoretical pricing file that is distributed to Clearing Members. OCC currently uses a similar approach for information used to calculate the minimum initial margin requirement for hedge and speculative positions of futures customers.

[13] Derivatives Clearing Organization General Provisions and Core Principles, 76 FR 69334, 69374 (November 8, 2011).

[14] *See* File No. SR–OCC–2012–006.

[15] CFTC Letter No. 19–17, Comm. Fut. L. Rep. ¶ 34,523 (July 10, 2019) (granting time-limited no-action relief with respect to CFTC Regulation 39.13(g)(8)(iii) until June 30, 2021). *See also* CFTC Letter No. 20–28, Comm. Fut. L. Rep. ¶ 34,798 (September 15, 2020) (extending the time-limited no-action relief with respect to CFTC Regulation 39.13(g)(8)(iii) until December 31, 2021).

[16] CFTC Regulation 39.16(c)(2)(ii) also requires DCOs to adopt rules providing for the prompt transfer, liquidation, or hedging of the customer or house positions of the defaulting clearing member, as applicable. Chapter XI of OCC's Rules addresses this portion of CFTC Regulation 39.16(c)(2)(ii).

[17] 17 CFR 39.16(c)(2)(ii). *See also* 85 FR at 4815–16 and 4857.

[18] *See* 85 FR at 4800.

[19] 15 U.S.C. 78q–1(b)(3)(F).

[20] 15 U.S.C. 78q–1(b)(3)(F).

[21] 17 CFR 240.17Ad–22(e)(1).

[22] 15 U.S.C. 78q–1(b)(3)(I).

[23] *See* 85 FR at 4849–50.

OCC Rule 602 is intended to facilitate no-action relief related to an existing market practice and is not expected to have any impact on the competitive landscape.

While OCC does not believe that the proposal would have any impact or impose a burden on competition, if any such impact or burden to competition were to exist, the proposed amendments would still be necessary to achieve compliance with applicable regulatory requirements and accommodate no-action relief granted by the CFTC. The amendments are appropriate, because they are narrowly tailored to achieve compliance with CFTC Regulations and facilitate no-action relief. Accordingly, OCC does not believe that the proposed rule change would have any unnecessary or inappropriate impact or burden on competition.

*(C) Clearing Agency's Statement on Comments on the Proposed Rule Change Received From Members, Participants or Others*

Written comments on the proposed rule change were not and are not intended to be solicited with respect to the proposed rule change and none have been received.

### III. Date of Effectiveness of the Proposed Rule Change and Timing for Commission Action

Because the foregoing proposed rule change does not:

(i) Significantly affect the protection of investors or the public interest;

(ii) impose any significant burden on competition; and

(iii) become operative for 30 days from the date on which it was filed, or such shorter time as the Commission may designate, it has become effective pursuant to Section 19(b)(3)(A) of the Act [24] and Rule 19b–4(f)(6) [25] thereunder.

OCC has requested that the Commission waive the 30-day operative delay under Rule 19b–4(f)(6)(iii) [26] so that the proposed rule changes may become effective and operative effective on January 27, 2021. OCC states that the proposal is intended to achieve compliance with amendments to Part 39 of the CFTC Regulations, which become effective on that date. Accordingly, OCC believes that the prompt implementation of these changes would be consistent with the public interest and the protection of investors.

In adopting CFTC Regulation 39.13(g)(8)(ii), the CFTC noted that the

[24] 15 U.S.C. 78s(b)(3)(A).
[25] 17 CFR 240.19b–4(f)(6).
[26] 17 CFR 240.19b–4(f)(6)(iii).

amendment was consistent with an existing interpretation permitting DCOs to establish initial margin requirements based on the type of customer account and by applying prudential standards that result in FCMs collecting initial margin commensurate with the risk presented by each customer account.[27] OCC does not believe that the amendment to I&P .01 and addition of I&P .02 to Rule 602 would significantly affect the protection of investors or the public interest as these changes simply conform the language of OCC's Rules to the applicable CFTC Regulation and prior interpretive guidance and facilitate no-action relief that has been granted with respect to an existing practice. Finally, the addition of I&P .01 to OCC Rule 1103 would not significantly affect the protection of investors or the public interest as it codifies OCC's longstanding practice of posting a notice of a Clearing Member default to its website. The proposed rule change would not impose any significant burden on competition because, as described above, the requirements apply to all Clearing Members, do not disadvantage or favor any particular user of OCC's services in relationship to another user and achieve compliance with applicable regulatory requirements for which the CFTC identified no anticompetitive effects.

The Commission believes that delaying the operation of the proposed rule change for 30 days would impede OCC's ability to comply with the CFTC rules by January 27, 2021 because a 30-day delay from the date of filing would require that the proposed rule change not become operative until February 12, 2021. The Commission believes, therefore, that waiving the 30-day operative delay would facilitate OCC's ability to comply with the CFTC's rules in a timely manner. Moreover, the Commission believes that the proposed rule change would not significantly affect the protection of investors or the public interest or impose a significant burden on competition because the changes would conform OCC's rules to existing practices as described above. The Commission designates the proposed rule change as operative on January 27, 2021.

[27] See 85 FR at 4812 *citing* CFTC Letter No. 12–08 (Sept. 14, 2012). In the relevant section CFTC Letter No. 12–08 provided, "[A] DCO may continue the practice of establishing customer initial margin requirements based on the type of customer account and by applying prudential standards that result in FCMs collecting customer initial margin at levels commensurate with the risk presented by each type of customer account. This is the case even if the differentiation between accounts is not stated specifically in terms of 'hedge' and 'non-hedge' accounts." See CFTC Letter 12–08 at 8.

At any time within 60 days of the filing of the proposed rule change, the Commission summarily may temporarily suspend such rule change if it appears to the Commission that such action is necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of the Act.

### IV. Solicitation of Comments

Interested persons are invited to submit written data, views and arguments concerning the foregoing, including whether the proposed rule change is consistent with the Act. Comments may be submitted by any of the following methods:

*Electronic Comments*

• Use the Commission's internet comment form (*http://www.sec.gov/rules/sro.shtml*); or

• Send an email to *rule-comments@sec.gov.* Please include File Number SR–OCC–2021–002 on the subject line.

*Paper Comments*

• Send paper comments in triplicate to Secretary, Securities and Exchange Commission, 100 F Street NE, Washington, DC 20549–1090. All submissions should refer to File Number SR–OCC–2021–002. This file number should be included on the subject line if email is used. To help the Commission process and review your comments more efficiently, please use only one method. The Commission will post all comments on the Commission's internet website (*http://www.sec.gov/rules/sro.shtml*). Copies of the submission, all subsequent amendments, all written statements with respect to the proposed rule change that are filed with the Commission, and all written communications relating to the proposed rule change between the Commission and any person, other than those that may be withheld from the public in accordance with the provisions of 5 U.S.C. 552, will be available for website viewing and printing in the Commission's Public Reference Room, 100 F Street NE, Washington, DC 20549, on official business days between the hours of 10:00 a.m. and 3:00 p.m. Copies of such filing also will be available for inspection and copying at the principal office of OCC and on OCC's website at *https://www.theocc.com/Company-Information/Documents-and-Archives/By-Laws-and-Rules.*

All comments received will be posted without change. Persons submitting comments are cautioned that we do not redact or edit personal identifying

information from comment submissions. You should submit only information that you wish to make available publicly.

All submissions should refer to File Number SR–OCC–2021–002 and should be submitted on or before February 17, 2021.

For the Commission, by the Division of Trading and Markets, pursuant to delegated authority.[28]

**J. Matthew DeLesDernier,**

*Assistant Secretary.*

[FR Doc. 2021–01729 Filed 1–26–21; 8:45 am]

**BILLING CODE 8011–01–P**

---

## SECURITIES AND EXCHANGE COMMISSION

**[SEC File No. 270–182, OMB Control No. 3235–0237]**

### Submission for OMB Review; Comment Request

*Upon Written Request, Copies Available From:* Securities and Exchange Commission, Office of FOIA Services, 100 F Street NE, Washington, DC 20549–2736

*Extension:*

Form N–54A

Notice is hereby given that, pursuant to the Paperwork Reduction Act of 1995 (44 U.S.C. 3501 *et seq.*), the Securities and Exchange Commission ("Commission") has submitted to the Office of Management and Budget a request for extension of the previously approved collection of information discussed below.

Under the Investment Company Act of 1940 (15 U.S.C. 80a–1 *et seq.*) (the "Investment Company Act"), certain investment companies can elect to be regulated as business development companies, as defined in Section 2(a)(48) of the Investment Company Act (15 U.S.C. 80a–2(a)(48)). Under Section 54(a) of the Investment Company Act (15 U.S.C. 80a–53(a)), any company defined in Section 2(a)(48)(A) and (B) may elect to be subject to the provisions of Sections 55 through 65 of the Investment Company Act (15 U.S.C. 80a–54 to 80a–64) by filing with the Commission a notification of election, if such company has: (1) A class of equity securities registered under Section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78a *et seq.*) ("Exchange Act"); or (2) filed a registration statement pursuant to Section 12 of the Exchange Act for a class of its equity securities. The Commission adopted Form N–54A (17 CFR 274.53) as the form for

[28] 17 CFR 200.30–3(a)(12).

notification of election to be regulated as a business development company.

The purpose of Form N–54A is to notify the Commission that the investment company making the notification elects to be subject to Sections 55 through 65 of the Investment Company Act, enabling the Commission to administer those provisions of the Investment Company Act to such companies.

The Commission estimates that on average approximately 7 business development companies file these notifications each year. Each of those business development companies need only make a single filing of Form N–54A. The Commission further estimates that this information collection imposes a burden of 0.5 hours, resulting in a total annual PRA burden of 3.5 hours. Based on the estimated wage rate, the total cost to the business development company industry of the hour burden for complying with Form N–54A would be approximately $1,288.

The collection of information under Form N–54A is mandatory. The information provided by the form is not kept confidential. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid control number.

The public may view the background documentation for this information collection at the following website, *www.reginfo.gov.* Comments should be directed to: (i) Desk Officer for the Securities and Exchange Commission, Office of Information and Regulatory Affairs, Office of Management and Budget, Room 10102, New Executive Office Building, Washington, DC 20503, or by sending an email to: *Lindsay.M.Abate@omb.eop.gov;* and (ii) David Bottom, Director/Chief Information Officer, Securities and Exchange Commission, c/o Cynthia Roscoe, 100 F Street NE, Washington, DC 20549 or send an email to: *PRA_Mailbox@sec.gov.* Written comments and recommendations for the proposed information collection should be sent within 30 days of publication of this notice to *www.reginfo.gov/public/do/PRAMain.* Find this particular information collection by selecting "Currently under 30-day Review—Open for Public Comments" or by using the search function.

Dated: January 21, 2021.

**J. Matthew DeLesDernier,**

*Assistant Secretary.*

[FR Doc. 2021–01655 Filed 1–26–21; 8:45 am]

**BILLING CODE 8011–01–P**

---

## SECURITIES AND EXCHANGE COMMISSION

**[SEC File No. 270–524, OMB Control No. 3235–0582]**

### Proposed Collection; Comment Request

*Upon Written Request, Copies Available From:* Securities and Exchange Commission, Office of FOIA Services, 100 F Street NE, Washington, DC 20549–2736

*Extension:*

Form N–PX

Notice is hereby given that, pursuant to the Paperwork Reduction Act of 1995 (44 U.S.C. 3501 *et seq.*) ("Paperwork Reduction Act"), the Securities and Exchange Commission (the "Commission") is soliciting comments on the collection of information summarized below. The Commission plans to submit this existing collection of information to the Office of Management and Budget ("OMB") for extension and approval.

Rule 30b1–4 (17 CFR 270.30b1–4) under the Investment Company Act of 1940 (15 U.S.C. 80a–1 *et seq.*) requires every registered management investment company, other than a small business investment company registered on Form N–5 ("funds"), to file a report on Form N–PX not later than August 31 of each year. Funds use Form N–PX to file annual reports with the Commission containing their complete proxy voting record for the most recent twelve-month period ended June 30.

The Commission estimates that there are approximately 2,207 funds registered with the Commission, representing approximately 11,890 fund portfolios that are required to file Form N–PX reports. The 11,890 portfolios are comprised of approximately 6,392 portfolios holding equity securities, 2,857 portfolios holding no equity securities, and 1,476 portfolios holding fund securities (*i.e.,* fund of funds).[1] The currently approved burden of Form N–PX for portfolios holding equity

[1] The estimate of 2,207 funds is based on the number of management investment companies currently registered with the Commission. The Commission staff estimates that there are approximately 6,392 portfolios that invest primarily in equity securities, 804 "hybrid" or bond portfolios that may hold some equity securities, 2,857 bond portfolios that hold no equity securities, and 361 money market fund portfolios, and 1,476 fund of funds, for a total of 11,890 portfolios required to file Form N–PX reports. The staff has based its portfolio estimates on a number of publications. *See* Investment Company Institute, Trends in Mutual Fund Investing (February 2020); Investment Company Institute, Closed-End Fund Assets and Net Issuance (Fourth Quarter 2019); Investment Company Institute, ETF Assets and Net Issuance (February 2020).

securities is 7.2 hours per response, the current burden estimate for funds holding no equity securities is 0.17 hours (10 minutes) per response, and the current burden estimate for fund of funds is 1 hour per response. Therefore, the number of aggregate burden hours, when calculated using the current number of portfolios, is approximately 47,984 hours.[2] We continue to believe that these estimates for Form N–PX's current burden are appropriate. Based on the Commission's estimate of 47,984 burden hours and an estimated wage rate of approximately $368 per hour,[3] the total cost to reporting persons of the hour burden for filing Form N–PX is approximately $17.66 million.[4]

The estimated cost burden of Form N–PX is $1,000 in external costs per portfolio holding equity securities that is paid to third-party service providers. External costs for portfolios holding no equity securities have previously been estimated to be zero because portfolios holding no equity securities generally have no proxy votes to report and therefore do not require third-party service providers to assist with proxy voting and preparing reports on Form N–PX. The estimated cost burden of Form N–PX for fund of funds is estimated to be $100 per portfolio because fund of funds generally either have no proxy votes to report; or if proxy votes are reported, they are generally limited in the number of securities and the number of voting matters relative to portfolios holding equity securities. Therefore, the aggregate cost burden, when calculated using the current number of portfolios, is approximately $6,539,600 in external costs.[5] We continue to believe that these estimates for Form N–PX's current cost burden are appropriate.

Estimates of average burden hours and costs are made solely for the purposes of the Paperwork Reduction Act and are not derived from a comprehensive or even representative survey or study of the costs of Commission rules and forms.

Compliance with the collection of information requirements of Form N–PX is mandatory. Responses to the collection of information will not be kept confidential. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.

Written comments are invited on: (a) Whether the collection of information is necessary for the proper performance of the functions of the Commission, including whether the information has practical utility; (b) the accuracy of the Commission's estimate of the burden of the collection of information; (c) ways to enhance the quality, utility, and clarity of the information collected; and (d) ways to minimize the burden of the collection of information on respondents, including through the use of automated collection techniques or other forms of information technology. Consideration will be given to comments and suggestions submitted in writing within 60 days of this publication.

Please direct your written comments to David Bottom, Director/Chief Information Officer, Securities and Exchange Commission, C/O Cynthia Roscoe, 100 F Street NE, Washington, DC 20549; or send an email to: *PRA_Mailbox@sec.gov.*

Dated: January 21, 2021.

**J. Matthew DeLesDernier,**
*Assistant Secretary.*

[FR Doc. 2021–01667 Filed 1–26–21; 8:45 am]

**BILLING CODE 8011–01–P**

---

**SECURITIES AND EXCHANGE COMMISSION**

**[Release No. 34–90956; File No. SR–NYSEAMER–2021–03]**

**Self-Regulatory Organizations; NYSE American LLC; Notice of Filing and Immediate Effectiveness of a Proposed Rule Change To Amend the NYSE American Options Fee Schedule**

January 21, 2021.

Pursuant to Section 19(b)(1)[1] of the Securities Exchange Act of 1934 (the "Act")[2] and Rule 19b–4 thereunder,[3] notice is hereby given that, on January 13, 2021, NYSE American LLC ("NYSE American" or the "Exchange") filed with the Securities and Exchange Commission (the "Commission") the proposed rule change as described in Items I, II, and III below, which Items

have been prepared by the self-regulatory organization. The Commission is publishing this notice to solicit comments on the proposed rule change from interested persons.

**I. Self-Regulatory Organization's Statement of the Terms of Substance of the Proposed Rule Change**

The Exchange proposes to amend the NYSE American Options Fee Schedule ("Fee Schedule") regarding the credit for certain American Customer Engagement ("ACE") Program Simple transactions. The Exchange proposes to implement the fee change effective January 13, 2021. The proposed rule change is available on the Exchange's website at *www.nyse.com,* at the principal office of the Exchange, and at the Commission's Public Reference Room.

**II. Self-Regulatory Organization's Statement of the Purpose of, and Statutory Basis for, the Proposed Rule Change**

In its filing with the Commission, the self-regulatory organization included statements concerning the purpose of, and basis for, the proposed rule change and discussed any comments it received on the proposed rule change. The text of those statements may be examined at the places specified in Item IV below. The Exchange has prepared summaries, set forth in sections A, B, and C below, of the most significant parts of such statements.

*A. Self-Regulatory Organization's Statement of the Purpose of, and the Statutory Basis for, the Proposed Rule Change*

1. Purpose

The purpose of this filing is to modify the Fee Schedule regarding a certain credit available to ACE Program participants who also have an affiliated or appointed Market Maker that participates in the Prepayment Program.[4] The Exchange proposes to implement the rule change on January 13, 2021.

Section I.E. of the Fee Schedule sets forth the per contract credits applicable to Simple and Complex executions for participants in the ACE Program. Currently, the Exchange offers a range of credits to ACE Program participants for each electronic Customer contract, including certain credits available to participants with affiliated or appointed Market Makers that prepay their Market Maker fees. The credits are tiered based on increasing levels of Customer

---

[2] (6,392 portfolios that hold equity securities × 7.2 hours per year) + (2,857 portfolios holding no equity securities × 0.17 hours per year) + (1,476 portfolios holding fund securities × 1 hour per year) = 47,984 hours.

[3] The hourly wage figure for a compliance attorney is from the Securities Industry and Financial Markets Association's Management & Professional Salaries in the Securities Industry 2013, modified by Commission staff to account for an 1800-hour work-year and inflation and multiplied by 5.35 to account for bonuses, firm size, employee benefits and overhead.

[4] 47,984 hours × $368 per hour = $17,658,112.

[5] (6,392 portfolios holding equity securities × $1,000 per year) + (2,857 portfolios holding no equity securities × $0 per year) + (1,476 fund of funds × $100) = $6,539,600.

[1] 15 U.S.C. 78s(b)(1).
[2] 15 U.S.C. 78a.
[3] 17 CFR 240.19b–4.

[4] *See* Fee Schedule, Section I.D., Prepayment Program.

Electronic Average Daily Volume ("ADV") or, for Tiers 3 through 5, Total Electronic ADV, of which 20% of the qualifying volume for the Tier must be Customer volume.

The Exchange proposes to modify the Fee Schedule to amend the per contract credit applicable to Tier 5 Simple executions by Order Flow Providers that have an affiliated or appointed Market Maker that prepays its Market Maker Fees (the "Credit"). Specifically, the Exchange proposes to modify the amount of the Credit from ($0.24) per contract to ($0.23) per contract.[5] Because the volume of Electronic executions has increased across the industry, the Exchange believes the proposed change would still encourage more participants to try to achieve the Credit by directing more order flow to the Exchange.

The Exchange's fees are constrained by intermarket competition, as ATP Holders may direct their order flow to any of the 16 options exchanges, including another exchange with similar incentive programs.[6] Thus, ATP Holders have a choice of where they direct their order flow, including Electronic volume.

To the extent that the proposed modification to the Credit continues to encourage Customer order flow and Market Makers to prepay their fees, all market participants stand to benefit from both increased Customer order flow to achieve the Credit and continued Market Maker participation to take advantage of having pre-paid their fees. The Exchange believes all market participants stand to benefit from increased order flow, which promotes market depth, facilitates tighter spreads and enhances price discovery.

### 2. Statutory Basis

The Exchange believes that the proposed rule change is consistent with Section 6(b) of the Act,[7] in general, and furthers the objectives of Sections 6(b)(4) and (5) of the Act,[8] in particular, because it provides for the equitable allocation of reasonable dues, fees, and other charges among its members, issuers and other persons using its facilities and does not unfairly discriminate between customers, issuers, brokers or dealers.

The Proposed Rule Change Is Reasonable

The Exchange operates in a highly competitive market. The Commission has repeatedly expressed its preference for competition over regulatory intervention in determining prices, products, and services in the securities markets. In Regulation NMS, the Commission highlighted the importance of market forces in determining prices and SRO revenues and also, recognized that current regulation of the market system "has been remarkably successful in promoting market competition in its broader forms that are most important to investors and listed companies." [9]

There are currently 16 registered options exchanges competing for order flow. Based on publicly-available information, and excluding index-based options, no single exchange has more than 16% of the market share of executed volume of multiply-listed equity and ETF options trades.[10] Therefore, currently no exchange possesses significant pricing power in the execution of multiply-listed equity & ETF options order flow. More specifically, in November 2020, the Exchange had less than 10% market share of executed volume of multiply-listed equity and ETF options trades.[11]

The Exchange believes that the ever-shifting market share among the exchanges from month to month demonstrates that market participants can shift order flow, or discontinue or reduce use of certain categories of products, in response to fee changes. Accordingly, competitive forces constrain options exchange transaction fees. Stated otherwise, changes to exchange transaction fees and credits can have a direct effect on the ability of an exchange to compete for order flow.

The proposed rule change is designed to continue to incent ATP Holders to direct liquidity to the Exchange in Electronic executions, similar to other exchange programs with competitive pricing programs, thereby promoting market depth, price discovery and improvement and enhancing order execution opportunities for market participants. In particular, the Exchange believes it is reasonable to adjust the Credit downward, as the Credit would remain consistent with those offered by a competing options exchange for electronic participants.[12]

The proposed change is reasonably designed to continue to encourage ATP Holders to participate in both the ACE Program and in the Market Maker Prepayment Program and to achieve ACE Tier 5 (the highest ACE Tier) to qualify for the Credit. The Exchange believes that otherwise maintaining the qualification bases to achieve the ACE Tier credits should also continue to encourage greater use of the Exchange by all ATP Holders, which may lead to greater opportunities to trade—and for price improvement—for all participants. Because the ACE Program is based on the amount of Customer business transacted on the Exchange, the Exchange believes the proposed change to decrease the Credit would still continue to incent providers of Customer order flow to direct that order flow to the Exchange. In addition, ATP Holders' affiliated or appointed Market Makers will also continue to be incented to compete to make markets in a manner that enables the Exchange to improve its overall competitiveness and strengthen its market quality for all market participants.

Further, the Exchange believes this proposed change would continue to attract more volume and liquidity to the Exchange generally, and more Customer volume specifically, and would therefore benefit all market participants (including those that do not participate in the ACE Program) through increased opportunities to trade at potentially improved prices and enhanced opportunities for price discovery. In addition, the proposed change would continue to encourage ATP Holders to have affiliated or appointed Market Makers prepay their Market Maker fees, which in turn encourages the Market Makers to conduct business and to make competitive markets on the Exchange, to the benefit of all markets participants.

Finally, to the extent the proposed change encourages greater volume and liquidity, the Exchange believes the proposed change would continue to improve the Exchange's overall competitiveness and strengthen its market quality for all market participants. In the backdrop of the competitive environment in which the

---

[5] See proposed Fee Schedule, Section I.E., American Customer Engagement ("ACE") Program Table.

[6] See, e.g., Cboe Exchange Inc. ("Cboe"), Fee Schedule, Volume Incentive Program, *available at: https://cdn.cboe.com/resources/membership/Cboe_FeeSchedule.pdf* (providing per contract credits based on volume tiers in Simple and Complex executions).

[7] 15 U.S.C. 78f(b).

[8] 15 U.S.C. 78f(b)(4) and (5).

[9] See Securities Exchange Act Release No. 51808 (June 9, 2005), 70 FR 37496, 37499 (June 29, 2005) (S7–10–04) ("Reg NMS Adopting Release").

[10] The OCC publishes options and futures volume in a variety of formats, including daily and monthly volume by exchange, available here: *https://www.theocc.com/Market-Data/Market-Data-Reports/Volume-and-Open-Interest/Monthly-Weekly-Volume-Statistics.*

[11] Based on a compilation of OCC data for monthly volume of equity-based options and monthly volume of ETF-based options, see id., the Exchange's market share in multiply-listed equity and ETF options increased from 8.06% for the month of November 2019 to 9.09% for the month of November 2020.

[12] See, e.g., supra note 6 (regarding Cboe's VIP Program).

Exchange operates, the proposed rule change is a reasonable attempt by the Exchange to maintain its market share relative to its competitors.

The Proposed Rule Change Is an Equitable Allocation of Fees and Credits

The Exchange believes the proposed rule change is an equitable allocation of its fees and credits. The proposal is based on the amount and type of business transacted on the Exchange and ATP Holders can opt to avail themselves of the incentives available through the ACE and Market Maker Prepayment Programs or not. The proposal is also designed to encourage ATP Holders and their affiliated or appointed parties to aggregate their executions at the Exchange as a primary execution venue. Moreover, to the extent that the proposed change continues to attract more Market Maker prepay activity to the Exchange, this increased order flow would continue to make the Exchange a more competitive venue for order execution. Thus, the Exchange believes the proposed rule change would improve market quality for all market participants on the Exchange and, as a consequence, continue to attract more order flow to the Exchange, thereby improving market-wide quality and price discovery.

The Proposed Rule Change Is Not Unfairly Discriminatory

The Exchange believes that the proposal is not unfairly discriminatory because the proposed modification would be available to all similarly-situated market participants on an equal and non-discriminatory basis.

The proposal is based on the amount and type of business transacted on the Exchange and ATP Holders are not obligated to try to qualify for the credits available to ACE or Market Maker Prepayment Program participants. Rather, the Exchange's proposed modification to the Credit is designed to continue to encourage greater use of the Market Maker Prepayment Program, which may lead to greater opportunities to trade—and for price improvement—for all participants, as well as continue to encourage participants to utilize the Exchange as a primary trading venue (if they have not done so previously) or increase Electronic volume sent to the Exchange. To the extent that the proposed change continues to attract more executions to the Exchange, this increased order flow would continue to make the Exchange a more competitive venue for order execution. Thus, the Exchange believes the proposed rule change would continue to improve

market quality for all market participants on the Exchange and, as a consequence, attract more order flow to the Exchange thereby improving market-wide quality and price discovery. The resulting volume and liquidity would continue to provide more trading opportunities and tighter spreads to all market participants and thus would promote just and equitable principles of trade, remove impediments to and perfect the mechanism of a free and open market and a national market system and, in general, to protect investors and the public interest.

Finally, the Exchange believes that it is subject to significant competitive forces, as described below in the Exchange's statement regarding the burden on competition.

*B. Self-Regulatory Organization's Statement on Burden on Competition*

In accordance with Section 6(b)(8) of the Act, the Exchange does not believe that the proposed rule change would impose any burden on competition that is not necessary or appropriate in furtherance of the purposes of the Act. Instead, as discussed above, the Exchange believes that the proposed changes would continue to encourage the submission of additional liquidity to a public exchange, thereby promoting market depth, price discovery and transparency and enhancing order execution opportunities for all market participants. As a result, the Exchange believes that the proposed changes further the Commission's goal in adopting Regulation NMS of fostering integrated competition among orders, which promotes "more efficient pricing of individual stocks for all types of orders, large and small." [13]

*Intramarket Competition.* The proposed change is designed to continue to attract order flow to the Exchange by offering competitive rates and credits via the ACE Program, based on increased volumes on the Exchange, which would enhance the quality of quoting and may increase the volumes of contracts traded on the Exchange. To the extent that this purpose is achieved, all of the Exchange's market participants should benefit from the continued market liquidity. Enhanced market quality and increased transaction volume that results from the increase in order flow directed to the Exchange will benefit all market participants and improve competition on the Exchange.

*Intermarket Competition.* The Exchange operates in a highly competitive market in which market

participants can readily favor one of the 16 competing option exchanges if they deem fee levels at a particular venue to be excessive. In such an environment, the Exchange must continually adjust its fees to remain competitive with other exchanges and to attract order flow to the Exchange. Based on publicly-available information, and excluding index-based options, no single exchange currently has more than 16% of the market share of executed volume of multiply-listed equity and ETF options trades.[14] Therefore, no exchange currently possesses significant pricing power in the execution of multiply-listed equity and ETF options order flow. More specifically, in November 2020, the Exchange had less than 10% market share of executed volume of multiply-listed equity and ETF options trades.[15]

The Exchange believes that the proposed rule change reflects this competitive environment because, even though the amount of the Credit is decreased, ATP Holders should still be incentivized to direct trading interest to the Exchange, to provide liquidity and to attract order flow. To the extent that this purpose is achieved, all the Exchange's market participants should benefit from the improved market quality and increased opportunities for price improvement.

The Exchange believes that the proposed change could promote competition between the Exchange and other execution venues, including another exchange that currently offers similar pricing incentives,[16] by encouraging additional orders to be sent to the Exchange for execution.

*C. Self-Regulatory Organization's Statement on Comments on the Proposed Rule Change Received From Members, Participants, or Others*

No written comments were solicited or received with respect to the proposed rule change.

## III. Date of Effectiveness of the Proposed Rule Change and Timing for Commission Action

The foregoing rule change is effective upon filing pursuant to Section 19(b)(3)(A) [17] of the Act and

---

[13] *See* Reg NMS Adopting Release, *supra* note 9, at 37499.

[14] *See supra* note 10.

[15] Based on a compilation of OCC data for monthly volume of equity-based options and monthly volume of ETF-based options, *supra* note 11, the Exchange's market share in multiply-listed equity and ETF options increased from 8.06% for the month of November 2019 to 9.09% for the month of November 2020.

[16] *See, e.g.,* supra note 6 (regarding Cboe's VIP Program).

[17] 15 U.S.C. 78s(b)(3)(A).

subparagraph (f)(2) of Rule 19b–4 [18] thereunder, because it establishes a due, fee, or other charge imposed by the Exchange.

At any time within 60 days of the filing of such proposed rule change, the Commission summarily may temporarily suspend such rule change if it appears to the Commission that such action is necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of the Act. If the Commission takes such action, the Commission shall institute proceedings under Section 19(b)(2)(B) [19] of the Act to determine whether the proposed rule change should be approved or disapproved.

### IV. Solicitation of Comments

Interested persons are invited to submit written data, views, and arguments concerning the foregoing, including whether the proposed rule change is consistent with the Act. Comments may be submitted by any of the following methods:

*Electronic Comments*

• Use the Commission's internet comment form (*http://www.sec.gov/ rules/sro.shtml*); or

• Send an email to *rule-comments@ sec.gov.* Please include File Number SR–NYSEAMER–2021–03 on the subject line.

*Paper Comments*

• Send paper comments in triplicate to Secretary, Securities and Exchange Commission, 100 F Street NE, Washington, DC 20549–1090. All submissions should refer to File Number SR–NYSEAMER–2021–03. This file number should be included on the subject line if email is used. To help the Commission process and review your comments more efficiently, please use only one method. The Commission will post all comments on the Commission's internet website (*http://www.sec.gov/ rules/sro.shtml*). Copies of the submission, all subsequent amendments, all written statements with respect to the proposed rule change that are filed with the Commission, and all written communications relating to the proposed rule change between the Commission and any person, other than those that may be withheld from the public in accordance with the provisions of 5 U.S.C. 552, will be available for website viewing and printing in the Commission's Public

Reference Room, 100 F Street NE, Washington, DC 20549 on official business days between the hours of 10:00 a.m. and 3:00 p.m. Copies of the filing also will be available for inspection and copying at the principal office of the Exchange. All comments received will be posted without change. Persons submitting comments are cautioned that we do not redact or edit personal identifying information from comment submissions. You should submit only information that you wish to make available publicly. All submissions should refer to File Number SR–NYSEAMER–2021–03, and should be submitted on or before February 17, 2021.

For the Commission, by the Division of Trading and Markets, pursuant to delegated authority.[20]

**J. Matthew DeLesDernier,**
*Assistant Secretary.*
[FR Doc. 2021–01727 Filed 1–26–21; 8:45 am]
**BILLING CODE 8011–01–P**

---

## SECURITIES AND EXCHANGE COMMISSION

**[Release No. 34–90964; File No. SR–CboeEDGA–2021–004]**

### Self-Regulatory Organizations; Cboe EDGA Exchange, Inc.; Notice of Filing and Immediate Effectiveness of Proposed Rule Change To Establish a Monthly Fee Assessed on Members' MPIDs

January 21, 2021.

Pursuant to Section 19(b)(1) of the Securities Exchange Act of 1934 (the "Act") [1] and Rule 19b–4 thereunder,[2] notice is hereby given that, on January 13, 2021, Cboe EDGA Exchange, Inc. (the "Exchange") filed with the Securities and Exchange Commission (the "Commission") the proposed rule change as described in Items I and II below, which Items have been prepared by the Exchange. The Commission is publishing this notice to solicit comments on the proposed rule change from interested persons.

### I. Self-Regulatory Organization's Statement of the Terms of Substance of the Proposed Rule Change

Cboe EDGA Exchange, Inc. (the "Exchange" or "EDGA Equities") proposes to amend its fee schedule to establish a fee in connection with a Member's Market Participant Identifier(s) ("MPID"). The text of the

proposed rule change is provided in Exhibit 5.

The text of the proposed rule change is also available on the Exchange's website (*http://markets.cboe.com/us/ equities/regulation/rule_filings/edga/*), at the Exchange's Office of the Secretary, and at the Commission's Public Reference Room.

### II. Self-Regulatory Organization's Statement of the Purpose of, and Statutory Basis for, the Proposed Rule Change

In its filing with the Commission, the Exchange included statements concerning the purpose of and basis for the proposed rule change and discussed any comments it received on the proposed rule change. The text of these statements may be examined at the places specified in Item IV below. The Exchange has prepared summaries, set forth in sections A, B, and C below, of the most significant aspects of such statements.

*A. Self-Regulatory Organization's Statement of the Purpose of, and Statutory Basis for, the Proposed Rule Change*

1. Purpose

The Exchange proposes to amend its Fee Schedule to adopt a monthly fee assessed on Members' MPIDs.[3]

The Exchange first notes that it operates in a highly competitive market in which market participants can readily direct order flow to competing venues if they deem fee levels at a particular venue to be excessive or incentives to be insufficient. More specifically, the Exchange is only one of 16 registered equities exchanges, as well as a number of alternative trading systems and other off-exchange venues that do not have similar self-regulatory responsibilities under the Exchange Act, to which market participants may direct their order flow. Based on publicly available information,[4] no single registered equities exchange has more than 16% of consolidated equity market share and currently the Exchange represents approximately 1.0% of the U.S. equities market. Thus, in such a low-concentrated and highly competitive market, no single equities exchange possesses significant pricing power in the execution of order flow. The Exchange further notes that broker-

---

[18] 17 CFR 240.19b–4(f)(2).
[19] 15 U.S.C. 78s(b)(2)(B).

[20] 17 CFR 200.30–3(a)(12).
[1] 15 U.S.C. 78s(b)(1).
[2] 17 CFR 240.19b–4.

[3] The Exchange initially filed the proposed fee changes January 4, 2021 (SR–CboeEDGA–2021–002). On January 13, 2021, the Exchange withdrew that filing and submitted this proposal.
[4] *See* Cboe Global Markets, U.S. Equities Market Volume Summary, Month-to-Date (January 13, 2021), available at *https://markets.cboe.com/us/ equities/market_statistics/*.

dealers are not compelled to be Members of the Exchange, and a significant proportion of broker-dealers that trade U.S. equity securities have, in fact, chosen not to apply for membership on the Exchange.

By way of background, an MPID is a four-character unique identifier that is approved by the Exchange and assigned to a Member for use on the Exchange to identify the Member firm on the orders sent to the Exchange and resulting executions. Members may choose to request more than one MPID as a unique identifier(s) for their transactions on the Exchange. The Exchange notes that a Member may have multiple MPIDs for use by separate business units and trading desks or to support Sponsored Participant[5] access. Certain members currently leverage multiple MPIDs to obtain benefits from and added value in their participation on the Exchange. Multiple MPIDs provide unique benefits to and efficiencies for Members by allowing: (1) Members to manage their trading activity more efficiently by assigning different MPIDs to different trading desks and/or strategies within the firm; and (2) Sponsoring Members[6] to segregate Sponsored Participants by MPID to allow for detailed client-level reporting, billing, and administration, and to market the ability to use separate MPIDs to Sponsored Participants, which, in turn, may serve as a potential incentive for increased order flow traded through the Sponsoring Member.

The Exchange proposes to adopt a fee applicable to Members that use multiple MPIDs to facilitate their trading on the Exchange. Specifically, as proposed, the Exchange would assess a monthly MPID Fee of $150 per MPID per Member, with a Member's first MPID provided free of charge. The Exchange believes the proposed assessment of an MPID Fee aligns with the additional value and benefits provided to Members that choose to utilize more than one MPID to facilitate their trading on the Exchange. The Exchange also believes that assessing a fee on additional MPIDs will

be beneficial because such fee will promote efficiency in MPID use.

The MPID Fee will be assessed on a pro-rated basis for new MPIDs by charging a Member based on the trading day in the month during which an additional MPID becomes effective for use. If a Member cancels an additional MPID on or after the first business day of the month, the Member will be required to pay the entire MPID Fee for that month. The Exchange believes that this practice is appropriate to balance the administrative costs associated with disabling MPIDs.

## 2. Statutory Basis

The Exchange believes the proposed rule change is consistent with the Securities Exchange Act of 1934 (the "Act") and the rules and regulations thereunder applicable to the Exchange and, in particular, the requirements of Section 6(b) of the Act.[7] Specifically, the Exchange believes the proposed rule change is consistent with Section 6(b)(4) of the Act,[8] which requires that Exchange rules provide for the equitable allocation of reasonable dues, fees, and other charges among its Members and other persons using its facilities. The Exchange also believes that the proposed rule change is consistent with the objectives of Section 6(b)(5) requirements that the rules of an exchange be designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, to foster cooperation and coordination with persons engaged in regulating, clearing, settling, processing information with respect to, and facilitating transactions in securities, to remove impediments to and perfect the mechanism of a free and open market and a national market system, and, in general, to protect investors and the public interest, and, particularly, is not designed to permit unfair discrimination between customers, issuers, brokers, or dealers.

The Exchange believes that the proposed MPID Fee is consistent with the Act in that it is reasonable, equitable, and not unfairly discriminatory. In particular, the Exchange believes that the proposed fee is reasonable because it is reasonably aligned with the benefits provided to Members that choose to utilize multiple MPIDs to facilitate their trading on the Exchange. While each Member must have an MPID to participate on the Exchange, additional MPIDs are optional and will be assessed the proposed fee. Additional MPIDs

currently allow for Members to realize certain benefits from and added value to their participation on the Exchange but also require the Exchange to allocate additional administrative resources to manage each MPID that a Member chooses to use for its trading activity. Therefore, the Exchange believes that it is reasonable to assess a modest fee on any additional MPIDs that Members choose to use to facilitate their trading. The Exchange again notes that it is optional for a Member to request and employ additional MPIDs, and a large portion (approximately 36%) of the Exchange's Members currently utilize just the one MPID necessary to participate on the Exchange.

The Exchange also believes that assessing a modest fee on additional MPIDs is reasonably designed to promote efficiency in MPID use. The Exchange had previously implemented an MPID Fee,[9] and observed that, as a result of an MPID Fee, Members were incentivized to more effectively administer their MPIDs and reduce the number of under-used or superfluous MPIDs, or MPIDs that did not contribute additional value to a Member's participation on the Exchange. Reduction of such MPIDs, in turn, reduces Exchange resources allocated to administration and maintenance of those MPIDs. In particular, the Exchange observed that within the first few months of introducing the previous MPID Fee, the number of MPIDs on the Exchange decreased by approximately 17%, demonstrating that Members may choose to be more efficient in their use of MPIDs in response to an MPID Fee, such as that proposed in this fee change.[10]

The Exchange further believes the proposed MPID Fee is reasonable because the amount assessed is less than the analogous fees charged by at least one other market; namely, Nasdaq Stock Market LLC ("Nasdaq").[11] The Exchange's proposed MPID Fee at $150 a month per MPID, with no charge associated with a Members' first MPID, is lower than Nasdaq's MPID fee of $550 per MPID, which is charged for all MPIDs used by a Nasdaq member,

---

[5] A Sponsored Participant is a person which has entered into a sponsorship arrangement with a Sponsoring Member pursuant to Rule 11.3, which permits a Sponsored Participant to obtain authorized access to the System only if such access is authorized in advance by one or more Sponsoring Members. *See* Rules 1.5(z) and 11.3.

[6] A Sponsoring Member is a Member that is a registered broker-dealer and that has been designated by a Sponsored Participant to execute, clear and settle transactions resulting from the System. The Sponsoring Member shall be either (i) a clearing firm with membership in a clearing agency registered with the Commission that maintains facilities through which transactions may be cleared or (ii) a correspondent firm with a clearing arrangement with any such clearing firm. *See* Rule 1.5(aa)

[7] 15 U.S.C. 78f(b).

[8] 15 U.S.C. 78f(b)(4).

[9] *See* Securities and Exchange Release No. 65188 (August 24, 2011), 76 FR 53988 (August 30, 2011) (SR–EDGA–2011–27). The Exchange notes that its prior MPID Fees expired as a result of its integration with BATS technology, acquired by Cboe Global Markets, Inc. in 2017.

[10] The reduction in MPIDs may also demonstrate that Members are free to cancel MPIDs on the Exchange and choose, instead, to utilize unique identifiers associated with participation on other exchanges.

[11] *See* Nasdaq Price List, MPID Fees, available at *http://nasdaqtrader.com/Trader.aspx?id=PriceList Trading2.*

including a member's first MPIDs. Additionally, the Exchange believes that charging a full-month's fee for an additional MPID cancelled on or after the first business day of the month is reasonable in that it reasonably accounts for the administrative costs associated with disabling such MPIDs, and is a practice consistent with Nasdaq's similar cancellation policy in connection with its MPID fees.[12]

The Exchange believes that the proposed MPID Fee is equitable and not unfairly discriminatory because it will apply equally to all Members that choose to employ two or more MPIDs based on the number of additional MPIDs that they use to facilitate their trading on the Exchange. As stated, additional MPIDs beyond a Member's first MPID are optional, and Members may choose to trade using such additional MPIDs to achieve additional benefits and added value to support their individual business needs. Moreover, the Exchange believes the proposed fee is equitable and not unfairly discriminatory because it is proportional to the potential value or benefit received by Members with a greater number of MPIDs. That is, those Members that choose to employ a greater number of additional MPIDs have the opportunity to more effectively manage firm-wide trading activity and client-level administration, as well as potentially appeal to customers through the use of separate MPIDs, which may result in increased order flow through a Sponsoring Member. A Member may request at any time that the Exchange terminate an MPID, including MPIDs that may be under-used or superfluous, or that do not contribute additional value to a Member's participation on the Exchange.

### B. Self-Regulatory Organization's Statement on Burden on Competition

The Exchange does not believe that the proposed rule change will impose any burden on intramarket competition that is not necessary or appropriate in furtherance of the purposes of the Act because the proposed MPID Fee will apply equally to all Members that choose to employ additional MPIDs and equally to each additional MPID. As stated, additional MPIDs are optional and Members may choose to utilize additional MPIDs, or not, based on their view of the additional benefits and added value provided by utilizing the single MPID necessary to participate on the Exchange. The Exchange believes the proposed fee will be assessed proportionately to the potential value or

benefit received by Members with a greater number of MPIDs and notes that a Member may request at any time that the Exchange terminate any MPID, including those that may be under-used or superfluous, or that do not contribute additional value to a Member's participation on the Exchange.

Next, the Exchange believes the proposed rule change does not impose any burden on intermarket competition that is not necessary or appropriate in furtherance of the purposes of the Act. As previously discussed, the Exchange operates in a highly competitive market, including competition for exchange memberships. Members have numerous alternative venues that they may participate on, including 15 other equities exchanges, as well as off-exchange venues, including over 50 alternative trading systems.[13] The Exchange represents a small percentage of the overall market. Based on publicly available information, no single equities exchange has more than 16% market share.[14] Indeed, participants can readily choose to submit their order flow to other exchange and off-exchange venues if they deem fee levels at those other venues to be more favorable.[15] In addition to this the Exchange notes that at least one other exchange currently has MPID fees in place,[16] which have been previously filed with the Commission. Moreover, the Commission has repeatedly expressed its preference for competition over regulatory intervention in determining prices, products, and services in the securities markets. Specifically, in Regulation NMS, the Commission highlighted the importance of market forces in determining prices and SRO revenues and, also, recognized that current regulation of the market system "has been remarkably successful in promoting market competition in its broader forms that are most important to investors and listed companies." The fact that this market is competitive has also long been recognized by the courts. In *NetCoalition* v. *Securities and Exchange Commission*, the D.C. Circuit stated as follows: "[n]o one disputes that competition for order flow is 'fierce.' . . . As the SEC explained, '[i]n the U.S. national market system, buyers and sellers of securities, and the broker-dealers that act as their order-routing agents, have a wide range of choices of where to route orders for execution';

[and] 'no exchange can afford to take its market share percentages for granted' because 'no exchange possesses a monopoly, regulatory or otherwise, in the execution of order flow from broker dealers.' . . ." Accordingly, the Exchange does not believe its proposed fee change imposes any burden on competition that is not necessary or appropriate in furtherance of the purposes of the Act.

### C. Self-Regulatory Organization's Statement on Comments on the Proposed Rule Change Received From Members, Participants, or Others

The Exchange neither solicited nor received comments on the proposed rule change.

## III. Date of Effectiveness of the Proposed Rule Change and Timing for Commission Action

The foregoing rule change is effective upon filing pursuant to Section 19(b)(3)(A) of the Act [17] and subparagraph (f)(2) of Rule 19b–4 thereunder,[18] because it establishes a due, fee, or other charge imposed by the Exchange.

At any time within 60 days of the filing of such proposed rule change, the Commission summarily may temporarily suspend such rule change if it appears to the Commission that such action is necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of the Act. If the Commission takes such action, the Commission shall institute proceedings under Section 19(b)(2)(B) of the Act [19] to determine whether the proposed rule change should be approved or disapproved.

## IV. Solicitation of Comments

Interested persons are invited to submit written data, views, and arguments concerning the foregoing, including whether the proposed rule change is consistent with the Act. Comments may be submitted by any of the following methods:

### Electronic Comments

• Use the Commission's internet comment form (*http://www.sec.gov/rules/sro.shtml*); or

• Send an email to *rule-comments@sec.gov*. Please include File No. SR–CboeEDGA–2021–004 on the subject line.

---

[12] *See id.*

[13] *See* U.S. Securities and Exchange Commission Alternative Trading Systems ("ATS") List (December 4, 2020), available at *https://www.sec.gov/foia/docs/atslist.htm.*

[14] *See supra* note 4.

[15] *See e.g., supra* note 10.

[16] *See supra* note 11.

[17] 15 U.S.C. 78s(b)(3)(A).

[18] 17 CFR 240.19b–4(f)(2).

[19] 15 U.S.C. 78s(b)(2)(B).

**Federal Register** / Vol. 86, No. 16 / Wednesday, January 27, 2021 / Notices

*Paper Comments*

• Send paper comments in triplicate to Secretary, Securities and Exchange Commission, 100 F Street NE, Washington, DC 20549–1090.

All submissions should refer to File No. SR–CboeEDGA–2021–004. This file number should be included on the subject line if email is used. To help the Commission process and review your comments more efficiently, please use only one method. The Commission will post all comments on the Commission's internet website (*http://www.sec.gov/ rules/sro.shtml*). Copies of the submission, all subsequent amendments, all written statements with respect to the proposed rule change that are filed with the Commission, and all written communications relating to the proposed rule change between the Commission and any person, other than those that may be withheld from the public in accordance with the provisions of 5 U.S.C. 552, will be available for website viewing and printing in the Commission's Public Reference Room, 100 F Street NE, Washington, DC 20549, on official business days between the hours of 10:00 a.m. and 3:00 p.m. Copies of the filing also will be available for inspection and copying at the principal office of the Exchange. All comments received will be posted without change. Persons submitting comments are cautioned that we do not redact or edit personal identifying information from comment submissions. You should submit only information that you wish to make available publicly. All submissions should refer to File No. SR–CboeEDGA–2021–004, and should be submitted on or before February 17, 2021.

For the Commission, by the Division of Trading and Markets, pursuant to delegated authority.[20]

**J. Matthew DeLesDernier,**

*Assistant Secretary.*

[FR Doc. 2021–01731 Filed 1–26–21; 8:45 am]

**BILLING CODE 8011–01–P**

## SECURITIES AND EXCHANGE COMMISSION

**[Release No. 34–90957; File No. SR–CboeBZX–2021–012]**

**Self-Regulatory Organizations; Cboe BZX Exchange, Inc.; Notice of Filing and Immediate Effectiveness of Proposed Rule Change To Expand the Annual Listing Fee Cap for Outcome Strategy ETPs To Include Series Having Returns Based on Two or More Reference Indexes**

January 21, 2021.

Pursuant to Section 19(b)(1) of the Securities Exchange Act of 1934 (the "Act")[1] and Rule 19b–4 thereunder,[2] notice is hereby given that on January 13, 2021, Cboe BZX Exchange, Inc. (the "Exchange" or "BZX") filed with the Securities and Exchange Commission (the "Commission") the proposed rule change as described in Items I, II, and III below, which Items have been prepared by the Exchange. The Commission is publishing this notice to solicit comments on the proposed rule change from interested persons.

## I. Self-Regulatory Organization's Statement of the Terms of the Substance of the Proposed Rule Change

Cboe BZX Exchange, Inc. (the "Exchange" or "BZX") is filing with the Securities and Exchange Commission ("Commission") a proposed rule change to amend the fees applicable to securities listed on the Exchange, which are set forth in BZX Rule 14.13.

The text of the proposed rule change is also available on the Exchange's website (*http://markets.cboe.com/us/ equities/regulation/rule_filings/bzx/*), at the Exchange's Office of the Secretary, and at the Commission's Public Reference Room.

## II. Self-Regulatory Organization's Statement of the Purpose of, and Statutory Basis for, the Proposed Rule Change

In its filing with the Commission, the Exchange included statements concerning the purpose of and basis for the proposed rule change and discussed any comments it received on the proposed rule change. The text of these statements may be examined at the places specified in Item IV below. The Exchange has prepared summaries, set forth in sections A, B, and C below, of the most significant aspects of such statements.

*A. Self-Regulatory Organization's Statement of the Purpose of, and Statutory Basis for, the Proposed Rule Change*

1. Purpose

The Exchange is proposing to amend Rule 14.13(b)(2)(C) related to the listing of exchange-traded products ("ETPs")[3] on the Exchange. Specifically, the Exchange is proposing to modify the fee definition of Outcome Strategy ETPs provided under Rule 14.13(b)(2)(C)(iii) (the "Rule") to include ETPs that provide returns based on the performance of more than one underlying instruments.

By way of background, Outcome Strategy ETPs are ETPs that are designed to provide a particular set of returns over a specified outcome period based on the performance of an underlying instrument during the ETP's outcome period. As an example, an Outcome Strategy ETP would include an ETP that employs the following strategy (the "Buffer Strategy"): The ETP seeks to provide investment returns that match the gains of a particular index (the "Reference Index") up to a maximized annual return (the "Cap Level") while guarding against certain declines in that same underlying index (the "Buffer Level") over a particular period of time (the "Outcome Period"). If over the course of the Outcome Period, the Reference Index increases in value, the ETP would appreciate by approximately the same amount, up to the Cap Level. If over the course of the Outcome Period, the Reference Index decreases in value by an amount equal to or less than the Buffer Level, then the ETP would provide an approximate total return of zero. If over the course of the Outcome Period, the Reference Index decreases in value by an amount greater than the Buffer Level, then the ETP would decrease in value by approximately the same percentage as the Reference Index, minus the Buffer Level. Such outcomes would only apply for the specified Outcome Period and the ETP would reset at the end of that Outcome Period in order to employ the same Buffer Strategy for the following Outcome Period.[4]

As such, the Outcome Period applicable to each ETP is particularly important and investors need to have

---

[20] 17 CFR 200.30–3(a)(12).

[1] 15 U.S.C. 78s(b)(1).

[2] 17 CFR 240.19b–4.

[3] As defined in Rule 11.8(e)(1)(A), the term "ETP" means any security listed pursuant to Exchange Rule 14.11.

[4] The Exchange notes that the Cap Levels, Buffer Levels, and the duration of each Outcome Period will vary across Outcome Strategy Series, but that the concepts of providing exposure to a particular reference instrument with an upside cap and limited downside over a particular period of time generally define Outcome Strategy ETPs.

more granular Outcome Periods in order to ensure that they are able to achieve the full Cap Level upside and Buffer Level downside protection. Issuers of Outcome Strategy ETPs generally issue the products in at least quarterly versions of each strategy. The issuer may also elect to list ETPs employing the Buffer Strategy in order to provide monthly Outcome Periods, meaning that there would be twelve separate ETPs listed on the Exchange that each employ the same Buffer Strategy, but have different Outcome Periods. Again, this provides investors with more precision when deciding which Outcome Strategy ETP to purchase among the series of Outcome Strategy ETPs (the ''Outcome Strategy Series'').

With this in mind, the Exchange adopted the Rule which capped the maximum listing fee per year for an Outcome Strategy Series at $16,000. Specifically, the Rule provides that where an issuer lists multiple ETPs that are each designed to provide (i) a pre-defined set of returns; (ii) over a specified outcome period; (iii) based on the performance of the same underlying instrument; and (iv) each employ the same outcome strategy for achieving the predefined set of returns, the maximum annual listing fee applicable to such Outcome Strategy Series will be $16,000 per year.

Now, the Exchange proposes to expand criteria (iii) of the Rule to include ETPs that are based on the performance of two or more underlying instruments. Such an amendment would expand the annual listing fee cap to include an Outcome Strategy Series that may, for example, include Outcome Strategy ETPs with returns based on the performance of two or more Reference Indexes. The Exchange intends to implement the proposed amendments to its fee schedule on January 4, 2021.

2. Statutory Basis

The Exchange believes the proposed rule change is consistent with the Act and the rules and regulations thereunder applicable to the Exchange and, in particular, the requirements of Section 6(b) of the Act.[5] Specifically, the Exchange believes the proposed rule change is consistent with the Section 6(b)(5)[6] in that it provides for the equitable allocation of reasonable dues, fees and other charges among issuers and it does not unfairly discriminate between customers, issuers, brokers or dealers.

The Exchange believes that the proposed amendment to the Rule is

reasonable, fair and equitable, and not an unfairly discriminatory allocation of fees and other charges because it would apply equally for all issuers and all Outcome Strategy Series. The Rule was designed to implement a cap on the listing fees for multiple ETPs of Outcome Strategy ETPs with, among other things, returns based on the same underlying instrument. However, the Rule does not contemplate such a cap for a series of Outcome Strategy ETPs with returns based on the performance of multiple instruments. As such, the proposed amendment would allow a greater number of Outcome Strategy Series to benefit from the fee cap of $16,000.

The Exchange notes that the proposal would only expand the cap on fees for ETPs meeting the amended definition of Outcome Strategy ETPs and would only act to leave static or reduce fees for ETPs listed on the Exchange. Further, as proposed, the Rule would decrease the fees associated with Outcome Strategy ETPs that are based on the performance of the same underlying instruments, which may reduce the barriers to entry into the space and incentivize enhanced competition among issuers of Outcome Strategy ETPs, to the benefit of investors. The Exchange notes that an issuer would only receive the benefit of the annual fee cap if they accrue greater than $16,000 in listing fees for a particular Outcome Strategy Series.

The Exchange believes that the proposed cap on fees for Outcome Strategy Series and the associated changes is a reasonable means to incentivize issuers to list (or transfer) Outcome Strategy ETPs on the Exchange. The marketplace for listings is extremely competitive and there are several other national securities exchanges that offer ETP listings. Transfers between listing venues occur frequently for numerous reasons, including listing fees. The proposed rule changes reflect a competitive pricing structure designed to incentivize issuers to list new products and transfer existing products to the Exchange, which the Exchange believes will enhance competition both among ETP issuers and listing venues, to the benefit of investors.

Based on the foregoing, the Exchange believes that the proposed rule changes are consistent with the Act.

*B. Self-Regulatory Organization's Statement on Burden on Competition*

The Exchange does not believe that the proposed rule change will impose any burden on competition not necessary or appropriate in furtherance of the purposes of the Act. The

Exchange does not believe that the proposed change burdens competition, but instead, enhances competition, as it is intended to apply the $16,000 fee cap to Outcome Strategy ETPs that are based on the performance of two or more instruments, which may lead to reduced fees for issuers of such products. The marketplace for listings is extremely competitive and there are several other national securities exchanges that offer ETP listings. Transfers between listing venues occur frequently for numerous reasons, including listing fees. This proposal is intended to help the Exchange compete as an ETP listing venue. Accordingly, the Exchange does not believe that the proposed change will impair the ability of issuers or competing ETP listing venues to maintain their competitive standing. The Exchange also notes that the proposed change represents a competitive pricing structure designed to incentivize issuers to list new products and transfer existing products to the Exchange, which the Exchange believes will enhance competition both among ETP issuers and listing venues, to the benefit of investors. The Exchange believes that such proposed changes will directly enhance competition among ETP listing venues by reducing the costs associated with listing on the Exchange for ETPs meeting the proposed definition of Outcome Strategy ETPs. As such, the proposal is a competitive proposal designed to enhance pricing competition among listing venues and implement pricing for listings that better reflects the revenue and expenses associated with listing ETPs on the Exchange. The Exchange does not believe the proposed amendments would burden intramarket competition as they would be available to all issuers uniformly.

*C. Self-Regulatory Organization's Statement on Comments on the Proposed Rule Change Received From Members, Participants, or Others*

The Exchange neither solicited nor received comments on the proposed rule change.

**III. Date of Effectiveness of the Proposed Rule Change and Timing for Commission Action**

The foregoing rule change has become effective pursuant to Section 19(b)(3)(A) of the Act[7] and paragraph (f) of Rule 19b–4[8] thereunder. At any time within 60 days of the filing of the proposed rule change, the Commission summarily may temporarily suspend such rule change if

[5] 15 U.S.C. 78f(b).
[6] 15 U.S.C. 78f(b)(5).
[7] 15 U.S.C. 78s(b)(3)(A).
[8] 17 CFR 240.19b–4(f).

it appears to the Commission that such action is necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of the Act. If the Commission takes such action, the Commission will institute proceedings to determine whether the proposed rule change should be approved or disapproved.

## IV. Solicitation of Comments

Interested persons are invited to submit written data, views, and arguments concerning the foregoing, including whether the proposed rule change is consistent with the Act. Comments may be submitted by any of the following methods:

*Electronic Comments*

• Use the Commission's internet comment form (*http://www.sec.gov/rules/sro.shtml*); or

• Send an email to *rule-comments@sec.gov.* Please include File Number SR–CboeBZX–2021–012 on the subject line.

*Paper Comments*

• Send paper comments in triplicate to Secretary, Securities and Exchange Commission, 100 F Street NE, Washington, DC 20549–1090.

All submissions should refer to File Number SR–CboeBZX–2021–012. This file number should be included on the subject line if email is used. To help the Commission process and review your comments more efficiently, please use only one method. The Commission will post all comments on the Commission's internet website (*http://www.sec.gov/rules/sro.shtml*). Copies of the submission, all subsequent amendments, all written statements with respect to the proposed rule change that are filed with the Commission, and all written communications relating to the proposed rule change between the Commission and any person, other than those that may be withheld from the public in accordance with the provisions of 5 U.S.C. 552, will be available for website viewing and printing in the Commission's Public Reference Room, 100 F Street NE, Washington, DC 20549 on official business days between the hours of 10:00 a.m. and 3:00 p.m. Copies of such filing also will be available for inspection and copying at the principal office of the Exchange. All comments received will be posted without change. Persons submitting comments are cautioned that we do not redact or edit personal identifying information from comment submissions. You should submit only information that you wish

to make available publicly. All submissions should refer to File Number SR–CboeBZX–2021–012, and should be submitted on or before February 17, 2021.

For the Commission, by the Division of Trading and Markets, pursuant to delegated authority.[9]

**J. Matthew DeLesDernier,**

*Assistant Secretary.*

[FR Doc. 2021–01728 Filed 1–26–21; 8:45 am]

**BILLING CODE 8011–01–P**

---

## SMALL BUSINESS ADMINISTRATION

**[Disaster Declaration #16826 and #16827; OKLAHOMA Disaster Number OK–00144]**

## Presidential Declaration Amendment of a Major Disaster for Public Assistance Only for the State of Oklahoma

**AGENCY:** U.S. Small Business Administration.

**ACTION:** Amendment 1.

**SUMMARY:** This is an amendment of the Presidential declaration of a major disaster for Public Assistance Only for the State of Oklahoma (FEMA–4575–DR), dated 12/21/2020.

*Incident:* Severe Winter Storm.

*Incident Period:* 10/26/2020 through 10/29/2020.

**DATES:** Issued on 01/13/2021.

*Physical Loan Application Deadline Date:* 02/19/2021.

*Economic Injury (EIDL) Loan Application Deadline Date:* 09/21/2021.

**ADDRESSES:** Submit completed loan applications to: U.S. Small Business Administration, Processing and Disbursement Center, 14925 Kingsport Road, Fort Worth, TX 76155.

**FOR FURTHER INFORMATION CONTACT:** A. Escobar, Office of Disaster Assistance, U.S. Small Business Administration, 409 3rd Street SW, Suite 6050, Washington, DC 20416, (202) 205–6734.

**SUPPLEMENTARY INFORMATION:** The notice of the President's major disaster declaration for Private Non-Profit organizations in the State of Oklahoma, dated 12/21/2020, is hereby amended to include the following areas as adversely affected by the disaster.

*Primary Counties:* Alfalfa, Blaine, Comanche, Custer, Ellis, Garfield, Grant, Jackson, Kay, Lincoln, Major, McClain, Pawnee, Stephens, Tillman, Washita

All other information in the original declaration remains unchanged.

[9] 17 CFR 200.30–3(a)(12).

(Catalog of Federal Domestic Assistance Number 59008)

**Cynthia Pitts,**

*Acting Associate Administrator for Disaster Assistance.*

[FR Doc. 2021–01724 Filed 1–26–21; 8:45 am]

**BILLING CODE 8026–03–P**

---

## SMALL BUSINESS ADMINISTRATION

**[Disaster Declaration #16848 and #16849; CONNECTICUT Disaster Number CT–00052]**

## Presidential Declaration of a Major Disaster for Public Assistance Only for the State of Connecticut

**AGENCY:** U.S. Small Business Administration.

**ACTION:** Notice.

**SUMMARY:** This is a Notice of the Presidential declaration of a major disaster for Public Assistance Only for the State of Connecticut (FEMA–4580–DR), dated 01/12/2021.

*Incident:* Tropical Storm Isaias.

*Incident Period:* 08/04/2020.

**DATES:** Issued on 01/12/2021.

*Physical Loan Application Deadline Date:* 03/15/2021.

*Economic Injury (EIDL) Loan Application Deadline Date:* 10/12/2021.

**ADDRESSES:** Submit completed loan applications to: U.S. Small Business Administration, Processing and Disbursement Center, 14925 Kingsport Road, Fort Worth, TX 76155.

**FOR FURTHER INFORMATION CONTACT:** A. Escobar, Office of Disaster Assistance, U.S. Small Business Administration, 409 3rd Street SW, Suite 6050, Washington, DC 20416, (202) 205–6734.

**SUPPLEMENTARY INFORMATION:** Notice is hereby given that as a result of the President's major disaster declaration on 01/12/2021, Private Non-Profit organizations that provide essential services of a governmental nature may file disaster loan applications at the address listed above or other locally announced locations.

The following areas have been determined to be adversely affected by the disaster:

*Primary Counties and Areas:* Fairfield, Hartford, Litchfield, Middlesex, New Haven, New London, Tolland, Windham and the Mashantucket Pequot Indian Tribe and Mohegan Tribe of Indians

The Interest Rates are:

| | Percent |
|---|---|
| *For Physical Damage:* | |
| Non-Profit Organizations with Credit Available Elsewhere ... | 2.750 |

| | Percent |
|---|---|
| Non-Profit Organizations without Credit Available Elsewhere ...................................... | 2.750 |
| *For Economic Injury:* | |
| Non-Profit Organizations without Credit Available Elsewhere ...................................... | 2.750 |

The number assigned to this disaster for physical damage is 168488 and for economic injury is 168490.

(Catalog of Federal Domestic Assistance Number 59008)

**Cynthia Pitts,**

*Acting Associate Administrator for Disaster Assistance.*

[FR Doc. 2021–01725 Filed 1–26–21; 8:45 am]

**BILLING CODE 8026–03–P**

---

## SMALL BUSINESS ADMINISTRATION

**[Disaster Declaration #16813 and #16814; NEW JERSEY Disaster Number NJ–00059]**

### Presidential Declaration Amendment of a Major Disaster for Public Assistance Only for the State of New Jersey

**AGENCY:** U.S. Small Business Administration.

**ACTION:** Amendment 1.

**SUMMARY:** This is an amendment of the Presidential declaration of a major disaster for Public Assistance Only for the State of New Jersey (FEMA–4574–DR), dated 12/11/2020.

*Incident:* Tropical Storm Isaias.
*Incident Period:* 08/04/2020.

**DATES:** Issued on 01/13/2021.

*Physical Loan Application Deadline Date:* 02/09/2021.

*Economic Injury (EIDL) Loan Application Deadline Date:* 09/13/2021.

**ADDRESSES:** Submit completed loan applications to: U.S. Small Business Administration, Processing and Disbursement Center, 14925 Kingsport Road, Fort Worth, TX 76155.

**FOR FURTHER INFORMATION CONTACT:** A. Escobar, Office of Disaster Assistance, U.S. Small Business Administration, 409 3rd Street SW, Suite 6050, Washington, DC 20416, (202) 205–6734.

**SUPPLEMENTARY INFORMATION:** The notice of the President's major disaster declaration for Private Non-Profit organizations in the State of New Jersey, dated 12/11/2020, is hereby amended to include the following areas as adversely affected by the disaster.

*Primary Counties:* Sussex

All other information in the original declaration remains unchanged.

---

(Catalog of Federal Domestic Assistance Number 59008)

**Cynthia Pitts,**

*Acting Associate Administrator for Disaster Assistance.*

[FR Doc. 2021–01722 Filed 1–26–21; 8:45 am]

**BILLING CODE 8026–03–P**

---

## SMALL BUSINESS ADMINISTRATION

**[Disaster Declaration #16811 and #16812; ALABAMA Disaster Number AL–00116]**

### Presidential Declaration Amendment of a Major Disaster for Public Assistance Only for the State of Alabama

**AGENCY:** U.S. Small Business Administration.

**ACTION:** Amendment 1.

**SUMMARY:** This is an amendment of the Presidential declaration of a major disaster for Public Assistance Only for the State of Alabama (FEMA–4573–DR), dated 12/10/2020.

*Incident:* Hurricane Zeta.

*Incident Period:* 10/28/2020 through 10/29/2020.

**DATES:** Issued on 01/13/2021.

*Physical Loan Application Deadline Date:* 02/08/2021.

*Economic Injury (EIDL) Loan Application Deadline Date:* 09/10/2021.

**ADDRESSES:** Submit completed loan applications to: U.S. Small Business Administration, Processing and Disbursement Center, 14925 Kingsport Road, Fort Worth, TX 76155.

**FOR FURTHER INFORMATION CONTACT:** A. Escobar, Office of Disaster Assistance, U.S. Small Business Administration, 409 3rd Street SW, Suite 6050, Washington, DC 20416, (202) 205–6734.

**SUPPLEMENTARY INFORMATION:** The notice of the President's major disaster declaration for Private Non-Profit organizations in the State of Alabama, dated 12/10/2020, is hereby amended to include the following areas as adversely affected by the disaster.

*Primary Counties:* Calhoun

All other information in the original declaration remains unchanged.

(Catalog of Federal Domestic Assistance Number 59008)

**Cynthia Pitts,**

*Acting Associate Administrator for Disaster Assistance.*

[FR Doc. 2021–01716 Filed 1–26–21; 8:45 am]

**BILLING CODE 8026–03–P**

---

## SMALL BUSINESS ADMINISTRATION

**[Disaster Declaration #16643 and #16644; LOUISIANA Disaster Number LA–00104]**

### Presidential Declaration Amendment of a Major Disaster for Public Assistance Only for the State of Louisiana

**AGENCY:** U.S. Small Business Administration.

**ACTION:** Amendment 4.

**SUMMARY:** This is an amendment of the Presidential declaration of a major disaster for Public Assistance Only for the State of Louisiana (FEMA–4559–DR), dated 09/05/2020.

*Incident:* Hurricane Laura.
*Incident Period:* 08/22/2020 through 08/27/2020.

**DATES:** Issued on 01/13/2021.

*Physical Loan Application Deadline Date:* 11/04/2020.

*Economic Injury (EIDL) Loan Application Deadline Date:* 06/07/2021.

**ADDRESSES:** Submit completed loan applications to: U.S. Small Business Administration, Processing and Disbursement Center, 14925 Kingsport Road, Fort Worth, TX 76155.

**FOR FURTHER INFORMATION CONTACT:** A. Escobar, Office of Disaster Assistance, U.S. Small Business Administration, 409 3rd Street SW, Suite 6050, Washington, DC 20416, (202) 205–6734.

**SUPPLEMENTARY INFORMATION:** The notice of the President's major disaster declaration for Private Non-Profit organizations in the State of Louisiana, dated 09/05/2020, is hereby amended to include the following areas as adversely affected by the disaster.

*Primary Parishes:* Richland

All other information in the original declaration remains unchanged.

(Catalog of Federal Domestic Assistance Number 59008)

**Cynthia Pitts,**

*Acting Associate Administrator for Disaster Assistance.*

[FR Doc. 2021–01721 Filed 1–26–21; 8:45 am]

**BILLING CODE 8026–03–P**

---

## SMALL BUSINESS ADMINISTRATION

**[Disaster Declaration #16700 and #16701; ALABAMA Disaster Number AL–00112]**

### Presidential Declaration Amendment of a Major Disaster for Public Assistance Only for the State of Alabama

**AGENCY:** U.S. Small Business Administration.

**ACTION:** Amendment 3.

**SUMMARY:** This is an amendment of the Presidential declaration of a major

disaster for Public Assistance Only for the State of Alabama (FEMA–4563–DR), dated 10/09/2020.

*Incident:* Hurricane Sally.
*Incident Period:* 09/14/2020 through 09/16/2020.
**DATES:** Issued on 01/13/2021.
*Physical Loan Application Deadline Date:* 12/08/2020.
*Economic Injury (EIDL) Loan Application Deadline Date:* 07/09/2021.
**ADDRESSES:** Submit completed loan applications to: U.S. Small Business Administration, Processing and Disbursement Center, 14925 Kingsport Road, Fort Worth, TX 76155.
**FOR FURTHER INFORMATION CONTACT:** A. Escobar, Office of Disaster Assistance, U.S. Small Business Administration, 409 3rd Street SW, Suite 6050, Washington, DC 20416, (202) 205–6734.
**SUPPLEMENTARY INFORMATION:** The notice of the President's major disaster declaration for Private Non-Profit organizations in the State of Alabama, dated 10/09/2020, is hereby amended to include the following areas as adversely affected by the disaster.
*Primary Counties:* Monroe
All other information in the original declaration remains unchanged.

(Catalog of Federal Domestic Assistance Number 59008)

**Cynthia Pitts,**
*Acting Associate Administrator for Disaster Assistance.*
[FR Doc. 2021–01720 Filed 1–26–21; 8:45 am]
**BILLING CODE 8026–03–P**

## SMALL BUSINESS ADMINISTRATION

[Disaster Declaration #16702 and #16703; NORTH CAROLINA Disaster Number NC–00119]

### Presidential Declaration Amendment of a Major Disaster for Public Assistance Only for the State of North Carolina

**AGENCY:** U.S. Small Business Administration.
**ACTION:** Amendment 1.

**SUMMARY:** This is an amendment of the Presidential declaration of a major disaster for Public Assistance Only for the State of North Carolina (FEMA–4568–DR), dated 10/14/2020.
*Incident Period:* 07/31/2020 through 08/04/2020.
**DATES:** Issued on 01/13/2021.
*Physical Loan Application Deadline Date:* 12/14/2020.
*Economic Injury (EIDL) Loan Application Deadline Date:* 07/14/2021.
**ADDRESSES:** Submit completed loan applications to: U.S. Small Business

Administration, Processing and Disbursement Center, 14925 Kingsport Road, Fort Worth, TX 76155.
**FOR FURTHER INFORMATION CONTACT:** A. Escobar, Office of Disaster Assistance, U.S. Small Business Administration, 409 3rd Street SW, Suite 6050, Washington, DC 20416, (202) 205–6734.
**SUPPLEMENTARY INFORMATION:** The notice of the President's major disaster declaration for Private Non-Profit organizations in the State of North Carolina, dated 10/14/2020, is hereby amended to include the following areas as adversely affected by the disaster.
*Primary Counties:* Lenoir
All other information in the original declaration remains unchanged.

(Catalog of Federal Domestic Assistance Number 59008)

**Cynthia Pitts,**
*Acting Associate Administrator for Disaster Assistance.*
[FR Doc. 2021–01719 Filed 1–26–21; 8:45 am]
**BILLING CODE 8026–03–P**

## SMALL BUSINESS ADMINISTRATION

[Disaster Declaration #16850 and #16851; COLORADO Disaster Number CO–00131]

### Presidential Declaration of a Major Disaster for Public Assistance Only for the State of Colorado

**AGENCY:** U.S. Small Business Administration.
**ACTION:** Notice.

**SUMMARY:** This is a Notice of the Presidential declaration of a major disaster for Public Assistance Only for the State of Colorado (FEMA–4581–DR), dated 01/15/2021.
*Incident:* Wildfires.
*Incident Period:* 09/06/2020 through 11/05/2020.
**DATES:** Issued on 01/15/2021.
*Physical Loan Application Deadline Date:* 03/16/2021.
*Economic Injury (EIDL) Loan Application Deadline Date:* 10/15/2021.
**ADDRESSES:** Submit completed loan applications to: U.S. Small Business Administration, Processing and Disbursement Center, 14925 Kingsport Road, Fort Worth, TX 76155.
**FOR FURTHER INFORMATION CONTACT:** A. Escobar, Office of Disaster Assistance, U.S. Small Business Administration, 409 3rd Street SW, Suite 6050, Washington, DC 20416, (202) 205–6734.
**SUPPLEMENTARY INFORMATION:** Notice is hereby given that as a result of the President's major disaster declaration on 01/15/2021, Private Non-Profit organizations that provide essential

services of a governmental nature may file disaster loan applications at the address listed above or other locally announced locations.
The following areas have been determined to be adversely affected by the disaster:
*Primary Counties:* Grand, Larimer
The Interest Rates are:

|  | Percent |
|---|---|
| *For Physical Damage:* |  |
| Non-Profit Organizations with Credit Available Elsewhere ... | 2.750 |
| Non-Profit Organizations without Credit Available Elsewhere ..................................... | 2.750 |
| *For Economic Injury:* |  |
| Non-Profit Organizations without Credit Available Elsewhere ..................................... | 2.750 |

The number assigned to this disaster for physical damage is 16850 5 and for economic injury is 16851 0.

(Catalog of Federal Domestic Assistance Number 59008)

**Cynthia Pitts,**
*Acting Associate Administrator for Disaster Assistance.*
[FR Doc. 2021–01726 Filed 1–26–21; 8:45 am]
**BILLING CODE 8026–03–P**

## DEPARTMENT OF STATE

[Public Notice: 11312]

### Designation of Niamat Hama Rahim Hama Sharif as a Specially Designated Global Terrorist

Acting under the authority of and in accordance with section 1(a)(ii)(B) of Executive Order 13224 of September 23, 2001, as amended by Executive Order 13268 of July 2, 2002, Executive Order 13284 of January 23, 2003, and Executive Order 13886 of September 9, 2019, I hereby determine that the person known as Niamat Hama Rahim Hama Sharif, also known as Saed Tawealy, also known as Sa'ad Tawela, is a foreign person who is a leader of al-Qa'ida Kurdish Battalions, a group whose property and interests in property are concurrently blocked pursuant to a determination by the Secretary of State pursuant to Executive Order 13224.

Consistent with the determination in section 10 of Executive Order 13224 that prior notice to persons determined to be subject to the Order who might have a constitutional presence in the United States would render ineffectual the blocking and other measures authorized in the Order because of the ability to transfer funds instantaneously, I

determine that no prior notice needs to be provided to any person subject to this determination who might have a constitutional presence in the United States, because to do so would render ineffectual the measures authorized in the Order.

This notice shall be published in the **Federal Register**.

Dated: January 6, 2021.

**Zachary A. Parker,**

*Director, Office of Directives Management, Department of State.*

[FR Doc. 2021–01581 Filed 1–26–21; 8:45 am]

**BILLING CODE 4710–AD–P**

---

## DEPARTMENT OF STATE

**[Public Notice 11328]**

### 30-Day Notice of Proposed Information Collection: Training/Internship Placement Plan

**ACTION:** Notice of request for public comment and submission to OMB of proposed collection of information.

**SUMMARY:** The Department of State has submitted the information collection described below to the Office of Management and Budget (OMB) for approval. In accordance with the Paperwork Reduction Act of 1995, we are requesting comments on this collection from all interested individuals and organizations. The purpose of this notice is to allow 30 days for public comment.

**DATES:** Submit comments directly to the Office of Management and Budget (OMB) up to February 26, 2021.

**ADDRESSES:** Direct comments to the Department of State Desk Officer in the Office of Information and Regulatory Affairs at the Office of Management and Budget (OMB). You may submit comments by any of the following methods:

• *Email: oira_submission@omb.eop.gov.* You must include the DS form number, information collection title, and the OMB control number in the subject line of your message.

• *Fax:* 202–395–5806. Attention: Desk Officer for Department of State.

**FOR FURTHER INFORMATION CONTACT:** Direct requests for additional information regarding the collection listed in this notice, including requests for copies of the proposed collection instrument and supporting documents, to G. Kevin Saba, Director, Office of Policy and Program Support, Office of Private Sector Exchange, ECA/EC, SA–4E, U.S. Department of State, Washington, DC 20522–0505, who may

be reached on 202–634–4710 or at *JExchanges@state.gov.*

**SUPPLEMENTARY INFORMATION:**

• *Title of Information Collection:* Training/Internship Placement Plan.

• *OMB Control Number:* 1405–0170.

• *Type of Request:* Revision of a Currently Approved Collection.

• *Originating Office:* Bureau of Educational and Cultural Affairs, Office of Private Sector Exchange (ECA/EC).

• *Form Number:* Form DS–7002.

• *Respondents:* Entities designated by the Department of State as sponsors of exchange visitor programs in the trainee or intern categories and U.S. businesses that provide the training or internship opportunity.

• *Estimated Number of Respondents:* 120.

• *Estimated Number of Responses:* 30,000.

• *Average Hours per Response:* 1.5 hours.

• *Total Estimated Burden:* 45,000 hours.

• *Frequency:* On occasion depending on the number of exchange participants annually.

• *Obligation to Respond:* Required to Obtain or Retain Benefits.

We are soliciting public comments to permit the Department to:

• Evaluate whether the proposed information collection is necessary for the proper functions of the Department.

• Evaluate the accuracy of our estimate of the time and cost burden for this proposed collection, including the validity of the methodology and assumptions used.

• Enhance the quality, utility, and clarity of the information to be collected.

• Minimize the reporting burden on those who are to respond, including the use of automated collection techniques or other forms of information technology.

Please note that comments submitted in response to this Notice are public record. Before including any detailed personal information, you should be aware that your comments as submitted, including your personal information, will be available for public review.

### Abstract of Proposed Collection

The collection is the continuation of information collected and needed by the Bureau of Educational and Cultural Affairs in administering the Exchange Visitor Program (J–NONIMMIGRANT) under the provisions of the Mutual Educational and Cultural Exchange Act of 1961, as amended. Trainee/Internship Placement Plans are to be completed by designated program sponsors. A Training/Internship Placement Plan is

required for each trainee or intern participant. It will set forth the training or internship program to be followed, methods of supervision, the skills the trainee or intern will obtain, and trainee or intern remuneration. The plan must be signed by the trainee or intern, sponsor, and the third party placement organization, if a third party organization is used in the conduct of the training or internship. Upon request, trainees or interns must present a fully executed Trainee/Internship Placement Plan on Form DS–7002 to any Consular Official interviewing them in connection with the issuance of J–1 visas.

### Methodology

This collection does not employ statistical methods. Access to Form DS–7002 is made available to Department designated sponsors electronically.

**Kevin E. Bryant,**

*Deputy Director, Office of Directives Management, Department of State.*

[FR Doc. 2021–01782 Filed 1–26–21; 8:45 am]

**BILLING CODE 4710–05–P**

---

## DEPARTMENT OF STATE

**[Public Notice: 11334]**

### 30-Day Notice of Proposed Information Collection: FLO Professional Development Fellowship (PDF) Application

**ACTION:** Notice of request for public comment and submission to OMB of proposed collection of information.

**SUMMARY:** The Department of State has submitted the information collection described below to the Office of Management and Budget (OMB) for approval. In accordance with the Paperwork Reduction Act of 1995 we are requesting comments on this collection from all interested individuals and organizations. The purpose of this Notice is to allow 30 days for public comment.

**DATES:** Submit comments directly to the Office of Management and Budget (OMB) up to February 26, 2021.

**ADDRESSES:** Direct comments to the Department of State Desk Officer in the Office of Information and Regulatory Affairs at the Office of Management and Budget (OMB). You may submit comments by the following methods:

• *Email: oira_submission@omb.eop.gov.* You must include the DS form number, information collection title, and the OMB control number in the subject line of your message.

• *Fax:* 202–395–5806. Attention: Desk Officer for Department of State.

**FOR FURTHER INFORMATION CONTACT:**
Direct requests for additional information regarding the collection listed in this notice, including requests for copies of the proposed collection instrument and supporting documents, to the Anna Kolodzinski, 2201 C St. NW, Washington, DC, who may be reached on 202–647–1077 or at *KolodzinskiAV@state.gov.*

**SUPPLEMENTARY INFORMATION:**
• *Title of Information Collection:* FLO Professional Development Fellowship (PDF) Application.
• *OMB Control Number:* 1405–0229.
• *Type of Request:* Revision of a Currently Approved Collection.
• *Originating Office:* Bureau of Global Talent Management, Family Liaison Office (GTM/FLO).
• *Form Number:* DS–4297.
• *Respondents:* The PDF program is open to spouses and partners of direct-hire U.S. government employees from all agencies serving overseas under Chief of Mission authority.
• *Estimated Number of Respondents:* 260.
• *Estimated Number of Responses:* 260.
• *Average Time per Response:* 2.75 hours.
• *Total Estimated Burden Time:* 715 hours.
• *Frequency:* Annually.
• *Obligation to Respond:* Required to Obtain a Benefit.

We are soliciting public comments to permit the Department to:
• Evaluate whether the proposed information collection is necessary for the proper functions of the Department.
• Evaluate the accuracy of our estimate of the time and cost burden for this proposed collection, including the validity of the methodology and assumptions used.
• Enhance the quality, utility, and clarity of the information to be collected.
• Minimize the reporting burden on those who are to respond, including the use of automated collection techniques or other forms of information technology.

Please note that comments submitted in response to this Notice are part of the public record. Before including any detailed personal information, you should be aware that your comments as submitted, including your personal information, will be available for public review.

**Abstract of Proposed Collection**

The Family Liaison Office (FLO) needs the information collected in the PDF application to determine who will receive a Professional Development Fellowship. The information is provided to selection committees that use a set of criteria to score the applications. Respondents are spouses and partners of direct-hire U.S. government employees from all agencies serving overseas under Chief of Mission who want to develop, maintain, and/or refresh their professional skills while overseas. The information is sought pursuant to 22 U.S.C 2651a—Organization of Department of State, 22 U.S.C 3921—Management of the Foreign Service.

**Methodology**

Applicants will email the completed application to FLO's PDF program manager.

**Anna V. Kolodzinski,**
*Division Chief, Family Liaison Office, Bureau of Global Talent Management, Department of State.*

[FR Doc. 2021–01811 Filed 1–26–21; 8:45 am]

**BILLING CODE 4710–15–P**

---

**DEPARTMENT OF TRANSPORTATION**

**Federal Highway Administration**

**Notice of Final Federal Agency Actions on Proposed Highway in Utah**

**AGENCY:** Utah Department of Transportation (UDOT), Federal Highway Administration (FHWA), Department of Transportation.

**ACTION:** Notice of limitation on claims for judicial review of actions by UDOT.

**SUMMARY:** The FHWA, on behalf of UDOT, is issuing this notice to announce actions taken by UDOT that are final Federal agency actions. The final agency actions relate to a proposed highway project that includes modifications to the existing interchange on Interstate 15 (I–15) between approximate mileposts 337.5 and 339, at State Route 97 (5600 South); and roadway widening of 5600 South in Roy City, Weber County, Utah. Those actions grant licenses, permits and/or approvals for the project. UDOT's Finding of No Significant Impact provides details on the Selected Alternative for the proposed improvements.

**DATES:** By this notice, FHWA, on behalf of UDOT, is advising the public of final agency actions subject to 23 U.S.C. 139(*l*)(1). A claim seeking judicial review of the Federal agency actions on the highway project will be barred unless the claim is filed on or before June 28, 2021. If the Federal law that authorizes judicial review of a claim provides a time period of less than 150 days for filing such claim, then that shorter time period still applies.

**FOR FURTHER INFORMATION CONTACT:**
Elisa Albury, Environmental Program Manager, UDOT Environmental Services, P.O. Box 143600, Salt Lake City, UT 84114; (801) 965–4000; email: *ealbury@utah.gov.* UDOT's normal business hours are 8 a.m. to 5 p.m. (Mountain Time Zone), Monday through Friday, except State and Federal holidays.

**SUPPLEMENTARY INFORMATION:** Effective January 17, 2017, FHWA assigned to UDOT certain responsibilities of FHWA for environmental review, consultation, and other actions required by applicable Federal environmental laws and regulations for highway projects in Utah, pursuant to 23 U.S.C. 327. Actions taken by UDOT on FHWA's behalf pursuant to 23 U.S.C. 327 constitute Federal agency actions for purposes of Federal law. Notice is hereby given that UDOT has taken final agency actions subject to 23 U.S.C. 139(*l*)(1) by issuing licenses, permits, and/or approvals for the 5600 South project in the State of Utah.

The project proposes to modify an existing interchange on I–15 at 5600 South and to widen and improve 5600 South for the purposes of meeting future 2050 travel demand, and improving safety conditions in Roy City, Weber County, Utah. Planned improvements include additional lanes, bicyclist and pedestrian facilities on 5600 South between the interchange and approximately 3500 West; realignment of Freeway Park Drive; and bridge and flyover construction and improvements to existing bridges at the interchange. The project is included in UDOT's adopted 2021–2026 State Transportation Improvement Plan (STIP) as project number S–I15–8(159)338; PIN 15685. The project is also included in the Wasatch Front Regional Council's 2019–2050 Regional Transportation Plan.

The actions by UDOT and the laws under which such actions were taken are described in the 5600 South Environmental Assessment (EA) and Finding of No Significant Impact (FONSI) approved on December 17, 2020, and other documents in the UDOT project records. The EA and the FONSI are available for review by contacting UDOT at the address provided above. In addition, these documents can be viewed and downloaded from the UDOT project website at *https:// www.udot.utah.gov/5600SouthEA/.* This notice applies to the EA, the FONSI, the

determination pursuant to Section 4(f) of the Department of Transportation Act of 1966, the determinations pursuant to Section 106 of the National Preservation Act of 1966, and all other UDOT and other federal agency decisions and other actions with respect to the project as of the issuance date of this notice and all laws under which such actions were taken, including but not limited to the following laws (including their implementing regulations):

1. General: National Environmental Policy Act [42 U.S.C. 4321–4351]; Federal-Aid Highway Act [23 U.S.C. 109 and 23 U.S.C. 128]; MAP–21, the Moving Ahead for Progress in the 21st Century Act [Pub. L. 112–141].

2. Air: Clean Air Act [42 U.S.C. 7401–7671(q)].

3. Land: Section 4(f) of the Department of Transportation Act of 1966 [23 U.S.C. 138 and 49 U.S.C. 303]; Landscaping and Scenic Enhancement (Wildflowers) [23 U.S.C. 319].

4. Wildlife: Endangered Species Act [16 U.S.C. 1531–1544 and Section 1536], Fish and Wildlife Coordination Act [16 U.S.C. 661–667(d)]; Migratory Bird Treaty Act [16 U.S.C. 703–712]; The Bald and Golden Eagle Protection Act [16 U.S.C. 668].

5. Historic and Cultural Resources: Section 106 of the National Historic Preservation Act of 1966, as amended [54 U.S.C. 300101 *et seq.*]; Archeological Resources Protection Act of 1977 [16 U.S.C. 470(aa)–470(ll)]; Archeological and Historic Preservation Act [16 U.S.C. 469–469(c)]; Native American Grave Protection and Repatriation Act (NAGPRA) [25 U.S.C 3002–3013].

6. Social and Economic: Civil Rights Act of 1964 [42 U.S.C. 2000(d)–2000(d)(1)]; American Indian Religious Freedom Act [42 U.S.C. 1996]; Farmland Protection Policy Act (FPPA) [7 U.S.C. 4201–4209].

7. Wetlands and Water Resources: Clean Water Act (Section 404, Section 401, Section 319) [33 U.S.C. 1251–1377]; Safe Drinking Water Act (SDWA) [42 U.S.C. 300(f)–300(j)(6)]; Rivers and Harbors Act of 1899 [33 U.S.C. 401–406]; Emergency Wetlands Resources Act [16 U.S.C. 3921, 3931]; TEA–21 Wetlands Mitigation [23 U.S.C. 103(b)(6)(M, 133(b)(11)]; Flood Disaster Protection Act [42 U.S.C. 4001–4128].

8. Hazardous Materials: Comprehensive Environmental Response, Compensation, and Liability Act [42 U.S.C. 9601–9675]; Superfund Amendments and Reauthorization Act of 1986; Resource Conservation and Recovery Act [42 U.S.C. 6901–6992(k)].

9. Noise: Federal-Aid Highway Act of 1970, Public Law 91–605 [84 Stat. 1713].

10. Executive Orders: E.O. 11990 Protection of Wetlands; E.O. 11988 Floodplain Management; E.O. 12898, Federal Actions to Address Environmental Justice in Minority Populations and Low-Income Populations; E.O. 11593 Protection and Enhancement of Cultural Resources; E.O. 13287 Preserve America; E.O. 13175 Consultation and Coordination with Indian Tribal Governments; E.O. 11514 Protection and Enhancement of Environmental Quality; E.O. 13112 Invasive Species.

(Catalog of Federal Domestic Assistance Program Number 20.205, Highway Planning and Construction. The regulations implementing Executive Order 12372 regarding intergovernmental consultation on Federal programs and activities apply to this program.)

**Authority:** 23 U.S.C. 139(*l*)(1)

Issued on: January 19, 2021.

**Ivan Marrero,**

*Division Administrator, Federal Highway Administration, Salt Lake City, Utah.*

[FR Doc. 2021–01651 Filed 1–26–21; 8:45 am]

**BILLING CODE 4910–RY–P**

---

# DEPARTMENT OF TRANSPORTATION

## Pipeline and Hazardous Materials Safety Administration

**[Docket No. PHMSA–2019–0144]**

## Pipeline Safety: Request for Special Permit; Natural Gas Pipeline Company of America, LLC

**AGENCY:** Pipeline and Hazardous Materials Safety Administration (PHMSA); DOT.

**ACTION:** Notice.

**SUMMARY:** PHMSA is publishing this notice to solicit public comments on a request for special permit received from the Natural Gas Pipeline Company of America, LLC (NGPL). The special permit request is seeking relief from compliance with certain requirements in the Federal pipeline safety regulations. At the conclusion of the 30-day comment period, PHMSA will review the comments received from this notice as part of its evaluation to grant or deny this special permit request.

**DATES:** Submit any comments regarding this special permit request by February 26, 2021.

**ADDRESSES:** Comments should reference the docket number for this special permit request and may be submitted in the following ways:

• *E-Gov Website: http://www.Regulations.gov.* This site allows the public to enter comments on any

**Federal Register** notice issued by any agency.

• *Fax:* 1–202–493–2251.

• *Mail:* Docket Management System: U.S. Department of Transportation, Docket Operations, M–30, West Building Ground Floor, Room W12–140, 1200 New Jersey Avenue SE, Washington, DC 20590.

• *Hand Delivery:* Docket Management System: U.S. Department of Transportation, Docket Operations, M–30, West Building Ground Floor, Room W12–140, 1200 New Jersey Avenue SE, Washington, DC 20590, between 9:00 a.m. and 5:00 p.m., Monday through Friday, except Federal holidays.

*Instructions:* You should identify the docket number for the special permit request you are commenting on at the beginning of your comments. If you submit your comments by mail, please submit two (2) copies. To receive confirmation that PHMSA has received your comments, please include a self-addressed stamped postcard. Internet users may submit comments at *http://www.Regulations.gov.*

*Note:* There is a privacy statement published on *http://www.Regulations.gov.* Comments, including any personal information provided, are posted without changes or edits to *http://www.Regulations.gov.*

*Confidential Business Information:* Confidential Business Information (CBI) is commercial or financial information that is both customarily and actually treated as private by its owner. Under the Freedom of Information Act (FOIA) (5 U.S.C. 552), CBI is exempt from public disclosure. If your comments responsive to this notice contain commercial or financial information that is customarily treated as private, that you actually treat as private, and that is relevant or responsive to this notice, it is important that you clearly designate the submitted comments as CBI. Pursuant to 49 Code of Federal Regulations (CFR) 190.343, you may ask PHMSA to give confidential treatment to information you give to the agency by taking the following steps: (1) Mark each page of the original document submission containing CBI as ''Confidential''; (2) send PHMSA, along with the original document, a second copy of the original document with the CBI deleted; and (3) explain why the information you are submitting is CBI. Unless you are notified otherwise, PHMSA will treat such marked submissions as confidential under the FOIA, and they will not be placed in the public docket of this notice. Submissions containing CBI should be sent to Kay McIver, DOT, PHMSA–PHP–80, 1200 New Jersey Avenue SE,

Washington, DC 20590–0001. Any commentary PHMSA receives that is not specifically designated as CBI will be placed in the public docket for this matter.

**FOR FURTHER INFORMATION CONTACT:**

*General:* Ms. Kay McIver by telephone at 202–366–0113, or by email at *kay.mciver@dot.gov.*

*Technical:* Mr. Steve Nanney by telephone at 713–272–2855, or by email at *steve.nanney@dot.gov.*

**SUPPLEMENTARY INFORMATION:** PHMSA received a special permit request from NGPL, a subsidiary of Kinder Morgan, Inc., seeking a waiver from the requirements of 49 CFR 192.611(a) and (d): Change in class location: Confirmation or revision of maximum allowable operating pressure, and 49 CFR 192.619(a): Maximum allowable operating pressure: Steel or plastic pipelines. This special permit is being requested in lieu of pipe replacement or pressure reduction for one (1) pipeline segment totaling 616 feet (approximately 0.12 miles) of 36-inch diameter pipe on the Gulf Coast Line #3 Pipeline located in White County, Arkansas. The proposed special permit will allow operation of the original Class 1 pipe in the Class 3 location.

The proposed special permit segment on the NGPL Gulf Coast Line #3 Pipeline has a maximum allowable operating pressure of 858 pounds per square inch gauge and was constructed in 1966.

The special permit request, proposed special permit with conditions, and Draft Environmental Assessment (DEA) for the NGPL Gulf Coast Line #3 Pipeline are available for review and public comments in Docket No. PHMSA–2019–0144. We invite interested persons to review and submit comments on the special permit request and DEA in the docket. Please include any comments on potential safety and environmental impacts that may result if the special permit is granted. Comments may include relevant data.

Before issuing a decision on the special permit request, PHMSA will evaluate all comments received on or before the comments closing date. Comments received after the closing date will be evaluated, if it is possible to do so without incurring additional expense or delay. PHMSA will consider each relevant comment it receives in making its decision to grant or deny this special permit request.

Issued in Washington, DC, under authority delegated in 49 CFR 1.97.

**Alan K. Mayberry,**

*Associate Administrator for Pipeline Safety.*

[FR Doc. 2021–01781 Filed 1–26–21; 8:45 am]

**BILLING CODE 4910–60–P**

---

# DEPARTMENT OF THE TREASURY

## Agency Information Collection Activities; Submission for OMB Review; Comment Request; Return of Organization Exempt From Income Tax

**AGENCY:** Departmental Offices, U.S. Department of the Treasury.

**ACTION:** Notice.

**SUMMARY:** The Department of the Treasury will submit the following information collection requests to the Office of Management and Budget (OMB) for review and clearance in accordance with the Paperwork Reduction Act of 1995, on or after the date of publication of this notice. The public is invited to submit comments on these requests.

**DATES:** Comments should be received on or before February 26, 2021.

**ADDRESSES:** Written comments and recommendations for the proposed information collection should be sent within 30 days of publication of this notice to *www.reginfo.gov/public/do/ PRAMain.* Find this particular information collection by selecting "Currently under 30-day Review—Open for Public Comments" or by using the search function.

**FOR FURTHER INFORMATION CONTACT:** Copies of the submissions may be obtained from Molly Stasko by emailing *PRA@treasury.gov,* calling (202) 622– 8922, or viewing the entire information collection request at *www.reginfo.gov.*

**SUPPLEMENTARY INFORMATION:**

### Internal Revenue Service (IRS)

*Title:* Tax Exempt Forms and Schedules.

*OMB Control Number:* 1545–0047.

*Type of Review:* Revision of a currently approved collection.

*Description:* These forms and schedules are needed to determine that Internal Revenue Code (IRC) section 501(a) tax-exempt organizations fulfill the operating conditions within the limitations of their tax exemption. The data is also used for general statistical purposes. These forms are used by Tax Exempt organizations to specify their items of gross income, receipts and disbursements.

*Forms:* 990, 990–BL, 990–EZ, 990–N, 990–PF, 990–T, 990–W, 1023, 1023–EZ, 1023-Interactive, 1024, 1024–A, 1028, 1120–POL, 4720, 5578, 5884–C, 6069, 6497, 8038, 8038–B, 8038–CP, 8038–G, 8038–GC, 8038–R, 8038–T, 8038–TC, 8282, 8328, 8330, 8453–E.O., 8453–X, 8718, 8868, 8870, 8871, 8872, 8879– E.O., 8886–T, 8899 and all other related forms, schedules, and attachments.

*Affected Public:* Tax-Exempt Organizations.

*Estimated Number of Respondents:* 1,599,000.

*Total Estimated Time:* 52.47 million hours.

*Estimated Time per Respondent:* 32.8 hours.

*Total Estimated Out-of-Pocket Costs:* $1.47 billion.

*Estimated Out-of-Pocket Cost per Respondent:* $921.

*Total Estimated Monetized Burden (Labor Costs):* $4.08 billion.

*Estimated Total Monetized Burden (Labor Costs) per Respondent:* $2,554.

**Note:** Amounts below are estimates for FY 2021. Reported time and cost burdens are national averages and do not necessarily reflect a "typical" case. Most taxpayers experience lower than average burden, with taxpayer burden varying considerably by taxpayer type. Totals may not add due to rounding.

FISCAL YEAR 2021 ESTIMATES FOR FORM 990 SERIES OF RETURNS AND RELATED FORMS AND SCHEDULES

|  | FY 20 | Program change due to agency discretion | FY 21 |
|---|---|---|---|
| Number of Taxpayers | 1,606,200 | (7,200) | 1,599,000 |
| Burden in Hours | 52,450,000 | 20,000 | 52,470,000 |
| Out-of-Pocket Costs | $1,496,500,000 | ($23,400,000) | $1,473,100,000 |
| Monetized Total Burden (Labor Costs) | $4,168,800,000 | ($84,700,000) | $4,084,100,000 |

### FISCAL YEAR 2021 FORM 990 SERIES TAX COMPLIANCE COST ESTIMATES

| | Form 990 | Form 990–EZ | Form 990–PF | Form 990–T | Form 990–N |
|---|---|---|---|---|---|
| Projections of the Number of Returns to be Filed with IRS ................................. | 321,100 | 253,200 | 120,200 | 165,500 | 742,000 |
| Estimated Average Time per Response (Hours) ............................................... | 85 | 45 | 47 | 40 | 2 |
| Estimated Average Out-of-Pocket Costs per Response ...................................... | $2,600 | $500 | $2,000 | $1,500 | $10 |
| Estimated Average Monetized Burden (Labor Costs) per Response .............. | $8,000 | $1,200 | $3,900 | $4,400 | $30 |
| Estimated Total Time (Hours) for all Filers ................................................ | 27,220,000 | 11,450,000 | 5,600,000 | 6,570,000 | 1,630,000 |
| Estimated Total Out-of-Pocket Costs for all Filers ............................................ | $849,800,000 | $139,000,000 | $240,200,000 | $237,300,000 | $6,800,000 |
| Estimated Total Monetized Burden ....... | $2,559,000,000 | $312,700,000 | $467,800,000 | $719,800,000 | $24,900,000 |

* Detail may not add to total due to rounding.

**Authority:** 44 U.S.C. 3501 *et seq.*

Dated: January 21, 2021.

**Molly Stasko,**
*Treasury PRA Clearance Officer.*
[FR Doc. 2021–01732 Filed 1–26–21; 8:45 am]
**BILLING CODE 4830–01–P**

---

## DEPARTMENT OF THE TREASURY

### Agency Information Collection Activities; Submission for OMB Review; Comment Request; Treasury Foreign Currency Forms

**AGENCY:** Departmental Offices, U.S. Department of the Treasury.

**ACTION:** Notice.

**SUMMARY:** The Department of the Treasury will submit the following information collection requests to the Office of Management and Budget (OMB) for review and clearance in accordance with the Paperwork Reduction Act of 1995, on or after the date of publication of this notice. The public is invited to submit comments on this request.

**DATES:** Comments must be received on or before February 26, 2021.

**ADDRESSES:** Written comments and recommendations for the proposed information collection should be sent within 30 days of publication of this notice to *www.reginfo.gov/public/do/PRAMain.* Find this particular information collection by selecting "Currently under 30-day Review—Open for Public Comments" or by using the search function.

**FOR FURTHER INFORMATION CONTACT:** Copies of the submissions may be obtained from Molly Stasko by emailing *PRA@treasury.gov,* calling (202) 622–8922, or viewing the entire information collection request at *www.reginfo.gov.*

**SUPPLEMENTARY INFORMATION:**
*Title:* Treasury Foreign Currency Forms FC–1, FC–2, & FC–3.

*OMB Control Number:* 1505–0010.

*Type of Review:* Extension without change of a currently approved collection.

*Description:* The filing of Foreign Currency Forms FC–1, FC–2, and FC–3 is pursuant to (31 U.S.C. 5315, which directs the Secretary of the Treasury to prescribe regulations (31 CFR 128, Subpart C), requiring reports on foreign currency transactions conducted by a United States person or a foreign person controlled by a United States person. The forms collect data on the foreign exchange spot, forward, futures, and options markets from all significant market participants.

*Form:* Treasury Form FC–1, FC–2, FC–3.

*Affected Public:* Businesses or other for-profit organizations.

*Estimated Number of Respondents:* 29 for FC–1; 29 for FC–2; 47 for FC–3.

*Frequency of Response:* Weekly for FC–1; Monthly for FC–2; and Quarterly for FC–3.

*Estimated Total Number of Annual Responses:* 1508 for FC–1; 348 for FC–2; 188 for FC–3.

*Estimated Time per Response:* 48 minutes for FC–1; 3 hours 36 minutes for FC–2; 8 hours for FC–3.

*Estimated Total Annual Burden Hours:* 1,206 hours for FC–1; 1,253 hours for FC–2; 1,504 hours for FC–3.

**Authority:** 44 U.S.C. 3501 *et seq.*

Dated: January 21, 2021.

**Molly Stasko,**
*Treasury PRA Clearance Officer.*
[FR Doc. 2021–01723 Filed 1–26–21; 8:45 am]
**BILLING CODE 4810–25–P**

i

# Reader Aids

Federal Register

Vol. 86, No. 16

Wednesday, January 27, 2021

## CUSTOMER SERVICE AND INFORMATION

**Federal Register/Code of Federal Regulations**

| | |
|---|---|
| General Information, indexes and other finding aids | 202–741–6000 |
| Laws | 741–6000 |

**Presidential Documents**

| | |
|---|---|
| Executive orders and proclamations | 741–6000 |
| The United States Government Manual | 741–6000 |

**Other Services**

| | |
|---|---|
| Electronic and on-line services (voice) | 741–6020 |
| Privacy Act Compilation | 741–6050 |

### ELECTRONIC RESEARCH

**World Wide Web**

Full text of the daily Federal Register, CFR and other publications is located at: **www.govinfo.gov**.

Federal Register information and research tools, including Public Inspection List and electronic text are located at: **www.federalregister.gov**.

**E-mail**

**FEDREGTOC** (Daily Federal Register Table of Contents Electronic Mailing List) is an open e-mail service that provides subscribers with a digital form of the Federal Register Table of Contents. The digital form of the Federal Register Table of Contents includes HTML and PDF links to the full text of each document.

To join or leave, go to **https://public.govdelivery.com/accounts/USGPOOFR/subscriber/new**, enter your email address, then follow the instructions to join, leave, or manage your subscription.

**PENS** (Public Law Electronic Notification Service) is an e-mail service that notifies subscribers of recently enacted laws.

To subscribe, go to **http://listserv.gsa.gov/archives/publaws-l.html and select** *Join or leave the list (or change settings);* then follow the instructions.

**FEDREGTOC** and **PENS** are mailing lists only. We cannot respond to specific inquiries.

**Reference questions.** Send questions and comments about the Federal Register system to: **fedreg.info@nara.gov**

The Federal Register staff cannot interpret specific documents or regulations.

### FEDERAL REGISTER PAGES AND DATE, JANUARY

| | |
|---|---|
| 1–222 | 4 |
| 223–412 | 5 |
| 413–932 | 6 |
| 933–1248 | 7 |
| 1249–1736 | 8 |
| 1737–2242 | 11 |
| 2243–2526 | 12 |
| 2527–2952 | 13 |
| 2953–3732 | 14 |
| 3733–4874 | 15 |
| 4875–6242 | 19 |
| 6243–6552 | 21 |
| 6553–6824 | 22 |
| 6825–7058 | 25 |
| 7059–7224 | 26 |
| 7225–7336 | 27 |

## CFR PARTS AFFECTED DURING JANUARY

At the end of each month the Office of the Federal Register publishes separately a List of CFR Sections Affected (LSA), which lists parts and sections affected by documents published since the revision date of each title.

**2 CFR**

| | |
|---|---|
| 5900 | 1253 |

**3 CFR**

**Proclamations:**

| | |
|---|---|
| 9645 (revoked by Proc. 10141) | 7005 |
| 9694 (Amended by Proc. 10133) | 6541 |
| 9723 (revoked by Proc. 10141) | 7005 |
| 9983 (revoked by Proc. 10141) | 7005 |
| 9993 (Terminated by Proc. 10138) | 6799 |
| 9996 (Terminated by Proc. 10138) | 6799 |
| 10041 (Terminated by Proc. 10138) | 6799 |
| 10129 | 215 |
| 10130 | 413 |
| 10131 | 417 |
| 10132 | 2951 |
| 10133 | 6541 |
| 10134 | 6553 |
| 10135 | 6555 |
| 10136 | 6795 |
| 10137 | 6797 |
| 10138 | 6799 |
| 10139 | 6825 |
| 10140 | 7003 |
| 10141 | 7005 |
| 10142 | 7225 |

**Executive Orders:**

| | |
|---|---|
| 13836 (revoked by 14003) | 7231 |
| 13837 (revoked by 14003) | 7231 |
| 13839 (revoked by 14003) | 7231 |
| 13754 (reinstated by EO 13990) | 7037 |
| 13857 (revoked by 14003) | 7231 |
| 13766 (revoked by EO 13990) | 7037 |
| 13768 (revoked by EO 13993) | 7051 |
| 13770 (revoked by EO 13983) | 6835 |
| 13771 (revoked by EO 13992) | 7049 |
| 13777 (revoked by EO 13992) | 7049 |
| 13778 (revoked by EO 13990) | 7037 |
| 13780 (revoked by Proc. 10141) | 7005 |
| 13783 (revoked by EO 13990) | 7037 |
| 13792 (revoked by EO 13990) | 7037 |
| 13795 (revoked by EO 13990) | 7037 |
| 13807 (revoked by EO 13990) | 7037 |
| 13834 (revoked by EO 13990, except for sections 6, 7, and 11) | 7037 |
| 13868 (revoked by EO 13990) | 7037 |
| 13875 (revoked by EO 13992) | 7049 |
| 13880 (revoked by EO 13986) | 7015 |
| 13891 (revoked by EO 13992) | 7049 |
| 13892 (revoked by EO 13992) | 7049 |
| 13893 (revoked by EO 13992) | 7049 |
| 13920 (revoked by EO 13990) | 7037 |
| 13927 (revoked by EO 13990) | 7037 |
| 13934 (amended by 13978) | 6809 |
| 13950 (revoked by EO 13985) | 7009 |
| 13958 (revoked by EO 13985) | 7009 |
| 13969 | 219 |
| 13970 | 421 |
| 13971 | 1249 |
| 13972 | 3727 |
| 13973 | 3733 |
| 13974 | 4875 |
| 13975 | 6547 |
| 13976 | 6549 |
| 13977 | 6803 |
| 13978 | 6809 |
| 13979 | 6813 |
| 13980 | 6817 |
| 13981 | 6821 |
| 13982 | 6833 |
| 13983 | 6835 |
| 13984 | 6837 |
| 13985 | 7009 |
| 13986 | 7015 |
| 13987 | 7019 |
| 13988 | 7023 |
| 13989 | 7029 |
| 13990 | 7037 |
| 13991 | 7045 |
| 13992 | 7049 |
| 13993 | 7051 |
| 13994 | 7189 |
| 13995 | 7193 |
| 13996 | 7197 |
| 13997 | 7201 |
| 13998 | 7205 |
| 13999 | 7211 |
| 14000 | 7215 |
| 14001 | 7221 |

14002...........7229
14003...........7231

**Administrative Orders:**
**Presidential Permits:**
Permit of December
  31, 2020............435
**Notices:**
Notice of January 15,
  2021............6557
**Memorandums:**
Memorandum of July
  21, 2020 (revoked
  by EO 13986)......7015
Memorandum of
  December 20, 2016
  (reinstated by EO
  13990).............7037
Memorandum of April
  12, 2018 (revoked
  by EO 13990)......7037
Memorandum of
  October 11, 2019
  (revoked by EO
  14003)............7231
Memorandum of
  October 19, 2018
  (revoked by EO
  13990).............7037
Memorandum of
  February 19, 2020
  (revoked by EO
  13990).............7037
Memorandum of
  January 8, 2021.....2949
Memorandum of
  January 19, 2021....6843,
    6845
Memorandum of
  January 20, 2021....7053,
    7055, 7225

**6 CFR**
**Proposed Rules:**
27.................495

**7 CFR**
9.................4877
760...............439
271...............358
273...............358
990..............5596
1223.............2880
1464.............3735

**8 CFR**
208..............6847
214.............1676
1208............6847
1235............1737

**10 CFR**
2............3744, 3745
13...............3745
11...............2527
21..............2953
207.............2953
218.............2953
429.............2953
430......1253, 4776, 4883
431......4, 2953, 3747, 4776,
    4885
490.............4885
501.............2953

590.............2243
601.............2953
609.............3747
611.............3747
820.............2953
824.............2953
851.............2953
1013............2953
1017............2953
1050............2953
1061..............451
**Proposed Rules:**
50.............1022
430.............4776
431.......3747, 4776
600.............3747

**11 CFR**
111.............1737

**12 CFR**
3................708
5.............1254
217........708, 3723
252..............708
263............6742
303............2246
308............1740
313..............708
324............6742
337..............708
620..............223
622............7235
747..............933
1002...........3773
1006...........5766
1083...........3874

**13 CFR**
113............3692
120.......3692, 3712
121...2957, 3692, 3712
124.....2529, 2957
125............2957
126............2957
127.......2957, 2960

**Proposed Rules:**
109............5036
120............5036
123............5036

**14 CFR**
2..............4390
11.............4390
13.............4745
21.............4114
39....458, 2961, 3767, 6559
43.............6314
47.............4390
48.............4390
71...3780, 3781, 6243, 6244,
    6848
89.............4390

91..............4390
97..........25, 27
107........4314, 4390
250............2534
254............2534
383............1745
406............1745
**Proposed Rules:**
39....3879, 3883, 3885, 5040,
  6269, 6271, 6273, 6276
71....3888, 3889, 3891, 3893,
  3894, 3896, 5043, 5044,
    5046, 6279
241............5052
298............5052

**15 CFR**
6..............1764
7..............4909
710............936
712............936
730.......4862, 4862
736............4862
738............4929
740............4929
742....944, 2252, 4929
744...1766, 4862, 4865
745............4929
748............4929
750............4929
772............4929
774...461, 944, 4929
922............4937

**16 CFR**
1..............2539
1223...........4961

**17 CFR**
1..............3236
15.............3236
17.............3236
19.............3236
23.......223, 229, 6850
38.............2048
39..............949
40.............3236
140.......949, 3236
150............3236
151........748, 3236
210........748, 2080
227............3496
229....2080, 3496
230....2080, 3496
239....2080, 3496
240....2080, 3496, 4662
249...2080, 3496
249b...........4662
270.......748, 3496
274............3496
**Proposed Rules:**
230............5063
232............5063
239............5063
240............2311
249............5063

**18 CFR**
**Proposed Rules:**
35.............6420

**19 CFR**
Ch. I..........4969
12.......2255, 6561
361............7237

**20 CFR**
501............1768
641............1772
655....1, 1772, 2964, 3608
656............3608
658............1772
667............1772
683............1772
702............2964
725............2964
726......1772, 2964
802............1795
**Proposed Rules:**
501............1831
641............1834
655........29, 1834
658............1834
667............1834
683............1834
726............1834
802............1857

**21 CFR**
6..............5694
101.............462
1141...........3793
**Proposed Rules:**
1301...........1030
1309...........1030
1321...........1030

**22 CFR**
212.............250

**24 CFR**
3280...........2496
3282...........2496
3285...........2496
**Proposed Rules:**
5..............2582
92.............2582
93.............2582
200............2582
574............2582
576............2582
578............2582
880............2582
882............2582
884............2582
886............2582
902............2582
982............2582
983............2582
985............2582

**25 CFR**
15.............1037

**26 CFR**
1....254, 464, 810, 1256, 2974,
  4516, 4728, 4970, 5452,
    5496, 5544, 6196
40.............4990
49.............4990
53.............6196
**Proposed Rules:**
1.......2607, 4728
301............2607

**29 CFR**
7..............1772
8..............1772
18...........1, 1800
22.............1772

24 .................................1772
26 .................................1772
29 .................................1772
37 .................................1772
38 .................................1772
89 .................................7237
96 .................................1772
417 ...............................1772
458 ...............................1772
500 .....................1772, 2964
501 ...............................2964
503 ..........................1, 2964
525 ...............................1772
530 .....................1772, 2964
570 ...............................2964
578 ...............................2964
579 ...............................2964
580 ...............................1772
780 ...............................1168
788 ...............................1168
795 ...............................1168
801 ...............................2964
825 ...............................2964
1601 .............................2974
1626 .............................2974
1903 .............................2964
1978 .............................1772
1979 .............................1772
1980 .............................1772
1981 .............................1772
1982 .............................1772
1983 .............................1772
1984 .............................1772
1985 .............................1772
1986 .............................1772
1987 .............................1772
1988 .............................1772
4001 .............................1256
4071 .............................2541
4204 .............................1256
4206 .............................1256
4207 .............................1256
4211 .............................1256
4219 .............................1256
4302 .............................2541
**Proposed Rules:**
7 .................................1834
8 .................................1834
18 .........................29, 1862
22 .................................1834
24 .................................1834
26 .................................1834
29 .................................1834
37 .................................1834
38 .................................1834
96 .................................1834
417 ...............................1834
458 ...............................1834
500 ...............................1834
503 ...................................29
525 ...............................1834
530 ...............................1834
580 ...............................1834
1978 .............................1834
1979 .............................1834
1980 .............................1834
1981 .............................1834
1982 .............................1834
1983 .............................1834
1984 .............................1834
1985 .............................1834
1986 .............................1834
1987 .............................1834
1988 .............................1834

**30 CFR**
100 ...............................2964

1206 .............................4612
1241 .............................4612

**31 CFR**
33 .................................6138
585 ...............................3793
**Proposed Rules:**
1010 .............................3897
1020 .............................3897
1022 .............................3897

**32 CFR**
**Proposed Rules:**
158 ...............................1063
310 .................................498

**33 CFR**
117 .......1806, 7238, 7239, 7241
165 ...........2256, 6247, 6566
Ch. II ...........................2744
220 ...............................1278
223 ...............................1808
236 ...............................1808
239 ...............................1809
240 ...............................3801
263 ...............................3802
276 ...............................3802
279 ...............................3803
401 ...............................1745
**Proposed Rules:**
96 .................................3899
165 ...................................32

**34 CFR**
Ch. II ...........................5009
600 ...............................5008
602 ...............................5008
668 ...............................5008
673 ...............................5008
674 ...............................5008
682 ...............................5008
685 ...............................5008
**Proposed Rules:**
300 ...............................2615

**36 CFR**
7 .................................3804
**Proposed Rules:**
7 .................................3903

**37 CFR**
1 .........................2542, 3815
42 .......................2542, 3815
210 ...............................2176
390 ...............................6568
**Proposed Rules:**
401 .................................35
404 .................................35

**39 CFR**
233 ...............................2486
**Proposed Rules:**
111 ...............................1080

**40 CFR**
30 .................................469
52 .......971, 3816, 3818, 3820
60 .......................2542, 5013
80 .................................3827
87 .................................2136
141 ...............................4198
142 ...............................4198
174 ...............................3827
282 .................................977
745 .................................983

751 .......866, 880, 894, 911, 922
Ch. IX ..........................1281
1030 .............................2136
1519 .............................1279
**Proposed Rules:**
Ch. I .............................6602
52 .......1347, 2318, 2615, 5086,
             5088, 5091, 6589, 6591
63 .......1362, 1390, 1868, 3054,
             3079, 3906, 5093
80 ...................3928, 5094
180 ...............................2615
280 ...............................5094
281 .................1081, 5094
282 ...............................1081
700 ...............................1890
751 ...............................3932

**41 CFR**
60–30 ...........................1772
**Proposed Rules:**
60–30 ...........................1834

**42 CFR**
1 .................................5694
51c ...............................7059
100 ...............................6249
400 ...............................5020
404 ...............................5694
405 ...................2987, 5020
410 ...............................5020
414 ...............................5020
415 ...............................5020
417 ...............................5864
422 ...............................5864
424 ...............................5020
425 ...............................5020
455 ...............................5020
460 ...............................5864
1000 .............................5694
**Proposed Rules:**
430 ...............................5105
433 ...............................5105
447 ...............................5105
455 ...............................5105
457 ...............................5105

**43 CFR**
**Proposed Rules:**
30 .................................1037

**44 CFR**
64 .................................2558
333 ...............................1288

**45 CFR**
1 .................................3010
8 .................................5694
75 .................................2257
155 ...............................6138
156 ...............................6138
200 ...............................5694
300 ...............................5694
403 ...............................5694
1010 .............................5694
1390 .............................5694
**Proposed Rules:**
5b .................................2633
46 .................................2615
75 .................................2615
160 ...............................6446
164 ...............................6446

**46 CFR**
67 .................................5022

221 ...............................1745
307 ...............................1745
340 ...............................1745
356 ...............................1745
506 ...............................2560
**Proposed Rules:**
71 .................................3897
115 ...............................3897
176 ...............................3897
530 ...............................5106

**47 CFR**
0 .....................................44
1 .......................2904, 3830
15 .................................2278
51 .................................1636
54 .................994, 2904
64 .......................44, 2562
73 .................2296, 3015
**Proposed Rules:**
1 .................................6611
2 .................................2337
54 .................................6611
64 .................................2636
74 .................................1909
95 .................................2337

**48 CFR**
Ch. I ....3676, 3689, 6180, 6194
2 .................................3687
9 .................................3677
12 .................3679, 6180
13 .................................3679
15 .................3679, 3687
16 .................................3679
17 .................3679, 3687
19 .................................3682
25 .................................6180
28 .................................3682
32 .................................3682
37 .................3679, 3687
52 .......3677, 3682, 3687, 6180
53 .................................3682
204 ...............................3832
212 .................3832, 3835
213 ...............................3832
225 ...............................3836
239 ...............................3836
245 ...............................3837
252 .......3832, 3835, 3836, 3837
Ch. VII ...........................493
**Proposed Rules:**
212 ...............................3935
225 ...............................3935
252 ...............................3835
852 ...............................6281
873 ...............................6281

**49 CFR**
106 ...............................2564
107 .................1745, 2564
171 .................1745, 2564
172 ...............................2564
173 ...............................2564
174 ...............................2564
175 ...............................2564
176 ...............................2564
177 ...............................2564
178 ...............................2564
179 ...............................2564
180 ...............................2564
190 ...............................1745
191 .................2210, 3839
192 .................2210, 3839
209 ...............................1745
213 ...............................1745

214....................................1745
215....................................1745
216....................................1745
217....................................1745
218....................................1745
219....................................1745
220....................................1745
221....................................1745
222....................................1745
223....................................1745
224....................................1745
225....................................1745
227....................................1745
228....................................1745
229....................................1745
230....................................1745
231....................................1745

232....................................1745
233....................................1745
234....................................1745
235....................................1745
236....................................1745
237....................................1745
238....................................1745
239....................................1745
240....................................1745
241....................................1745
242....................................1745
243....................................1745
244....................................1745
272....................................1745
386....................................1745
571....................................1292
578...........................1745, 3016

831....................................1809
1022..................................3026
**Proposed Rules:**
191....................................3938
192.............................3938, 3956
195.............................3938, 3956
219....................................1418
232....................................3957
391....................................2344
571......................................47

**50 CFR**
10....................................1134
17....................192, 2564, 4820
217....................................5322
219....................................3840
229....................................3028

300....................................5033
648....................................1810
665....................................2297
679......1300, 1301, 1302, 6571,
                                      6860

**Proposed Rules:**
17.............................3976, 5112
29....................................5120
217....................................1588
218....................................2636
223........1433, 1452, 2372, 7242
226.............1433, 1452, 7242
300......................................279
402....................................2373

## LIST OF PUBLIC LAWS

**Note:** No public bills which have become law were received by the Office of the Federal Register for inclusion in today's **List of Public Laws**.

**Last List January 25, 2021**

## Public Laws Electronic Notification Service (PENS)

**PENS** is a free email notification service of newly enacted public laws. To subscribe, go to *https://listserv.gsa.gov/cgi-bin/wa.exe?SUBED1=PUBLAWS-L&A=1*

**Note:** This service is strictly for email notification of new laws. The text of laws is not available through this service. **PENS** cannot respond to specific inquiries sent to this address.